IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-2214

**BRIAN LOMA**, an individual,

 Plaintiff

v.

**CITY AND COUNTY OF DENVER,** a municipality,
**CITY ATTORNEY KRISTIN M. BRONSON,** in their individual capacity,
**ASSITANT CITY ATTORNEY MELISSA M. DRAZEN SMITH,** in their individual capacity,
**CORPORAL ROBERT D. SMITH**, in their individual capacity,
**ALLIED UNIVERSAL SECURITY SERVICES**,
**FALIESHA LYNETT TRIMBLE**, in their individual capacity,
**ANGELIKA CHAPLINSKIY**, in their individual capacity

 Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Brian Loma, by and through counsel, Baumgartner Law, LLC, respectfully submits this Complaint against the Defendants and alleges the following:

## JURISDICTION AND VENUE

1.  This action is brought pursuant to 42 U.S.C. 1983, 1988, the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. 1331, 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

2.  Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. 1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

## PARTIES

3. Plaintiff Brian Loma is and was at all relevant times a citizen of the State of Colorado, residing in Denver County, Colorado.

4. Defendant City and County of Denver is a government entity in the state of Colorado, County of Denver.

5. Defendant City Attorney Kirstin M. Bronson is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.

6. Defendant Assistant City Attorney Melissa M. Drazen Smith is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.

7. Defendant Corporal Smith is or was at all times relevant a citizen of the State of Colorado employed by the Denver Police Department.

8. Defendant Allied Universal Security Services is or was at all times relevant a citizen of the State of Colorado incorporated in Colorado.

9. Defendant Faliesha Lynette Trimble is or was at all times relevant a citizen of the State of Colorado employed by the Allied Universal Security Services.

10. Defendant Angelika Chaplinskiy is or was at all times relevant a citizen of the State of Colorado employed by the Allied Universal Security Services

## GENERAL ALLEGATIONS

11. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

### Allegations for Assault Summons February 15, 2019

12. On February 15, 2019, Mr. Loma observed building security harassing an unhoused person who was sleeping on a bench attached to the Tabor Center Building, in public, located on the 16th Street Mall near Lawrence Street and 16th Street.

13. Mr. Loma observed security poking and prodding at the person.

14. Mr. Loma, as a member for the Free Press, who runs the YouTube channel "CutThePlastic" began to film and LiveStream the interactions with the unhoused person and the security team.

15. While Mr. Loam was filming the interaction, a member of the security team, who was later identified as Faliesha Lynett Trimble, who work for Allied Universal Security Services, told Mr. Loma he could not film them.

16. Mr. Loma continued to film the interaction that was taking place in a public area.

17. As Mr. Loma continued to film Ms. Trimble and the security team, Ms. Trimble positioned herself in front of Mr. Loma's camera phone and began to physically push him backwards so that he could not film the interactions the security team was having with the unhoused person.

18. Ms. Trimble called the police and told Officer Robert D. Smith upon arrival that Mr. Loma had spit in her face twice.

19. Corporal Smith also interviewed other witnesses on scene, one of which was another member of the security team, Angelika Chaplinskiy, who work for Allied Universal Security Services, also stated Mr. Loma spit in Ms. Trimble's face.

20. Corporal Smith also interviewed another witness, Bonnie Kutaukas, who told Corporal Smith that Mr. Loma did not spit in anyone's face, and in fact, that Ms. Trimble had physically assaulted Mr. Loma and that Mr. Loma did not retaliate.

21. Ms. Kutaukas also showed Corporal Smith the recording of what happened which did not show Mr. Loma spitting in anyone's face. She also stated that Ms. Trimble never mentioned or said anything about being spit on until Denver Police arrived on scene.

22. Corporal Smith after watching a video recording of the incident told Ms. Kutaukas that he did not see any interaction between Mr. Loma and Ms. Trimble. He asked Ms. Kutaukas if the recording was from the beginning of the interaction, and she told him yes.

23. Corporal Smith failed to report that Ms. Trimble physically assaulted Mr. Loma in his police report.

24. Corporal Smith also failed to report that Ms. Kutaukas told officers that Ms. Trimble was the one following Mr. Loma while he tried to film.

25. Corporal Smith failed to report that he watched a video of the incident and did not see any interactions between Mr. Loma and Ms. Trimble.

26. Corporal Smith falsely reported that the video did not start from the beginning of the incident even though the witness told him that it did and that the recording was from Mr. Loma himself and the alleged victim told officer Mr. Loma spit on her after Mr. Loma began recording, which if true would have been on the recording that Corporal Smith watched.

27. Officer John D. Singapuri noted in his report that Eric Brandt also their filming.

28. Corporal Smith gave Mr. Loma a summons to appear in Denver Municipal Court for a charge of Assault for spitting on Ms. Trimble.

29. Office Smith, despite having evidence that Mr. Loma did not assault anyone, stated he was just going to give Mr. Loma a ticket and let them argue it out in court.

30. On March 4, 2019, City Attorney, Melissa M. Drazen Smith, sent an email to property owner and members of the Denver Initiative specifically naming Mr. Loma stating he was stepping

on the line of free speech and told those in the email that the City Attorney's Office would, despite not being able to convict Mr. Loma, seek to place Area Restrictions on him so that he could not continue his constitutionally protected right to protest near the 16th Street Mall the next time they got a conviction.

31. This email from the City Attorney named Mr. Loma and Eric Brandt specifically.

32. Prior to being convicted of the Assault charge, Mr. Loma was given an Area Restriction keeping him away from the 16th Street Mall area.

33. At the time, Mr. Loma was employed as a Field Director a campaign that was in direct opposition to the current Mayor preventing him from working on a political campaign in a heavily populated area of downtown Denver.

34. Mr. Loma's Assault charged was dismissed several months later by the City Attorney on August 18, 2019.

## CLAIMS FOR RELIEF

## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

35. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

36. The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

37. It is clearly established in Colorado and the 10th Circuit that it is unreasonable to arrest a person (or issue a summons) without probable cause. *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir.2007); *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir.2008).

38. The First Amendment of the United States Constitution recognizes the "right to petition [the government] as one of the most precious of the liberties safeguarded by the Bill of Rights."

*BE & K Constr. Co.v. NLRB*, 536 U.S. 516, 524 (2002).

39. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 1950 (2018) citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).

40. When the government decides to restrict free speech, it is the government that bears the burden of proving the constitutionality of its actions. *U.S. v. Playboy Entertainment Group Inc.*, 595 U.S. 803, 1889 citing greater *New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 183 (1999).

### FIRST CLAIM FOR RELIEF
**Malicious Prosecution**
**(Against Corporal Robert D. Smith, Allied Universal Security Services,**
**Faliesha Lynett Trimble, and Angelika Chaplinskiy)**

41. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

42. The applicable elements that must be met to prevail on a sec. 1983 claim for malicious prosecution are, "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491F.3d 1244, 1258 (10th Cir. 2007).

43. Malicious prosecution claims require the plaintiff to show those bringing the malicious prosecution did so with "intentional or reckless disregard for the truth." *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010).

44. Faliesha Lynett Trimble, who work for Allied Universal Security Services, falsely told Denver Police that Mr. Loma spit in her face twice in order to have Mr. Loma stop filming her and her team's interactions with an unhoused man in public.

45. Angelika Chaplinskiy, who work for Allied Universal Security Services, falsely told Denver Police that Mr. Loma spit in the face of Ms. Trimble in order to have Mr. Loma stop filming her and her team's interactions with an unhoused man.

46. Corporal Smith after watching a video recording of the incident told Ms. Kutaukas that he did not see any interaction between Mr. Loma and Ms. Trimble. He asked Ms. Kutaukas if the recording was from the beginning of the interaction, and she told him yes.

47. Corporal Smith deliberately omitted the above facts in his police report.

48. Corporal Smith deliberately made a false statement in his police report that the video did not start from the beginning of the incident even though the witness told him that it did and that the recording was from Mr. Loma himself and the alleged victim told officer Mr. Loma spit on her after Mr. Loma began recording, which if true would have been on the recording that Corporal Smith watched.

49. Corporal Smith failed to report that Ms. Trimble physically assaulted Mr. Loma in his police report.

50. Corporal Smith also failed to report that Ms. Kutaukas told officers that Ms. Trimble was the one following Mr. Loma while he tried to film.

51. Corporal Smith failed to report that he watched a video of the incident and did not see any interactions between Mr. Loma and Ms. Trimble.

52. Office Smith, despite having evidence that Mr. Loma did not assault anyone, stated he was just going to give Mr. Loma a ticket and let them argue it out in court.

53. Based on deliberate false reports which were made or omitted intentionally and with reckless disregard of the truth from Ms. Trimble, Ms. Chaplinskiy, and Officer Smith, Mr. Loma was prosecuted for Assault and ordered to stay out of the 16th Street Mall area for a year.

54. Because Mr. Loma could not enter the 16th Street Mall area, he sustained damages as he was unable work on a campaign as a Field Director. Mr. Loma also had to obtain an attorney to fight the charge of Assault.

**SECOND CLAIM FOR RELIEF**
**Violation of Constitutional Rights under 42 U.S.C. §1983**
**Official Policy Violating First Amendment Rights**
**(Against The City and County of Denver, City Attorney Kristin M. Bronson, and Deputy City Attorney Melissa M. Drazen Smith)**

55. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

56. The City and County of Denver, by and through the City Attorney's Office, has an official policy of issuing Area Restrictions in municipal criminal cases for defendants who exercise their Free Speech Rights based on the content of their speech.

57. "It is plain that municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

58. *"Monell* 's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037–2038, and whose decisions therefore may give rise to municipal liability under § 1983." Id.

59. "Municipal liability under § 1983 attaches where […] a deliberate choice to follow a course of action is made from among various alternatives by the official […] responsible for establishing final policy with respect to the subject matter in question." Id. at 483.

60. In the present matter, the City Attorney is the final decision maker as it relates to the prosecution of municipal offense in Denver Municipal Court.

61. Assistant City Attorney Melissa M. Drazen Smith, as an agent of the City and County of Denver, made a conscious choice, out of a variety of alternatives, to specifically target Mr. Loma, and others, based on the content the speech being conveyed on the 16th Street Mall.

62. The City Attorney's Office implemented an official policy to seek Area Restrictions against Mr. Loma, and others, to keep them out of the business district of the 16th Street Mall in order to appease businesses that the City has a relationship with.

63. The email from ACA Drazen Smith acknowledges that Mr. Loma, and others, are excursing their right to Free Speech and that the City Attorney's Office has had difficulty securing convictions against Mr. Loma, and other individuals the business do not like speaking freely in public at the 16th Street Mall.

64. ACA Drazen Smith also acknowledges the City Attorney's plan is to have the court order Area Restrictions against individuals after convictions so that they cannot go back to the 16th Mall Area to exercise their Free Speech Rights.

65. The email sent to business partners of the City was sent approximately two weeks after Mr. Loma's February 15, 2019, summons.

66. The email specifically named Mr. Loma and Eric Brandt, both known to the City as Free Speech advocates who speak out against the City's policies they find unjust including police brutality and treatment of unhouse individuals.

67. Eric Brandt was named as another person filming in the police reports for Mr. Loma's summons.

68. Mr. Loma was issued an Area Restriction prior to conviction in the Assault case on March

18, 2019, just 14 days after the email was written by ACA Drazen Smith.

69. Despite Mr. Loam's Assault charge being dismissed, he still had an effective Area Restriction until March 18, 2020, preventing Mr. Loam from exercising his Free Speech Rights near the 16th Street Mall.

70. Since this email was written by ACA Drazen Smith, the City Attorney's Office continues to try and issue Area Restrictions against Mr. Loma.

71. It is clear, based on ACA Drazen Smith's email to business partners and the continued targeting for Mr. Loma for arrest in order to secure Area Restrictions against him, the City and County of Denver has a policy to violate and chill Mr. Loma's Free Speech Rights.

**THIRD CLAIM FOR RELIEF**
**Violation of Constitutional Rights under 42 U.S.C. §1983 Custom Amounting to a Widespread Practice of Routine Violation of First Amendment Rights**
**(Against The City and County of Denver, City Attorney Kristin M. Bronson, and Deputy City Attorney Melissa M. Drazen Smith)**

72. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

73. The City and County of Denver has a policy and custom of issuing Area Restrictions for those individuals who are arrested or issued a summons while exercising their Free Speech Rights in order to keep them from the downtown Denver area which will, and does, chill their First Amendment, Free Speech Rights.

74. If you are arrested or summoned while participating in a peaceful protest in or near downtown Denver, an Area Restriction will be sought by the City Attorney's Office.

75. This custom "is a 'persistent and widespread' practice which 'constitutes the standard operating procedure of the local governmental entity.'" *Mitchell v. City and County of Denver,*

112 Fed.Appx. 662, 672 (10th Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, (1989).

76. To sustain a cause of action under a prior restraint cause of action the plaintiff must demonstrate that the challenged government action has or will have a chilling effect on the exercise of free speech. *Cope v. Kansas State Bd. Of Education*, 71 F.Supp.3d 1233, 1252 (U.S. District Court, D. Kansas, 2014).

77. A chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact so long as it arises form an objectively justified fear or real consequences. *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082, 1088 (10th Cir.2006) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004)).

78. The First Amendment right to document and disseminate information includes the right to photograph, audio and video-record police officers performing their duties in public, as well as the right to photograph, audio and video-record demonstrations.

79. Mr. Loma is not the only person who has exercised their free speech right to be issued an all-encompassing of downtown Denver Area Restriction.

80. The City Attorney routinely issues these overbroad Area Restrictions to peaceful protestors or free speech advocates who are arrested or summoned for municipal offense.

81. Plaintiff's attorney's law firm has defended several Denver Municipal cases involving peaceful protestors just in the last year where individuals were issued an Area Restriction or put on notice of the issuance of an Area Restriction in their municipal criminal case.

82. In those cases, the Area Restrictions were identical and incorporated most of downtown Denver. To Plaintiff's knowledge, since 2019, the City Attorney has expanded the area of restricted locations and has issued or tried to issue them in most, if not all, municipal cases involving peaceful

protests.

83. At times the City Attorney's Office actually ordered Area Restrictions for defendants with other defendant's names or case number on them.

84. The City Attorney's Office issued, or tried to issue, Area Restrictions in most, if not all, arrests or summons involving a protester without narrowly tailoring the Area Restriction nor considering the circumstances behind the arrest or summons.

85. The majority of these Area Restrictions are identical regardless of where the offence happened and incorporate the vast majority of downtown Denver where free speech activities occur including Denver Capitol, Civic Center Park, City Hall, Lindsey-Flanigan Courthouse, 16th Street Mall, and Union Station.

86. The policy of keeping protestors and other free speech advocates out of the downtown Denver area is the driving force behind the continued wrongful arrests or wrongful summons issues by the Denver Police Department, including, but not limited to, Mr. Loma.

87. Knowing that if you are arrested or summoned while participating in a peaceful protest will lead to a yearlong Area Restriction for the majority of downtown Denver will, and does, have a chilling effect on Free Speech.

88. Denver Police also know that if an individual is arrested or summoned while at a peaceful protest, it incentives officers to make arrests or summons knowing that the City Attorney will seek an Area Restriction against that individual preventing them from participating in future protests in downtown Denver area.

89. This custom of issuing Area Restrictions in every case related to a peaceful protester who is arrested or issued a summons, regardless of the circumstances, is how the City and County of Denver restricts free assembly of the masses who want to speak out against the government.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor on each of his respective claims and against Defendants jointly and/or severally as follows:

a. Compensatory damages in an amount that will fully and fairly compensate the Plaintiff for his respective injuries, damages and losses pursuant to 42 USC 1983.

b. Punitive damages pursuant to federal law as punishment and deterrence against the commission of future such conduct.

c. Pre- and post-judgment interest.

d. Reasonable attorneys' fees, expert witness fees, and the cost of this action pursuant to 42 USC 1988 and any other applicable federal or state law.

e. Injunctive relief prohibiting the use of Area Restrictions for those arrested or summoned on charges related to their free speech exercise without the Area Restrictions being narrowly tailored and without providing proper notice to challenge the order in court.

f. Any other relief the Court deems proper and just.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 13th day of August 2021.

Respectfully submitted,
**BAUMGARTNER LAW, L.L.C.**

 s/ Adam Yoast
Adam R. Yoast
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (303) 529-3476
Fax: (720) 634-1018
adam@baumgartnerlaw.com
*Counsel for Plaintiff*

Plaintiff's address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113