## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-2214

**BRIAN LOMA**, an individual,

    Plaintiff

v.

**CITY AND COUNTY OF DENVER,** a municipality,
**CITY ATTORNEY KRISTIN M. BRONSON,** in their individual capacity,
**ASSITANT CITY ATTORNEY MELISSA M. DRAZEN SMITH,** in their individual capacity,
**ASSISTANT DIRECTOR MARLEY BORDOVSKY**, in their individual capacity,
**CORPORAL ROBERT D. SMITH**, in their individual capacity,
**ALLIED UNIVERSAL SECURITY SERVICES,**
**FALIESHA LYNETT TRIMBLE**, in their individual capacity,
**ANGELIKA CHAPLINSKIY**, in their individual capacity,
**DETECTIVE NICHOLAS Z. ROCCO-MCKEEL**, in their individual capacity
**SERGEANT BURTON**, in their individual capacity
**OFFICER BURGER (#98049),** in their individual capacity

    Defendants.

---

## AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Brian Loma, by and through counsel, Baumgartner Law, LLC, respectfully submits this Complaint against the Defendants and alleges the following:

### INTRODUCTION

1.    The City and County of Denver have had a long history of attempting to stomp out and silence those in the community who speak out against government overreach, specifically, and especially, related to police brutality and law enforcement treatment of the oppressed.

2.    As a result of the City's effort to silence those who speak out against the City's interests or

positions related to policing in the community, the City of Denver has developed policies and mechanisms to deter citizens from engaging in free speech and assembly in Denver, CO.

3.     These policies and mechanisms are not only general applying to anyone who the City does not appreciate, the City has also specifically targeted and retaliated against certain individuals who are the most vocal and shed the most light on the issues surrounding policing and treatment of the unhoused.

4.     One of those individuals is the Plaintiff in this matter, Mr. Brian Loma, who runs the YouTube channel CutThePlastic. Mr. Loma live streams events in the community and films police interactions with members of the public. Mr. Loma's YouTube channel has over four-thousand subscribers with hundreds of videos accessible to the public at no cost. Due to Mr. Loma's dedication to his advocacy, he is a respected and trusted voice in the community related to issues of policing and police brutality.

5.     Because Mr. Loma is able to expose misconduct by the government and disseminates video footage of policing in the community, Mr. Loma has become a continual target for the City and County of Denver and the Denver Police in an effort to silence his advocacy.

6.     Mr. Loma is currently engaged in another Federal Lawsuit against the City and County of Denver and individual Denver Police Officers for being wrongfully arrested while filming the police on the 16th Street Mall and saying, "fuck the police." 1:20-cv-02827-RM-STV.

7.     In that case, Mr. Loma was arrested for criticizing law enforcement officers regarding their treatment of the unhouse population while Mr. Loma filmed their actions in a public space. The charges in that case were dismissed.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. 1983, 1988, the Fourth and Fourteenth Amendments to the United States Constitution and Colorado State Common Law. Jurisdiction is founded upon 28 U.S.C. § 1331, §1343(a)(3) and (4), and 28. U.S.C. §1367 (Supplemental Jurisdiction), and the aforementioned statutory and constitutional provisions.

9.      Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. 1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.


## PARTIES

10.      Brian Loma is and was at all relevant times a citizen of the State of Colorado, residing in Denver County, Colorado.

11.      Defendant City and County of Denver is a government entity in the state of Colorado, County of Denver.

12.      Defendant City Attorney Kirstin M. Bronson is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.

13.      Defendant Assistant City Attorney Melissa M. Drazen Smith is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.

14.      Defendant Assistant Director Marley Bordovsky is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.

15.      Defendant Corporal Smith is or was at all times relevant a citizen of the State of Colorado employed by the Denver Police Department.

16.      Defendant Allied Universal Security Services is or was at all times relevant a citizen of the

State of Colorado incorporated in Colorado.

17.     Defendant Faliesha Lynette Trimble is or was at all times relevant a citizen of the State of Colorado employed by the Allied Universal Security Services.

18.     Defendant Angelika Chaplinskiy is or was at all times relevant a citizen of the State of Colorado employed by the Allied Universal Security Services.

19.     Defendant Detective Nicholas Z. Rocco-McKeel is or was at all times relevant a citizen of the State of Colorado employed by the Denver Police Department.

20.     Defendant Sergeant Burton is or was at all times relevant a citizen of the State of Colorado employed by the Denver Police Department.

21.     Defendant Officer Burger is or was at all times relevant a citizen of the State of Colorado employed by the Denver Police Department.

## GENERAL ALLEGATIONS

22.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

### Allegations for Assault Summons February 15, 2019

23.     On February 15, 2019, Mr. Loma observed building security harassing an unhoused person who was sleeping on a bench attached to the Tabor Center Building, in public, located on the 16th Street Mall near Lawrence Street and 16th Street.

24.     Mr. Loma observed security poking and prodding at the person.

25.     Mr. Loma, as a member for the Free Press, who runs the YouTube channel CutThePlastic, began to film and live stream the interactions with the unhoused person and the security team.

26.     While Mr. Loma was filming the interaction, a member of the security team, who was later

identified as Faliesha Lynett Trimble, who worked for Allied Universal Security Services, told Mr. Loma he could not film them.

27.   Mr. Loma continued to film the interaction that was taking place in a public area.

28.   As Mr. Loma continued to film Ms. Trimble and the security team, Ms. Trimble positioned herself in front of Mr. Loma's camera phone and began to physically push him backwards so that he could not film the interactions the security team was having with the unhoused person.

29.   Ms. Trimble called the police and told Corporal Robert D. Smith upon arrival that Mr. Loma had spit in her face twice.

30.   Corporal Smith also interviewed other witnesses on scene, one of which was another member of the security team, Angelika Chaplinskiy, who work for Allied Universal Security Services, also stated Mr. Loma spit in Ms. Trimble's face.

31.   Corporal Smith also interviewed another witness, Bonnie Kutaukas, who told Corporal Smith that Mr. Loma did not spit in anyone's face, and in fact, that Ms. Trimble had physically assaulted Mr. Loma and that Mr. Loma did not retaliate.

32.   Ms. Kutaukas also showed Corporal Smith the recording of what happened which did not show Mr. Loma spitting in anyone's face. She also stated that Ms. Trimble never mentioned or said anything about being spit on until Denver Police arrived on scene.

33.   Corporal Smith after watching a video recording of the incident told Ms. Kutaukas that he did not see any interaction between Mr. Loma and Ms. Trimble. He asked Ms. Kutaukas if the recording was from the beginning of the interaction, and she told him yes.

34.   Corporal Smith failed to report that Ms. Trimble physically assaulted Mr. Loma in his police report.

35.   Corporal Smith also failed to report that Ms. Kutaukas told officers that Ms. Trimble was

the one following Mr. Loma while he tried to film.

36.     Corporal Smith failed to report that he watched a video of the incident and did not see any interactions between Mr. Loma and Ms. Trimble.

37.     Corporal Smith falsely reported that the video did not start from the beginning of the incident even though the witness told him that it did and that the recording was from Mr. Loma himself and the alleged victim told the officer that Mr. Loma spit on her after Mr. Loma began recording, which if true would have been on the recording that Corporal Smith watched.

38.     Officer John D. Singapuri noted in his report that Eric Brandt also their filming.

39.     Corporal Smith gave Mr. Loma a summons to appear in Denver Municipal Court for a charge of Assault for spitting on Ms. Trimble.

40.     Corporal Smith, despite having evidence that Mr. Loma did not assault anyone, stated he was just going to give Mr. Loma a ticket and let them argue it out in court.

41.     On March 4, 2019, City Attorney, Melissa M. Drazen Smith, sent an email to the property owner and members of the Denver Initiative specifically naming Mr. Loma stating he was stepping on the line of free speech and told those in the email that the City Attorney's Office would, despite not being able to convict Mr. Loma, seek to place Area Restrictions on him so that he could not continue his constitutionally protected right to protest near the 16th Street Mall the next time they got a conviction.

42.     This email from the City Attorney named Mr. Loma and Eric Brandt specifically.

43.     Prior to being convicted of the Assault charge, Mr. Loma was given an Area Restriction, keeping him away from the 16th Street Mall area.

44.     At the time, Mr. Loma was employed as a Field Director of a campaign that was in direct opposition to the current Mayor. The Area Restriction prevented him from working on a political

campaign in a heavily populated area of downtown Denver.

45.      Mr. Loma's Assault charged was dismissed several months later by the City Attorney on August 18, 2019.

**Allegations for Arrest for Obstruction Charge September 28, 2021**

46.      On October 14, 2020, Mr. Loma was arrested pursuant to an arrest warrant for Obstruction of Passage, case number 20GS008438, for an incident that occurred on September 28, 2020.

47.      The arrest warrant was signed by Sergeant Denke on October 12, 2020.

48.      Mr. Loma is a community organizer and independent journalist who covers actions, such as protests, that occur in public. Mr. Loma is a free speech advocate who is vocal and known in the community as journalist with his own YouTube channel, CutThePlastic, which is how Denver Police identified him via HALO footage in this matter.

49.      Upon Mr. Loma's arrest, he was asked by the arresting officers if he would speak with them regarding some crimes that had been committed over the summer during the ongoing protests occurring in downtown Denver. At the time, arresting officers were on the phone with Sargent Burton who was on speaker phone.

50.      Mr. Loma informed officers that he would be willing to speak with them provided his attorney was present.

51.      The arresting officer told Sergeant Burton that Mr. Loma wished to have his attorney present during questioning.

52.      Sergeant Burton then told the arresting officer, "Never mind, we will just take his phone."

53.      Mr. Loma was booked on the Obstruction charge and released on a PR bond that night.

54.      Denver Police Department did not return Mr. Loma's phone once he was released. Mr. Loma was not provided any documentation as to why Denver Police Department was keeping his

personal property or when it would be released, as required in the DPD Handbook 106.00(5).

55.     On October 26, 2020, a Search Warrant Affidavit was signed to search the contents of Mr. Loma's phone. This search warrant was filed by Detective Nicholas Rocco-McKeel.

56.     The Search Warrant Affidavit seeks a general, exploratory examination into almost everything held on Mr. Loma's phone without any particularity to a specific incident and/or specific time, location, victim, or another person who may have committed any crime.

57.     The Search Warrant Affidavit is not limited and seeks to obtain, among other things, identifying information or ownership, setting preferences including names of hotspots used, usage files, data contained in notes and calendars, all communications, photos and videos, metadata, GPS locations, and full internet activities for all dates between May 28, 2020, to October 14, 2020.

58.     While Detective Rocco-McKeel mentions certain offenses committed by members of the community during the ongoing protests throughout the summer, the affidavit does not state in particularity how Mr. Loma may have been involved in those incidents other than him being present during the public protests where he had a legal right to be and to film.

59.     Detective Rocco-McKeel does not specify how Mr. Loma may be involved in any crime or with anyone suspected of the crimes that occurred during these public protests.

60.     Mr. Loma has been prosecuted numerous times by the City Attorney's Office and has had several of his cases dismissed.

61.     On March 4, 2019, City Attorney, Melissa M. Drazen Smith, sent an email to the property owner and members of the Denver Initiative specifically naming Mr. Loma stating he was stepping on the line of free speech and told those in the email that the City Attorney's Office would, despite not being able to convict Mr. Loma, seek to place Area Restrictions on him so that he could not continue his constitutionally protected right to protest near the 16th Street Mall the next time they

got a conviction.

62.     It is clear from the email from the City Attorney's Office, and this Affidavit for Search Warrant, that the City of Denver is targeting Mr. Loma in order to quell his First Amendment rights, and are now doing so by violating the Fourth Amendment in order to search the contents of his phone in a fishing exhibition to try and connect him to crime that occurred during public protests he attended without providing an indication of specificity of how he may be involved.

63.     All dates mentioned in which Detective Rocco-McKeel seeks to collect information about were filmed during public protests where Mr. Loma has a legal right to be.

64.     Further, everything Mr. Loma films is live streamed and uploaded on his YouTube channel which anyone, including the police, can view.

65.     Mr. Loma was acquitted at a trial to a jury of six represented by counsel, Adam R. Yoast and S. Birk Baumgartner, on April 21, 2021.

66.     On June 24, 2021, Denver Municipal Court Judge Chelsea Malone granted an order for the release of all of Mr. Loma's property seized in relation to his arrest for Obstruction which he had been acquitted at trial, i.e. his phone.

67.     On Wednesday July 21, 2021, Mr. Loma tried to retrieve his property from the Denver Police Department with the requested court order granting the release of his property which was signed by Denver Municipal Court Judge Chelsea Malone.

68.     Denver Police Department property staff told Mr. Loma they did not have his phone because it was transferred to another jurisdiction. Detective Rocco-McKeel confirmed that the phone had been transferred to another case (Case #20-387565) in an email sent on July 21, 2021, to Mr. Loma.

69.     Detective Rocco-McKeel was sent the court order for the release of Mr. Loma's property

on July 21, 2021. However, Mr. Loma has still been unable to retrieve his property and does not know where his property is located.

**Allegations for Destruction of Personal Property on November 17, 2021**

70.     On the Morning of Nov 17, 2021, Mr. Loma went to the area outside of St. Joseph's Hospital near 19th and Park Avenue West to film a traumatic displacement of an encampment where BIPOC persons were residing.

71.     Mr. Loma had heard that a peaceful sit-in was planned by the people at this specific encampment.

72.     Immediately upon arriving at the location, Mr. Loma noticed a work crew erecting a fence to surround the encampment as well as roughly a dozen police officers in the area.

73.     Mr. Loma began a live stream of the event and approached the crew erecting the fence to gather footage of the fence being assembled. He was holding in his hand a stabilizing device known as a gimbal with his cellphone attached held out away from his body.

74.     Upon approaching the fence, Denver City Police Officer Burger approached Mr. Loma and began instructing him to back up. Mr. Loma then repeatedly instructed the officer to identify himself per DPD policy with his name and badge number.

75.     Officer Burger refused to identify, instead calling for backup. As other officers approached Mr. Loma began requesting the same identifying information from each of the police officers.

76.     Mr. Loma continued to ask each officer on site for their identity while recording their responses.  Upon asking Officer Burger for his identity, officer refused, so Mr. Loma moved his gimbal to read the officers name badge on the officer's lapel.

77.     Officer Burger then struck the recording gear knocking it out of Mr. Loma's hand and onto the ground where the camera detached from the gimbal.

78.     Mr. Loma saw that his phone had broken into pieces. This is also evidenced by the termination of video.

79.     Mr. Loma was then unable to film the rest of the traumatic displacement including the sit-in and arrest of community members speaking out against the City of Denver's methods of displacing unhoused residents without offering solutions to their housing needs.

80.     Due to the loss of the phone which Mr. Loma uses to live stream on his public YouTube channel CutThePlastic, Mr. Loma suffered loss of income as well as loss of property.

## CLAIMS FOR RELIEF

## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

81.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

82.     The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

83.     It is clearly established in Colorado and the 10th Circuit that it is unreasonable to arrest a person (or issue a summons) without probable cause. *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir.2007); *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir.2008).

84.     The First Amendment of the United States Constitution recognizes the "right to petition [the government] as one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Constr. Co.v. NLRB*, 536 U.S. 516, 524 (2002).

85.     The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach, Fla*., 138 S.Ct. 1945, 1950 (2018) citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).

86.     When the government decides to restrict free speech, it is the government that bears the burden of proving the constitutionality of its actions.  *U.S. v. Playboy Entertainment Group Inc.*, 595 U.S. 803, 1889 citing greater *New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 183 (1999).

## FIRST CLAIM FOR RELIEF
**Malicious Prosecution**
**(Against Corporal Robert D. Smith, Allied Universal Security Services,**
**Faliesha Lynett Trimble, and Angelika Chaplinskiy)**

87.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

88.     The applicable elements that must be met to prevail on a sec. 1983 claim for malicious prosecution are, "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).

89.     Malicious prosecution claims require the plaintiff to show those bringing the malicious prosecution did so with "intentional or reckless disregard for the truth." *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010).

90.     Faliesha Lynett Trimble, who worked for Allied Universal Security Services, falsely told Denver Police that Mr. Loma spit in her face in order to have Mr. Loma stop filming her and her team's interactions with an unhoused man in public.

91.     Angelika Chaplinskiy, who worked for Allied Universal Security Services, falsely told Denver Police that Mr. Loma spit in the face of Ms. Trimble in order to have Mr. Loma stop

filming her and her team's interactions with an unhoused man.

92.     Corporal Smith, after watching a video recording of the incident, told Ms. Kutaukas that he did not see any interaction between Mr. Loma and Ms. Trimble. He asked Ms. Kutaukas if the recording was from the beginning of the interaction, and she told him yes.

93.     Corporal Smith deliberately omitted the above facts in his police report.

94.     Corporal Smith deliberately made a false statement in his police report that the video did not start from the beginning of the incident even though the witness told him that it did and that the recording was from Mr. Loma himself and the alleged victim told officer Mr. Loma spit on her after Mr. Loma began recording which, if true, would have been on the recording that Corporal Smith watched.

95.     Corporal Smith failed to report that Ms. Trimble physically assaulted Mr. Loma.

96.     Corporal Smith also failed to report that Ms. Kutaukas told officers that Ms. Trimble was the one following Mr. Loma while he tried to film.

97.     Corporal Smith failed to report that he watched a video of the incident and did not see any interactions between Mr. Loma and Ms. Trimble.

98.     Corporal Smith, despite having evidence that Mr. Loma did not assault anyone, stated he was just going to give Mr. Loma a ticket and let them argue it out in court.

99.     Based on deliberate false reports which were made or omitted intentionally and with reckless disregard of the truth from Ms. Trimble, Ms. Chaplinskiy, and Corporal Smith, Mr. Loma was prosecuted for Assault and ordered to stay out of the 16th Street Mall area for a year.

100.    Because Mr. Loma could not enter the 16th Street Mall area, he sustained damages as he was unable work on a campaign as a Field Director. Mr. Loma also had to obtain an attorney to fight the charge of Assault.

**SECOND CLAIM FOR RELIEF**
**Violation of Constitutional Rights under 42 U.S.C. §1983**
**Official Policy Violating First Amendment Rights**
**(Against The City and County of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, and Assistant Director Marley Bordovsky)**

101.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

102.    The City and County of Denver, by and through the City Attorney's Office, has an official policy of issuing Area Restrictions in municipal criminal cases for defendants who exercise their Free Speech Rights based on the content of their speech.

103.    "It is plain that municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

104.    *"Monell* 's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037–2038, and whose decisions therefore may give rise to municipal liability under § 1983." Id.

105.    "Municipal liability under § 1983 attaches where […] a deliberate choice to follow a course of action is made from among various alternatives by the official […] responsible for establishing final policy with respect to the subject matter in question." Id. at 483.

106.    In the present matter, the City Attorney is the final decision maker as it relates to the prosecution of municipal offenses in Denver Municipal Court.

107.    Assistant City Attorney Melissa M. Drazen Smith, as an agent of the City and County of Denver, made a conscious choice, out of a variety of alternatives, to specifically target Mr. Loma, and others, based on the content the speech being conveyed on the 16th Street Mall.

108.    The City Attorney's Office implemented an official policy to seek Area Restrictions

against Mr. Loma, and others, to keep them out of the business district of the 16th Street Mall in order to appease businesses that the City has a relationship with.

109.    The email from ACA Drazen Smith acknowledges that Mr. Loma, and others, are excursing their right to Free Speech and that the City Attorney's Office has had difficulty securing convictions against Mr. Loma, and other individuals the business do not like speaking freely in public at the 16th Street Mall.

110.    ACA Drazen Smith also acknowledges the City Attorney's plan is to have the court order Area Restrictions against individuals after convictions so that they cannot go back to the 16th Mall Area to exercise their Free Speech Rights.

111.    The email sent to business partners of the City was sent approximately two weeks after Mr. Loma's February 15, 2019, Summons.

112.    The email specifically named Mr. Loma and Eric Brandt, both known to the City as Free Speech advocates who speak out against the City's policies they find unjust including police brutality and treatment of unhoused individuals.

113.    Eric Brandt was named as another person filming in the police reports for Mr. Loma's Summons.

114.    Mr. Loma was issued an Area Restriction prior to conviction in the Assault case on March 18, 2019, just 14 days after the email was written by ACA Drazen Smith.

115.    Despite Mr. Loma's Assault charge being dismissed, he still had an effective Area Restriction until March 18, 2020, preventing Mr. Loma from exercising his Free Speech Rights near the 16th Street Mall.

116.    Since this email was written by ACA Drazen Smith, the City Attorney's Office continues to try and issue Area Restrictions against Mr. Loma.

117.    It is clear, based on ACA Drazen Smith's email to business partners and the continued targeting of Mr. Loma for arrest in order to secure Area Restrictions against him, the City and County of Denver has a policy to violate and chill Mr. Loma's Free Speech Rights.

118.    In Mr. Loma's most recent case stemming from September 28, 2021, Mr. Loma was also put on notice that the City Attorney would be seeking an Area Restriction.

119.    The City Attorney listed on the Area Restriction is Marely Bordovsky. Ms. Bordovsky is also the City Attorney listed on Mr. Loma's prior Area Restriction.

120.    Unlike the previous Area Restriction which restricted only a few blocks around the 16th Street Mall, the newest Area Restriction encompasses almost the entirety of downtown where public demonstrations are likely to occur.

121.    While the City Attorney was prosecuting Mr. Loma for an incident that allegedly took place on 8th and Broadway, the City Attorney gave Mr. Loma notice they would seek to prevent him from going into downtown, an area that does not incorporate the area where the alleged incident took place.

122.    City Attorney Marley Brodovsky has reviewed these cases and sought to restrict Mr. Loma from downtown Denver.

123.    It is clear the motivations of the City and County of Denver are to keep people from exercising their right to free speech by arresting individuals then seeking Area Restrictions for downtown – areas that are not related to the incident that led to the charges.

124.    Plaintiff had protected First Amendment rights to express his viewpoints and support by attending peaceful protests to redress grievances against racial injustice and police misconduct/brutality, to assemble and associate with other peaceful protesters, and/or to record and document such public protests and the public response by the police to such protests.

125.    As previously alleged, Plaintiff was peacefully protesting or otherwise associated with the peaceful protests by observing, documenting, or being in the area where peaceful protests were occurring at the time of the alleged municipal violation.

126.    The Defendants violated the Plaintiff's First Amendment rights by targeting him as protesters or perceived protester and arresting and/or arresting him for expressing perceived viewpoints.

127.    The Defendants violated the Plaintiffs' First Amendment rights by seeking Area Restrictions against Mr. Loma to suppress, punish, or retaliate against him for peacefully expressing his viewpoints or otherwise for their association with and support for the peaceful protests.

### THIRD CLAIM FOR RELIEF
**Violation of Constitutional Rights under 42 U.S.C. §1983, Custom Amounting to a Widespread Practice of Routine Violation of First Amendment Rights
(Against The City and County of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, and Assistant Director Marley Bordovsky)**

128.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

129.    The City and County of Denver has a policy and custom of issuing Area Restrictions for those individuals who are arrested or issued a Summons while exercising their Free Speech Rights in order to keep them from the downtown Denver area which will, and does, chill their First Amendment, Free Speech Rights.

130.    If you are arrested or summoned while participating in a peaceful protest in or near downtown Denver, an Area Restriction will be sought by the City Attorney's Office.

131.    This custom "is a 'persistent and widespread' practice which 'constitutes the standard

operating procedure of the local governmental entity.'" *Mitchell v. City and County of Denver,* 112 Fed.Appx. 662, 672 (10th Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, (1989).

132.    To sustain a cause of action under a prior restraint cause of action the plaintiff must demonstrate that the challenged government action has or will have a chilling effect on the exercise of free speech.  *Cope v. Kansas State Bd. Of Education*, 71 F.Supp.3d 1233, 1252 (U.S. District Court, D. Kansas, 2014).

133.    A chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact so long as it arises form an objectively justified fear or real consequences.  *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082, 1088 (10th Cir.2006) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004)).

134.    The First Amendment right to document and disseminate information includes the right to photograph, audio and video-record police officers performing their duties in public, as well as the right to photograph, audio and video-record demonstrations.

135.    Mr. Loma is not the only person who has exercised their free speech right to be issued an all-encompassing of downtown Denver Area Restriction.

136.    The City Attorney routinely issues these overbroad Area Restrictions to peaceful protestors or free speech advocates who are arrested or summoned for a municipal offense.

137.    Plaintiff's attorney's law firm has defended several Denver Municipal cases involving peaceful protestors just in the last year where individuals were issued an Area Restriction or put on notice of the issuance of an Area Restriction in their municipal criminal case.

138.    In those cases, the Area Restrictions were identical and incorporated most of downtown Denver. To Plaintiff's knowledge, since 2019, the City Attorney has expanded the area of restricted

locations and has issued or tried to issue them in most, if not all, municipal cases involving peaceful protests.

139.    At times the City Attorney's Office actually ordered Area Restrictions for defendants with other defendant's names or case number on them.

140.    The City Attorney's Office issued, or tried to issue, Area Restrictions in most, if not all, arrests or summons involving a protester without narrowly tailoring the Area Restriction nor considering the circumstances behind the arrest or summons.

141.    The majority of these Area Restrictions are identical regardless of where the offence happened and incorporate the vast majority of downtown Denver where free speech activities occur including the Capitol, Civic Center Park, City Hall, Lindsey-Flanigan Courthouse, 16th Street Mall, and Union Station.

142.    The policy of keeping protestors and other free speech advocates out of the downtown Denver area is the driving force behind the continued wrongful arrests or wrongful summons issued by the Denver Police Department, including, but not limited to, Mr. Loma.

143.    Knowing that if you are arrested or summoned while participating in a peaceful protest will lead to a yearlong Area Restriction for the majority of downtown Denver will, and does, have a chilling effect on Free Speech.

144.    This practice incentivizes Denver police officers to make arrests or issue Summonses knowing that the City Attorney will seek an Area Restriction against that individual preventing them from participating in future protests in the downtown Denver area.

145.    This custom of issuing Area Restrictions in every case related to a peaceful protester who is arrested or issued a summons, regardless of the circumstances, is how the City and County of Denver restricts free assembly of the masses who want to speak out against the government.

**FOURTH CLAIM FOR RELIEF**
**Violation of Constitutional Rights under 42 U.S.C. §1983 Custom Amounting to a Violation
of First Amendment Retaliation
(Against The City and County of Denver, City Attorney Kristin M. Bronson, Deputy City
Attorney Melissa M. Drazen Smith, Assistant Director Marley Bordovsky, Corporal Smith,
Detective Rocco-McKeel, Sergeant Burton, and Officer Burger)**

146.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

147.     Filming the police is a constitutionally protected activity under the First Amendment. *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017; see *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (stating individuals have the right to video and photograph police subject to time, place, manner restrictions); see *Adkins v. Limtiaco*, 537 Fed App'x 721, 722 (9th Cir. 2013) (holding that Plaintiff's arrest was sufficiently plead as First Amendment retaliation for being arrested for filming the police in public) *American Civil Liberties Union of Illinois v. Alvares*, 679 F.3d 40 Media L. Rep. 1721, 599-600 (7th Cir. 2012) (holding statues preventing the filming of police violated the First Amendment); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (holding Plaintiff had a clearly established right to film the police in the public space). See also *Fordyce v. City of Seattle*, 55 F.3d, 436, 493 (9th Cir. 1995) (holding a First Amendment right to film police in public spaces in matters of public importance).

148.     Further, in Colorado, there are two statutes that specifically govern the recording of police. Without interfering with an officer's duties "[a] person has the right to lawfully record any incident involving a peace officer." C.R.S. 16-3-311(1). Further, an individual has the right to recover (civilly) when lawfully filming the police and officers either "intentionally interfere with the person's lawful attempt to record" or an officer "retaliates against a person for recording or attempting to record." C.R.S. 13-21-128(III)&(IV).

149.   The Supreme Court held that the "[f]irst Amendment protects a significant amount of verbal criticism and challenge directed a police officer." *City of Huston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). In closing the Court stated, that "the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint. Id. at 472.

150.   Mr. Loma is known in the community and to law enforcement as an activist who regularly films police interactions with members of the public and disseminates the materials to the public for free on his YouTube channel, CutThePlastic.

151.   Mr. Loma is a regular fixture at community events and consistently asks questions of the government and participates in community outreach and political initiatives for causes important to him.

152.   The City and County of Denver, along with the Denver Police Department, have made it clear they will do anything to keep Mr. Loma from filming the police and exposing failures within the City and County of Denver when it comes to policing.

153.   Mr. Loma is known to be vocal and at times uses profanity when peacefully advocating against police brutality.

154.   Due to Mr. Loma's ongoing community activism, the City Attorney's Office and the Denver Police Department have partnered together in order to try and keep Mr. Loma from engaging in political activity that is contrary to the City's positions as it relates to policing and the treatment of unhoused populations.

155.   The City and County of Denver has put in place a structure to arrest Mr. Loma for his political activities and seek area restrictions against him so that he cannot return to areas that are likely to hold free assembly, i.e. downtown Denver.

156.    It is clear that the City of Denver and the Denver Police do not appreciate Mr. Loma's advocacy for the community.

157.    The City Attorney's Office has stated they will continue to seek convictions against Mr. Loma and issue Area Restrictions any time that the City Attorney or the Denver Police feels like he has "over-stepped" the First Amendment. This email was written after Mr. Loma's second subsequent arrest on the 16th Street Mall.

158.    In the case from 2019, Mr. Loma's was given an Area Restriction prior to his criminal charges being dismissed.

159.    Mr. Loma was again arrested for an incident in 2021 in which a jury acquitted him of the charges. In that case, the City Attorney also put Mr. Loma on notice that they would be seeking an Area Restriction.

160.    And again in 2021, Mr. Loma had his phone hit out of his hand while filming the police which broke his phone.

161.    Mr. Loma's wrongful arrest and excessive force claims since 2018 have all involved interactions with the City and County of Denver and the Denver Police Department where his rights were violated for his speech related to police brutality and treatment of the unhoused population.

162.    It is clear based on the pattern of arrests and area restrictions that the City and County of Denver, along with individual Denver Police officers, have a retaliatory policy against Mr. Loma based on the content of his speech.


**FIFTH CLAIM FOR RELIEF**
**Violation of the Fourth Amendment of the United States Constitution**
**Unconstitutional Seizure of Property**
**(Detective Nicholas Z. Rocco-McKeel)**

22

163.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

164.    The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures.

165.    Mr. Loma informed officers that he would be willing to speak with them provided his attorney was present when arrested on October 14, 2021.

166.    Arresting officers told Sergeant Burton that Mr. Loma wished to have his attorney present during questioning.

167.    Sergeant Burton then told the arresting officer, "Never mind, we will just take his phone."

168.    Mr. Loma was booked on the Obstruction charge and released on a PR bond that night.

169.    Denver Police Department did not return Mr. Loma's phone once he was released. Mr. Loma was not provided any documentation as to why Denver Police Department was keeping his personal property or when it would be released, as required in the DPD Handbook 106.00(5).

170.    On October 26, 2020, a Search Warrant Affidavit was signed to search the contents of Mr. Loma's phone. This search warrant was filed by Detective Nicholas Rocco-McKeel.

171.    The Search Warrant Affidavit seeks a general, exploratory examination into almost everything held on Mr. Loma's phone without any particularity to a specific incident and/or specific time, location, victim, or another person who may have committed any crime.

172.    Based on Sergeant Burton's comment the night Mr. Loma was arrested and the fact the warrant for the seizure of the phone came twelve days after Mr. Loma's arrest then given to another jurisdiction, it is clear the continued seizure of the phone is unreasonable.

173.    Further, Detective Rocco-McKeel has still failed to provide Mr. Loma with his belongings even after an Order from Denver Municipal Court Judge Chelsea Malone.

174.     In an email sent by Detective Rocco-McKeel on October 1, 2021, Detective Rocco-McKeel stated he returned the phone to Denver Police Department and would be sending the property unit a release for the property.

175.     Mr. Loma has still not been provided any documentation as to why his phone was kept and transferred to another law enforcement agency for a case not related to his arrest or the warrant for the seizure of his phone.

### SIXTH CLAIM FOR RELIEF
**Violation of the Fourteenth Amendment of the United States Constitution**
**Unconstitutional Deprivation of Property**
**(Against Officer Burger)**

176.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

177.     The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

178.     Here, Officer Burger, as a state actor, utilized his position to assault Mr. Loma, who was constitutionally filming the police in public, which broke Mr. Loma's phone and rendered it useless.

179.     Mr. Loma, as known in the community, advocates for the rights of the unhoused populations and live streams the homeless sweeps conducted in and around Denver.

180.     Mr. Loma was doing nothing more than asking officers to identify themselves as required by state law when Officer Burger hit Mr. Loma's phone out if his hand.

181.     Mr. Loma was not suspected of any crime.

182.     Officer Burger did not go through any legal proceeding before depriving Mr. Loma of his personal property, effectively unlawfully seizing his phone of operational status, depriving Mr.

Loma of the free use of his personal property.

## SEVENTH CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Excessive Force Resulting in Permanente Deprivation of Personal Property
### (Against Officer Burger)

183.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

184.    The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

185.    It is clearly established in Colorado and the 10th Circuit that it is unreasonable for officers to use gratuitous force on a compliant arrestee. *McCowan v. Morales*, 945 F.3d 1276 (10th Cir.2019).

186.    Here, Officer Burger, as a state actor, utilized his position to assault Mr. Loma, who was constitutionally filming the police in public, which broke Mr. Loma's phone and rendered it useless.

187.    Mr. Loma, as known in the community, advocates for the rights of the unhoused populations and live streams the homeless sweeps conducted in and around Denver.

188.    Mr. Loma was doing nothing more than asking officers to identify themselves as required by state law when Officer Burger hit Mr. Loma's phone out if his hand.

189.    Mr. Loma was not suspected of any crime and was in no way being non-compliant.

190.    Officer Burger did not go through any legal proceeding before depriving Mr. Loma of his personal property, effectively unlawfully seizing his phone of operational status, depriving Mr. Loma of the free use of his personal property.

191.    Officer Burger's use of force hitting Mr. Loma's phone out of his hand while he was not

committing any crime, or being suspected of any crime, just so that Mr. Loma could not continue to film police, is an excessive use of force.

## CLAIMS FOR RELIEF UNDER COLORADO COMMON LAW

### EIGHTH CLAIM FOR RELIEF
**Violation of the Fourth Amendment of the United State Constitution resulting in an Unconstitutional Seizure of Property Pursuant to SB-217**
**(Detective Rocco-McKeel)**

192.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

193.    The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures.

194.    "A peace officer […] subjects or causes to be subjected [..] any other person to the deprivation of an individual right that create binding obligations on government actors secured by the Bill of Rights, Article II of the State Constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief." SB-217, Section 3, 13-21-131(1).

195.    "Statutory immunities and statutory limitations on liability damages, or attorney fees do not apply to claims brought under this section." Id. at (2)(a).

196.    "Qualified Immunity is not a defense to liability pursuant to this section." Id. at (2)(b).

197.    Mr. Loma informed officers that he would be willing to speak with them provided his attorney was present when arrested on October 14, 2021.

198.    Arresting officers told Sergeant Burton that Mr. Loma wished to have his attorney present during questioning.

199.    Sergeant Burton then told the arresting officer, "Never mind, we will just take his phone."

200.    Mr. Loma was booked on the Obstruction charge and released on a PR bond that night.

201.    Denver Police Department did not return Mr. Loma's phone once he was released. Mr. Loma was not provided any documentation as to why Denver Police Department was keeping his personal property or when it would be released, as required in the DPD Handbook 106.00(5).

202.    On October 26, 2020, a Search Warrant Affidavit was signed to search the contents of Mr. Loma's phone. This Search Warrant Affidavit was filed by Detective Nicholas Rocco-McKeel.

203.    The Search Warrant Affidavit seeks a general, exploratory examination into almost everything held on Mr. Loma's phone without any particularity to a specific incident and, or, specific time, location, victim, or another person who may have committed any crime.

204.    Based on Sergeant Burton's comment the night Mr. Loma was arrested, and the fact the warrant for the seizure of the phone came twelve days after Mr. Loma's arrest then given to another jurisdiction, it is clear the continued seizure of the phone is unreasonable.

205.    Further, Detective Rocco-McKeel has still failed to provide Mr. Loma with his belongings even after an Order from Denver Municipal Court Judge Chelsea Malone.

## NINTH CLAIM FOR RELIEF
### Violation of Fourteenth Amendment of the United States Constitution resulting Deprivation of Property Pursuant to SB-217
### (Against Officer Burger)

206.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

207.    The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

208.    Here, Officer Burger, as a state actor, utilized his position to assault Mr. Loma, who was constitutionally filming the police in public, which broke Mr. Loma's phone and rendered it useless.

209.     Mr. Loma, as known in the community, advocates for the rights of the unhoused populations and live streams the homeless sweeps conducted in and around Denver.

210.     Mr. Loma was doing nothing more than asking officers to identify themselves as required by state law when Officer Burger hit Mr. Loma's phone out if his hand.

211.     Mr. Loma was not suspected of any crime.

212.     Officer Burger did not go through any legal proceeding before depriving Mr. Loma of his personal property, effectively unlawfully seizing his phone of operational status, depriving Mr. Loma of the free use of his personal property.

**TENTH CLAIM FOR RELIEF**
**Violation of the Fourth Amendment of the United States Constitution resulting in Excessive Force Pursuant to SB-217**
**(Against Officer Burger)**

213.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

214.     The Fourteenth Amendment guarantees a person cannot be deprived of their life, liberty, or property without due process of law.

215.     It is clearly established in Colorado and the 10th Circuit that it is unreasonable for officers to use gratuitous force on a compliant arrestee. *McCowan v. Morales*, 945 F.3d 1276 (10th Cir.2019).

216.     Here, Officer Burger, as a state actor, utilized his position to assault Mr. Loma, who was constitutionally filming the police in public, which broke Mr. Loma's phone and rendered it useless.

217.     Mr. Loma, as known in the community, advocates for the rights of the unhoused populations and live streams the homeless sweeps conducted in and around Denver.

218.   Mr. Loma was doing nothing more than asking officers to identify themselves as required by state law when Officer Burger hit Mr. Loam's phone out if his hand.

219.   Mr. Loma was not suspected of any crime and was in no way being non-compliant.

220.   Officer Burger did not go through any legal proceeding before depriving Mr. Loma of his personal property, effectively unlawfully seizing his phone of operational status, depriving Mr. Loma of the free use of his personal property.

221.   Officer Burger's use of force hitting Mr. Loma's phone out of his hand while not committing any crime, or being suspected of any crime, just so that Mr. Loma could not continue to film police, is an excessive use of force.

## ELEVENTH CLAIM FOR RELIEF
### Violation of First Amendment Retaliation under SB-217
### (Against Officer Burger)

222.   Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

223.   Filming the police is a constitutionally protected activity under the First Amendment and has been clearly established.

224.   In Colorado, there are two statutes that specifically govern the recording of police. Without interfering with an officer's duties "[a] person has the right to lawfully record any incident involving a peace officer." C.R.S. 16-3-311(1). Further, an individual has the right to recover (civilly) when lawfully filming the police and officers either "intentionally interfere with the person's lawful attempt to record" or an officer "retaliates against a person for recording or attempting to record. C.R.S. 13-21-128(III)&(IV).

225.   The Supreme Court held that the "[f]irst Amendment protects a significant amount of

verbal criticism and challenge directed a police officer." *City of Huston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). In closing the Court stated, that "the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint. Id. at 472.

226.    Filming the police is a constitutionally protected activity under the First Amendment. *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017; see *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (stating individuals have the right to video and photograph police subject to time, place, manner restrictions); see *Adkins v. Limtiaco*, 537 Fed App'x 721, 722 (9th Cir. 2013) (holding that Plaintiff's arrest was sufficiently plead as First Amendment retaliation for being arrested for filming the police in public) *American Civil Liberties Union of Illinois v. Alvares*, 679 F.3d 40 Media L. Rep. 1721, 599-600 (7th Cir. 2012) (holding statues preventing the filming of police violated the First Amendment); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (holding Plaintiff had a clearly established right to film the police in the public space). See also *Fordyce v. City of Seattle*, 55 F.3d, 436, 493 (9th Cir. 1995) (holding a First Amendment right to film police in public spaces in matters of public importance).

227.    Mr. Loma is known in the community and to law enforcement as an activist who regularly films police interactions with members of the public and disseminates the materials to the public for free on his YouTube channel, CutThePlastic.

228.    Mr. Loma is a regular fixture at community events and consistently asks questions of the government and participates in community outreach and political initiatives for causes important to him.

229.    The City and County of Denver, along with the Denver Police Department, have made it clear they will do anything to keep Mr. Loma from filming the police and exposing failures within

the City and County of Denver when it comes to policing.

230.    Mr. Loma is known to be vocal and at times uses profanity when peacefully advocating against police brutality.

231.    Due to Mr. Loma's ongoing community activism, the City Attorney's Office and the Denver Police Department have partnered together in order to try and keep Mr. Loma from engaging in political activity that is contrary to the City's positions as it relates to policing and the treatment of unhoused populations.

232.    The City and County of Denver has put in place a structure to arrest Mr. Loma for his political activities and seek Area Restrictions against him so that he cannot return to areas that are likely to hold free assembly, i.e. downtown Denver.

233.    It is clear that the City of Denver and the Denver Police do not appreciate Mr. Loma's advocacy for the community.

234.    Again, in November of 2021, Mr. Loma had his phone hit out of his hand while filming the police which broke his phone so that he could not continue to live stream a homeless sweep being conducted by the City and County of Denver and implemented by the Denver Police Department.

**TWELTH CLAIM FOR RELIEF**
**Assault**
**(Officer Burger)**

235.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

236.    During the attack, Defendant Officer Burger intended to place Mr. Loma in fear of being struck and harmed. Mr. Loma was in fact in fear of being struck and harmed.

237.   As a direct and proximate result of Defendant Officer Burger's actions, Mr. Loma has suffered damages in the form of physical pain and suffering, past, present, and future, emotional distress, humiliation, embarrassment, and great mental pain and suffering. Plaintiff has also suffered economic damages in the form of lost wages and damage to property.

238.   Mr. Loma asserts a claim for punitive and exemplary damages against Defendant Officer Burger pursuant to C.R.S. §13-21-102 in order to punish Defendant for their actions, and to deter them and other persons engaging in similar conduct.

## THIRTEENTH CLAIM FOR RELIEF
### Battery
### (Officer Burger)

239.   Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

240.   During the attack, Defendant Officer Burger intended to cause harmful and offensive contact to Mr. Loma.

241.   Defendant Officer Burger did cause harmful and offensive contact to Mr. Loma.

242.   As a direct and proximate result of Defendant Officer Burger's actions, Mr. Loma has suffered damages in the form of physical pain and suffering, past, present, and future, emotional distress, humiliation, embarrassment, and great mental pain and suffering. Plaintiff has also suffered economic damages in the form of lost wages and damage to property.

243.   Mr. Loma asserts a claim for punitive and exemplary damages against Defendant Officer Burger pursuant to C.R.S. §13-21-102 in order to punish Defendant for their actions, and to deter them and other persons engaging in similar conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor on each of his respective claims and against Defendants jointly and/or severally as follows:

a.  Compensatory damages in an amount that will fully and fairly compensate the Plaintiff for his respective injuries, damages and losses pursuant to 42 USC 1983 and Colorado common law.

b.  Punitive damages pursuant to federal law as punishment and deterrence against the commission of future such conduct.

c.  Pre- and post-judgment interest.

d.  Reasonable attorneys' fees, expert witness fees, and the cost of this action pursuant to 42 USC 1988 and any other applicable federal or state law.

e.  Injunctive relief prohibiting the use of Area Restrictions for those arrested or summoned on charges related to their free speech exercise without the Area Restrictions being narrowly tailored and without providing proper notice to challenge the order in court.

f.  Any other relief the Court deems proper and just.


**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 6th day of October, 2021.

Respectfully submitted,
**BAUMGARTNER LAW, L.L.C.**

 *s/ Adam Yoast*
Adam R. Yoast
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (303) 529-3476
Fax: (720) 634-1018
adam@baumgartnerlaw.com
*Counsel for Plaintiff*

Plaintiff's address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113