**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02214-KLM

BRIAN LOMA, an individual,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
CITY ATTORNEY KRISTIN M. BRONSON, in her individual capacity,
ASSISTANT CITY ATTORNEY MELISSA M. DRAZEN SMITH, in her individual capacity,
ASSISTANT DIRECTOR MARLEY BORDOVSKY, in her individual capacity,
CORPORAL ROBERT D. SMITH, in his individual capacity,
ALLIED UNIVERSAL SECURITY SERVICES,
FALIESHA LYNETT TRIMBLE, in their individual capacity,
ANGELIKA CHAPLINSKY, in their individual capacity,
DETECTIVE NICHOLAS Z. ROCCO-MCKEEL, in his individual capacity,
SERGEANT BURTON, in his individual capacity,
OFFICER BURGER (#98049), in his individual capacity,

     Defendants.

---

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

     Defendants City and County of Denver ("Denver"), Kristin M. Bronson, Melissa M. Drazen Smith, Marley Bordovsky, Robert D. Smith, Nicholas Z. Rocco-McKeel, Jason Burton, and Jeffrey Berger (incorrectly designated as, "Officer Burger") (collectively, "Denver

Defendants"), through their counsel, move to dismiss Plaintiff's Amended Complaint [Doc. #6] pursuant to Fed. R. Civ. P. 12(b)1) and 12(b)(6).

AS GROUNDS, the Denver Defendants state:

## INTRODUCTION

Plaintiff, Brian Loma, asserts various claims for relief against the Denver Defendants pursuant to 42 U.S.C. § 1983 and Colorado State law. Specifically, Mr. Loma contends that members of the Denver City Attorney's Office violated his First Amendment rights with respect to criminal actions filed against him. Mr. Loma asserts § 1983 claims for malicious prosecution, First Amendment retaliation, unlawful seizure, taking of property without due process, and excessive force against the individually identified Denver Police officers. Additionally, the Amended Complaint asserts state law claims pursuant to the Law Enforcement Integrity Act[1] against Det. Rocco-McKeel and Sgt. Berger, and assault and battery claims against Sgt. Berger. The claims against the identified Denver Police officers arise from three different and unrelated incidents: (1) a February 15, 2019 summons issued to Mr. Loma by Cpl. Smith for assault for spitting on a private security guard; (2) a comment made by Sgt. Burton on October 14, 2020 that officers would seize Mr. Loma's phone during his arrest and the continued seizure of Mr. Loma's phone pursuant to a search warrant sought by Det. Rocco-McKeel on October 26, 2020; and (3) a November 17, 2020[2] incident during which Sgt. Berger allegedly struck recording equipment from

---

[1] The Amended Complaint refers to this Act as SB-217.

[2] Although the Amended Complaint repeatedly alleges that this incident occurred on November 17, 2021, Denver Defendants believe this is a typo because the Amended Complaint was filed on October 7, 2021—over a month before Mr. Loma alleges the incident occurred.

Mr. Loma's hand. Finally, Mr. Loma asserts three different claims of municipal liability based on a policy, practice and/or custom of violating Mr. Loma's and others' First Amendment rights.

A review of the Amended Complaint's allegations, however, demonstrate that Mr. Loma fails to plead any plausible federal or state constitutional claims against the Denver Defendants and, as such, his constitutional claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6). Further, his assault and battery claims are also subject to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because such claims are barred by the Colorado Governmental Immunity Act ("CGIA").

## STANDARD OF REVIEW

### I.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the allegations within the four corners of the complaint after assuming all well-pled facts, as opposed to conclusory allegations, are true. A complaint which relies on a recital of the elements of a cause of action supported by mere conclusory statements is not entitled to such an assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive dismissal, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders naked

assertion[s] devoid of further factual enhancement." *Id.* (quoting *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 and 557 (2007)). Accordingly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims") (emphasis in original). An attack on a complaint based upon qualified immunity is evaluated pursuant to Fed. R. Civ. P. 12(b)(6). *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

Generally, only the pleadings themselves can be considered in deciding a Rule 12(b)(6) motion. *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). "Notwithstanding [this] general principle[ ], if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (emphasis added) (citations omitted).

## II.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. "[F]ederal courts are courts of limited jurisdiction," and, therefore, must have a statutory basis to exercise their jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions to

dismiss for lack of subject matter jurisdiction take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. … In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* When there is a challenge of the facts upon which subject matter jurisdiction rests, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1003 (internal citations omitted). Thus, reference to evidence outside the pleadings does not require conversion to a Rule 56 motion. *Id*. The party asserting jurisdiction has the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## ARGUMENT

### I. Mr. Loma's Claims Regarding the March 2019 Area Restriction Order Are Time Barred

Mr. Loma's Second, Third, and Fourth Claims for Relief rely, significantly, on the fact that, on March 18, 2019, an area restriction order was entered against Mr. Loma by the Denver County Court at the request of members of the City Attorney's Office. (*See* Doc. #6, ¶¶ 110, 114.) Since a section 1983 action does not provide a limitations period, state law provides the applicable statute of limitations and federal law determines when the claim accrues. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995); C.R.S. § 13-80-102 (providing two-year statute of limitations). To determine when the statute of limitations accrues, the focus is "on whether the plaintiff knew of the facts that would put a reasonable person on notice that wrongful conduct caused the harm."

*Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). However, a plaintiff does not need to "know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993).

The Amended Complaint alleges that Mr. Loma's First Amendment rights were violated when an area restriction order was entered against him on March 18, 2019. (*See, e.g.,* Doc. #6, ¶¶ 102,  114, 127.) He further alleges that at the time the area restriction was entered he was working on a campaign and was foreclosed from campaigning downtown. *Id.* at ¶ 44. Based on these allegations, Mr. Loma's claim accrued when the area restriction order was entered, and he needed to file his claims relying on this area restriction by March 18, 2021. Mr. Loma did not file his original Complaint [Doc. #1] in this case until August 13, 2021—almost five months past the statute of limitations deadline. Therefore, any claims relying on the March 18, 2019 area restriction as the basis for an alleged constitutional violation, including Plaintiff's Second, Third, and Fourth Claims for Relief, must be dismissed because they are time barred. *See Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (A statute of limitations defense may be raised via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint).

## II. The Amended Complaint Alleges No Facts Demonstrating a Constitutional Violation By an Individual Affiliated with the City Attorney's Office

The Second, Third, and Fourth claims of the Amended Complaint purports to assert three § 1983 claims against City Attorney Bronson and Assistant City Attorneys Drazen Smith and Bordovsky, in their individual capacities, but fails to include factual allegations sufficient to show how each individually named attorney actually caused a violation of Mr. Loma's constitutional rights. Personal liability under § 1983 must be based on the specific defendant's personal

participation in the allegedly unconstitutional conduct. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). However, the Amended Complaint is devoid of allegations sufficient to show an affirmative link between the constitutional violation he alleges and each specific Defendant's alleged participation, control or direction, or failure to supervise. *See, e.g., Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993).

A.    **The Amended Complaint sets forth no specific allegations related to City Attorney Bronson**

Mr. Loma fails to identify any actions by Ms. Bronson that allegedly violated, or caused a violation, of his constitutional rights. Instead, the Amended Complaint alleges only that Ms. Bronson was "at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office" and "the final decision maker as it relates to the prosecution of municipal offenses in Denver Municipal Court." (Doc. #6, ¶¶ 12, 106.) Otherwise, the allegations of the Amended Complaint merely reference actions taken by the "City Attorney's Office," *e.g, id.* at ¶¶ 136, 157; unspecified "City Attorneys,"[3] *e.g.*, *id.* at ¶¶ 45, 144, or other individually named Defendants. *See, e.g., id.* at ¶¶ 61, 107, 119, 122, 157 (actions allegedly taken by Ms. Drazen Smith or Ms. Bordovsky).

City Attorney Ms. Bronson may not be held liable on a theory of *respondeat superior* merely because of her supervisory position over employees of the City Attorney's Office. *See, e.g., Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986). Further, to state a supervisory liability claim over Ms. Bronson, Mr. Loma was required to allege facts showing that: "(1) [Ms.

---

[3] The Amended Complaint refers to all attorneys in the City Attorney's Office as "City Attorney." *See e.g.,* Doc. #6, ¶¶ 42, 45, 119, 122, 136, 144. Thus, there is no specific reference to conduct by City Attorney Bronson.

Bronson] promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *Brown*, 662 F.3d at 1164 (quotation marks and citation omitted). This he has also failed to do. As a result, the Amended Complaint against City Attorney Bronson should be dismissed in its entirety as it fails to establish any personal participation in the alleged constitutional violations.

## B.    The allegations against Melissa Drazen Smith are not sufficient to show an actionable constitutional violation

Here, the allegations of the Amended Complaint against Ms. Drazen Smith pertain only to an email she sent to a "property owner and members of the Denver Initiative" in which she allegedly shared a "policy" seeking area restrictions against individuals, including Mr. Loma, who exercise their First Amendment rights, "despite not being able to convict Mr. Loma[.]" (*See, e.g.,* Doc. #6, ¶ 41); *see also Exhibit A*, Email from Melissa Drazen Smith to Beth Moyski, et al., dated March 4, 2019, with the subject line "victim impact statement."[4] Nevertheless, there are no allegations that Ms. Drazen Smith, in her role as an Assistant City Attorney, was in the position to create, implement, or enforce a policy of seeking area restrictions against individuals engaged in protest activities. There are also no allegations that Ms. Drazen Smith played any direct role in seeking the entry of an area restriction order against Mr. Loma in response to First Amendment protected activities. As a result, the Amended Complaint against Ms. Drazen Smith is also subject to dismissal due to a lack of facts sufficient to establish any affirmative link between Ms. Drazen

---

[4] Although Mr. Loma did not attach the email to his Amended Complaint, it is central to his claims against Ms. Drazen Smith and Denver and, therefore, may be appropriately considered by the Court without converting this Motion to a motion for summary judgment. *See GFF Corp.*, 130 F.3d at 1384.

Smith's email to recipients outside of the City Attorney's Office and the alleged violation of Mr.

Loma's First Amendment rights.

### C.    The Amended Complaint contains no specific allegations related to Marley Bordovsky and the violation of Mr. Loma's constitutional rights

The Amended Complaint is also devoid of any facts tying Ms. Bordovsky to an alleged

violation of Mr. Loma's First Amendment rights. The only facts alleged about Ms. Bordovsky is

that her name appears on an area restriction order entered by a Denver County Court in March

2019 and a pleading *seeking* a second area restriction order against Mr. Loma relating to his arrest

for obstruction in September 2020. (*see* Doc. #6, ¶¶ 118, 119.) Otherwise, the Amended Complaint

only contains general conclusions that Ms. Bordovsky reviewed the criminal cases against Mr.

Loma and "sought to restrict [him] from downtown Denver." *Id.* at ¶¶ 119, 122. Further, the

general allegation that Ms. Bordovsky "reviewed these [criminal] cases", *id.* at ¶ 122, is not

sufficient to demonstrate an affirmative link between this alleged review and the violation of his

constitutional rights. Therefore, Mr. Loma has not stated an actionable claim against Ms.

Bordovsky either.

### III.    Assistant City Attorneys Drazen Smith and Bordovsky Are Also Entitled to Prosecutorial Immunity

Prosecutorial immunity provides government attorneys with absolute immunity "from civil

liability for damages for acts undertaken ... in preparing for the initiation of judicial proceedings

or for trial, and which occur in the course of [their] role as [advocates] for the [municipality]." *See*

*Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, 520 F.3d 1183, 1193 (10th Cir. 2008) (quoting

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273, (1993)). The purpose of this immunity is to allow

prosecutors to carry out their advocacy duties independently, without looking over their shoulder

fearing monetary liability, and to prevent deflection of prosecutorial energies to the defense of claims for damages. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009). Ms. Drazen Smith and Ms. Bordovsky, at all times relevant to the claims asserted against them in the Amended Complaint, were municipal prosecutors for Denver and were acting in that role with respect to any criminal action brought against Mr. Loma. (Doc. #6, ¶¶ 13, 14, 41, 119).

To the extent Mr. Loma may be attempting to argue that Assistant City Attorneys Drazen Smith and Bordovsky may not avail themselves of absolute immunity because their actions were guided by ulterior motives, (*see* Doc. #6, ¶ 154 (insinuating CAO acts against Mr. Loma because of his community activism against Denver's policing and treatment of the homeless)), his argument fails. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (recognizing that the defense of prosecutorial immunity may "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty"). Thus, for this reason as well, the Amended Complaint against Assistant City Attorneys Drazen Smith and Bordovsky must be dismissed in its entirety.

## IV.   The Individually Named Denver Police Defendants Are Entitled to Qualified Immunity

Cpl. Smith, Sgt. Burton, Det. Rocco-McKeel, and Sgt. Berger are entitled to qualified immunity because the Amended Complaint fails to sufficiently plead any factual allegations demonstrating that their conduct violated Mr. Loma's constitutional rights. The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotations and citations omitted); *see Saucier v. Katz*, 533 U.S. 194, 201

(2001)). The doctrine applies "[e]specially in the context of police work, [where] decisions must be made in an atmosphere of great uncertainty. Holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1137 (D. Colo. 2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001).

By asserting qualified immunity, defendants "trigger a well-settled twofold burden" that the plaintiff is "compelled to shoulder." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). Once the issue of qualified immunity has been raised, the burden shifts to the plaintiff to show that (1) the specific actions of each individually named defendant violated a specific statutory or constitutional right, and (2) that right was "clearly established at the time of the conduct at issue." *Pearson v. Callahan,* 555 U.S. 223, 232-33 (2009). Courts have discretion to address either prong first. *Cox*, 800 F.3d at 1246. Here, Mr. Loma's allegations fail to satisfy either prong.

## A. The issuance of a summons does not constitute a seizure within the meaning of the Fourth Amendment as required to plead a plausible malicious prosecution claim

Mr. Loma was not seized as a result of Cpl. Smith's actions in issuing him a summons. Therefore, he cannot plausibly plead a claim for malicious prosecution against Cpl. Smith. To state a malicious prosecution claim, Mr. Loma must show: (1) Cpl. Smith caused his continued confinement or prosecution; (2) the original action terminated in his favor; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) Cpl. Smith acted with malice; and (5) he sustained damages. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007) (citation omitted). Because "[t]he [United States] Supreme Court has held that [ ] malicious prosecution claims are Fourth Amendment claims, a plaintiff must prove that he

11

was also seized in order to prevail." *Nielander v. Bd. of County Comm'rs of County of Republic, Kan.*, 582 F.3d 1155, 1164-65 (10th Cir. 2009) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Put otherwise, to proceed with this claim, Mr. Loma must show that he "suffered a deprivation of liberty consistent with the concept of seizure *as a consequence of a legal proceeding*" to establish his malicious prosecution claim. *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added).

Mr. Loma alleges only that Cpl. Smith "gave him a summons to appear in Denver Municipal Court for a charge of Assault . . .." (Doc. #6, ¶ 39.) He does not allege that he was taken to jail or otherwise confined after being issued the summons. The issuance of a citation—without more—does not rise to the level of a Fourth Amendment seizure. *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007). Without the ability to show he was seized as a result of the summons, Mr. Loma cannot plead a plausible claim that Cpl. Smith violated his Fourth Amendment rights were violated. As such, Cpl. Smith is entitled to qualified immunity from the claims Mr. Loma has asserted against him.

## B. Det. Rocco-McKeel did not violate a clearly established Fourth Amendment right

Mr. Loma's Fifth Claim for Relief attempts to allege a violation of his Fourth Amendment rights relating to the continued seizure of his phone pending the execution of a search warrant sought and obtained by Det. Rocco-McKeel. However, the Amended Complaint contains no allegations to show that the search warrant was invalid or that the length of time between the warrant issuing and being executed resulted in a constitutional violation.

It is unclear whether Mr. Loma is challenging just Det. Rocco-McKeel's Affidavit in Support of Search Warrant ("Affidavit"), or if he is challenging the search warrant itself. However,

under the Fourth Amendment, a search warrant is valid if it meets three requirements: (1) it must have been "issued by [a] neutral, disinterested" judicial officer; (2) "those seeking the warrant must [have] demonstrate[d] to the [judicial officer] their probable cause to believe that the evidence sought [would] aid in a particular apprehension or conviction for a particular offense"; and (3) the warrant must "particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States,* 441 U.S. 238, 255 (1979) (citations, quotations omitted).

As to the first requirement, the warrant was issued by Denver County Court Magistrate Judge James Zobel. *See Exhibit B*, Search Warrant and incorporated Affidavit in Support of Search Warrant.[5] The Amended Complaint does not allege that Magistrate Judge Zobel was not a neutral and disinterested magistrate. Thus, the first requirement weighs in favor Det. Rocco-McKeel.

As to the second requirement, Mr. Loma argues that probable cause was not established for the warrant because the Affidavit did not "specify how Mr. Loma may be involved in any crime or with anyone suspected of the crimes that occurred during this protest." (Doc. #6, ¶ 59.) The Affidavit demonstrates the contrary as it: provided the dates for specific protests and the criminal activities that occurred during each one; identified how he learned that Mr. Loma was present and live streaming at each of these events; with one exception, specified that, "[Mr.] Loma was live streaming during the commission of the crime for which he was arrested;" described that, "[s]ince May 28, 2020, a group has been committing violent and property crimes in the Denver area, and that group "uses their phones to communicate amongst each other in the planning, preparation and

---

[5] Although Mr. Loma did not attach the search warrant and Affidavit to his Amended Complaint, it is central to his claims against Det. Rocco-McKeel and Denver and, therefore, may be appropriately considered by the Court without converting this Motion to a motion for summary judgment. *See GFF Corp.*, 130 F.3d at 1384.

commission of these crimes;" and, described that Mr. Loma has been present with the group committing violent and property crimes in the Denver area or was present while such crimes were being committed. *Ex. B* at pp. 6-9; *see U.S. v. Grubbs*, 547 U.S. 90, 95 (2006) (probable cause exists for a warrant if an affidavit sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.). As a result (and for additional reasons specified in the Affidavit), Det. Rocco-McKeel believed—and the magistrate judge found—probable cause existed that Mr. Loma's cell phone was "highly likely to contain records of the communication involving these criminal events, geographic data relating to these criminal events, and video and/or photographic evidence of these criminal events." *Id.*

Mr. Loma does not deny being present at and filming these events where criminal activity occurred. He alleges, instead, that there is no evidence that he was involved in the criminal activity. (Doc. #6, ¶ 58-59.) This allegation is directly contradicted by the Affidavit's statement that "Brian Loma was himself, involved in the commission of unlawfully stopping vehicle traffic in the roadway on 09/28/20." *Ex. B* at p. 9; *see also id.* at p. 8 (providing more details of Mr. Loma's alleged criminal violation). Regardless, even if Mr. Loma was just an observer/recorder of these incidents, his phone may still be searched if there is probable cause that it contained evidence that a crime had been committed. *See Grubbs,* 547 U.S. at 95. And the magistrate judge found that probable cause did exist and the court's decision is entitled to "great deference." *See Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). Accordingly, the second requirement weighs in favor of Det. Rocco-McKeel.

Finally, as to the third requirement, the search warrant and incorporated Affidavit, were sufficiently particular as to what data was subject to the search. In fact, Det. Rocco-McKeel's Affidavit listed every category of data to be searched and limited the search to data "relevant to the criminal activity described in the affidavit, i.e., assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20)[.]" *Ex. B*, p. 1. The Affidavit explained that, while it may not be possible to limit the data *to be extracted* by the relevant date range, DPD would limit their *search* of the extracted data to the categories of information described in the warrant. *Id.* at pp. 10, 11. Thus, contrary to Mr. Loma's allegation, Det. Rocco-McKeel did not seek "a general, exploratory examination into everything held on Mr. Loma's phone without any particularity to a specific incident and/or specific time, location, victim, or another person who may have committed any crime[,]" as Mr. Loma alleges. (Doc. #6, ¶ 171.) An affidavit in support of a warrant and warrant "meet[ ] the Fourth Amendment's particularity requirement 'when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.'" *United States v. Warner*, No. CR 19-4275 WJ, 2021 WL 1227618, at * (D.N.M. Mar. 31, 2021) (quoting *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990)).

Mr. Loma cannot legitimately claim that the Affidavit sought the indiscriminate search of his cell phone. By its plain terms, the data to be searched had to be limited to the specific criminal incidents outlined on pages three through six of the Affidavit. *See Ex. B*, p. 1. In *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009), the Tenth Circuit found that a search warrant that allowed for a search of "computer records" was sufficiently particular where the warrant as a whole limited the search to evidence of drugs and drug trafficking. *Id.* at 1091-92. The court found that the text of the warrant coupled with the incorporated affidavit showed that the search of the computer was

reasonably limited to drug related evidence. *Id.* at 1092. Here, the Affidavit and warrant limited the search of Mr. Loma's cell phone data to that relating to specified criminal conduct and, therefore, was well within the confines of the Fourth Amendment. Thus, the third requirement for a valid search warrant also weighs in favor of the detective. Because the allegations of the Amended Complaint fail to establish a constitutional violation by Det. Rocco-McKeel, he is entitled to qualified immunity from Mr. Loma's claims.

       i.    <u>The length of time between the seizure of Mr. Loma's phone and the issuance of the search warrant does not establish a constitutional violation</u>

Additionally, Mr. Loma takes issue with the 12 days that passed between his phone being seized and Det. Rocco-McKeel seeking the search warrant. (*See* Doc. #6, ¶ 172.) "[A]n unreasonable delay in seeking a search warrant can sometimes violate the Fourth Amendment." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013). In assessing reasonableness, courts are to look at "the totality of the circumstances" and "to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (quotation marks and citations omitted). While Mr. Loma had an interest in his telephone, the Amended Complaint is devoid of any allegation that in the 12 days between the seizure and the issuance of the search warrant, Mr. Loma objected to its seizure or sought the return of his phone. Based on the allegations of the Amended Complaint, Mr. Loma did not seek the return of his phone until July 21, 2021—approximately nine months after it was seized and the search warrant issued. (*See* Doc. #6, ¶ 67.) Under such circumstances, Det. Rocco-McKeel and other DPD officers were "entitled to assume that any Fourth Amendment interest in the phone's continued possession had been voluntarily

relinquished." *Id.* Moreover, the mere fact that 12 days passed between the seizure of the phone and obtaining a search warrant does not establish a constitutional violation.

For example, in *United States v. Christie*, the Tenth Circuit found that where a computer was seized with the consent of a co-owner and without any objection by the defendant and where the government did not seek a search warrant for five months due to having to focus on higher law enforcement priorities, such delay in seeking the search warrant was not constitutionally unreasonable. 717 F.3d at 1163-64; *see also Warner*, 2021 WL 1227618 at \*5 (finding eight-month-delay between seizure of computers and issuance of search warrant was not unreasonable). Here, only 12 days passed between the seizure and the issuance of the search warrant and Mr. Loma does not contend that he objected to the police department's continued seizure of his phone during those 12 days. Accordingly, for these reasons as well, Det. Rocco-McKeel is entitled to qualified immunity.

    ii.    <u>The length of time it took to conduct the search of the phone was not unreasonable</u>

The Fourth Amendment "does not specify that search warrants contain expiration dates," *Burgess*, 576 F.3d at 1097. A search "warrant remains valid [ ] as long as the information in the oath or affirmation supporting its issuance provides probable cause to believe the items sought will still be found in the place to be searched at the time the search is conducted." *United States v. Garcia*, 707 F.3d 1190, 1194 (10th Cir. 2013) (citation omitted). "[A] substantial delay in the execution of a search warrant may be permissible when the evidence is still likely to be in the place searched." *Warner*, 2021 WL 1227618 at \*5 (*citing Garcia*, 707 F.3d at 1195); *see also Burgess*, 576 F.3d at 1097 ("Probable cause to search was unaffected by the delay and the reasons to search the computer and hard drives did not dissipate during the month and a half the items sat in the

17

evidence locker."). Thus, "[i]n addressing the timeliness of execution of a search warrant, the focus is whether there is still probable cause to support a search." *Warner*, 2021 WL 1227618 at *5 (citing *Garcia*, 707 F.3d at 1194).

The Amended Complaint is devoid of any allegations showing that the probable cause supporting the search warrant had ceased. Mr. Loma was acquitted in April 2021. (*See* Doc. #6, ¶ 65.) However, the Amended Complaint contains no allegations from which it could be determined that the probable cause ceased to exist with respect to the crimes of other individuals during the protests. To the contrary, Mr. Loma admits that, on July 21, 2021, Det. Rocco-McKeel informed him that his phone had been transferred as potential evidence in another case. *Id.* at ¶ 68.

Further, while Mr. Loma alleges that Det. Rocco-McKeel held his phone for close to a year, the Amended Complaint does not contain any allegations to establish a constitutional violation due to the length of time DPD had his phone before it was returned to him. Regardless, where, as here, the facts do not negate the existence of probable cause, Det. Rocco-McKeel is entitled to qualified immunity.

### C. Mr. Loma has not pled a plausible Due Process claim

Mr. Loma's Sixth Claim for Relief fails to state a plausible Fourteenth Amendment violation against Sgt. Berger for striking Mr. Loma's recording gear, which knocked it from Mr. Loma's hand onto the ground where it broke. (Doc. #6, ¶ 77.) While Mr. Loma alleges that Sgt. Berger violated his Fourteenth Amendment rights, he fails to identify whether he is pleading a procedural due process claim, substantive due process claim, or both. Sgt. Berger should not be required to guess which one. *See Tonkovich v. Kansas Bd. of* Regents, 159 F.3d 504, 527 (10th Cir. 1998). Regardless, based on his Amended Complaint, it appears that Mr. Loma is attempting

to assert a procedural due process claim against Sgt. Berger. (*See* Doc. #6, ¶ 182 ("Officer Burger did not go through any legal proceedings before depriving Mr. Loma of his personal property").)

To establish a procedural due process claim against Sgt. Berger, Mr. Loma must establish that: (1) Sgt. Berger was operating under the color of state law; (2) his phone falls within the definition of property; and (3) the alleged loss amounted to a deprivation without due process of law. *See Parratt v. Taylor*, 451 U.S. 527, 536-39 (1981), *overruled on unrelated grounds by Daniels v. Williams*, 474 U.S. 327 (1986). For purposes of this Motion, Sgt. Berger does not dispute that Mr. Loma can establish the second element of a procedural due process claim. Mr. Loma cannot, however, establish the first or third elements.

In order to satisfy that first element of his due process claim, Mr. Loma must allege that Sgt. Berger "exercised power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir.1996) (internal quotation marks and citation omitted). Nevertheless, "the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state." *Jojola v. Chavez,* 55 F.3d 488, 493 (10th Cir.1995) (internal quotation marks omitted). Rather, "before conduct may be fairly attributed to the state because it constitutes action under color of state law, there must be a real nexus between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id.* (internal quotation marks and citation omitted). Put otherwise, the conduct which deprives the right must be in some way related to the authority.

The Amended Complaint fails to include factual allegations establishing the requisite nexus between Sgt. Berger's alleged unconstitutional conduct and his authority as a police officer. At the

end of the day, any person can strike at another person. In doing so, Sgt. Berger exercised no "power possessed by virtue of state law and made possible only because [he] was clothed with the authority of state law." *Id.* at 492-93. The fact that Sgt. Berger was on duty when he allegedly struck Mr. Loma's recording equipment does not alone render his actions under color of state law. *See Haines*, 82 F. 3d at 1508. The Amended Complaint does not allege that, at the time Sgt. Berger allegedly struck Mr. Loma's recording equipment, Sgt. Berger was attempting to question Mr. Loma, arrest him, remove him from the area, or was otherwise exerting any form of authority over him. *See How v. City of Baxter Springs, Kansas*, 217 F. App'x 787, 794 (10th Cir. 2007) ("Where state action is concerned, the proper inquiry is whether, *at the time of the alleged constitutional violation,* the defendant was a state actor."). As a result, the Amended Complaint fails to sufficiently allege that Sgt. Berger was acting under the color of state law at the time of the challenged conduct.

The Amended Complaint's allegations also fail to sufficiently plead the third element because a post-deprivation remedy was available to him under Colorado law. Where, as here, Mr. Loma was not deprived of his phone pursuant to some established state procedure, and process could not be offered before the deprivation took place, the availability of post-deprivation remedies can satisfy the due process clause. *See Parratt*, 451 U.S. at 539 (discussing and collecting cases). In fact, the Supreme Court has held that a post-deprivation process is sufficient to satisfy due process in cases involving the tortious loss of property resulting from "a random and unauthorized act by a [government] employee." *Id.* at 541. Plaintiff admits that Colorado law provides such post-deprivation process. (*See* Doc. #6, ¶ 224.) Specifically, C.R.S. § 13-21-128, sets forth a

statutory framework for individuals who were filming police and had their recording equipment

unlawfully damaged by a police office, which provides, in relevant part:

> Notwithstanding any other remedies, a person has a right of recovery against a
> peace officer's employing law enforcement agency if a person attempts to or
> lawfully records an incident involving a peace officer and (I) A peace officer
> unlawfully destroys or damages the recording or recording device . . .

C.R.S. § 13-21-128(1)(a)(I). While Denver Defendants do not believe that Sgt. Berger's actions

were unlawful, this statute "provides a remedy to persons who believe they have suffered a tortious

loss at the hands of a" peace officer, and existed at the time of Mr. Loma's alleged loss. *Parratt*,

451 U.S. at 543. Thus, the Amended Complaint fails to allege a plausible violation of the Due

Process Clause of the Fourteenth Amendment by Sgt. Berger and he is entitled to qualified

immunity.

### D. Sgt. Berger did not "seize" Mr. Loma and, therefore, is entitled to qualified immunity on Mr. Loma's claim for excessive force under the Fourth Amendment

Mr. Loma's Seventh Claim for Relief fails to establish that Sgt. Berger violated Mr.

Loma's Fourth Amendment rights when he struck Mr. Loma's recording gear out of his hand.

(Doc. #6, ¶ 77.) "To state a claim of excessive force under the Fourth Amendment, a plaintiff

must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Brower v.*

*Cnty. of Inyo*, 489 U.S. 593, 599 (1989)); *see also Graham v. Connor*, 490 U.S. 386, 395-97

(1989); *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010). "A seizure requires the use of

force *with intent to restrain*." *Torres v. Madrid*, 141 S.Ct. 989, 998 (2021) (italics in original).

In determining whether a use of force was made with intent to restrain, "the appropriate inquiry

is whether the challenged conduct *objectively* manifests an intent to restrain . . .." *Id.* (citing

*Nieves* v. *Bartlett*, 139 S.Ct. 1715, 1724-25 (2019)). "[P]olice can be said to have seized an

individual only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quotation marks and citation omitted).

Applying these principles to the factual allegations in the Amended Complaint, Sgt. Berger's action in allegedly striking the recording gear from Mr. Loma's hand, and nothing further, does not arise to the level of a seizure. The Amended Complaint does not allege that Sgt. Berger attempted, in any way, to restrain Mr. Loma's freedom of movement or that Mr. Loma was not free to leave. This pleading deficiency also requires dismissal of Mr. Loma's Seventh Claim for Relief—as Sgt. Berger is also entitled to qualified immunity for this reason as well.

### E. The Amended Complaint fails to plausibly plead that any of Denver Police Defendants retaliated against Mr. Loma for exercising his First Amendment rights

In his Fourth Claim for Relief, Mr. Loma purports to allege a First Amendment retaliation claim against Cpl. Smith, Det. Rocco-McKeel, Sgt. Burton, and Sgt. Berger. To establish a First Amendment retaliation claim, Mr. Loma must show that (1) he was engaged in activity protected by the First Amendment, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000). With respect to each of these Defendants, Mr. Loma fails to show that their actions were substantially motivated as a response to Mr. Loma's First Amendment activities.

i. Cpl. Smith issued a summons to Mr. Loma for allegedly spitting on a private security guard, not because Mr. Loma was filming the security guards

The Amended Complaint is devoid of any factual allegation demonstrating that Cpl. Smith issued a summons to Mr. Loma in retaliation for Mr. Loma's filming of private security guards. Instead, it alleges that Cpl. Smith issued the summons for assault based on statements made by the victim and another witness confirming that Mr. Loma spat on the victim. (Doc. #6, ¶¶ 29-30.) Mr. Loma was not issued a summons or otherwise cited for any conduct relating to his filming of private security officers' interactions with a person experiencing homelessness. *Id.* at ¶ 39 (stating that Mr. Loma was given a "summons . . . for a charge of Assault for spitting on Ms. Trimble."). Spitting on someone is not conduct protected by the First Amendment. The only reference Cpl. Smith made to Mr. Loma's recording activities was when, after viewing Mr. Loma's recording to see if it showed the interaction between Mr. Loma and the alleged victim, he told a witness that he did not see any interaction between Mr. Loma and the alleged victim. (Doc. #6, ¶¶ 31-33.) This is hardly sufficient to plausibly allege that Cpl. Smith wanted to retaliate against Mr. Loma for his filming activities. As a result of the Amended Complaint's failure to allege any facts supporting that Cpl. Smith decided to cite Mr. Loma because of his actions in recording the security officers, his Fourth Claim for Relief as alleged against Cpl. Smith should be dismissed.

ii. Mr. Loma fails to establish any of the elements of a First Amendment retaliation claim against Sgt. Burton

Mr. Loma likewise fails to allege any facts establishing any of the elements of a First Amendment retaliation claim against Sgt. Burton. The Amended Complaint states that, on October 14, 2020, when Mr. Loma was arrested by non-party Denver Police officers pursuant to a warrant obtained from a non-party Denver Police sergeant, Mr. Loma declined to speak with the officers

about some crimes that had been committed over the summer during the ongoing protests in downtown Denver without his attorney present. (Doc. #6, ¶¶ 46-47, 49.) When the arresting officers informed Sgt. Burton—who was not present, but was on the phone—of Mr. Loma's refusal, Sgt. Burton told the arresting officers, "[n]ever mind, we will just take his phone." *Id.* at ¶¶ 50-52. That is the only factual allegation about Sgt. Burton's conduct, and it does not support any inference that Sgt. Burton made this comment in retaliation for Mr. Loma's filming of police and protest activities throughout the summer. The Amended Complaint makes clear that the officers, including Sgt. Burton, wished to speak with Mr. Loma about criminal conduct occurring during protests in 2020. *Id.* at ¶ 49. They knew—or at the very least suspected—that Mr. Loma's phone contained video of such criminal misconduct. *See id.* at ¶ 58; *Ex. B*. The fact that Sgt. Burton indicated that they would seize Mr. Loma's phone for purposes of investigating unsolved crimes that occurred over the summer fails to establish that he was motivated by a desire to retaliate against Mr. Loma for his filming activities.

Finally, the Amended Complaint fails to allege that Sgt. Burton caused him any injury that would chill a person of ordinary firmness from engaging in conduct protected by the First Amendment. There is no allegation that Sgt. Burton is who actually seized his phone. Mr. Loma was arrested pursuant to an arrest warrant authored by another Denver Police officer. (Doc. #6, ¶ 47.) The search warrant that allowed DPD to keep Mr. Loma's phone was also authored by another Denver Police officer. *Id.* at ¶ 55. Thus, the Amended Complaint is devoid of any facts supporting that Sgt. Burton's comment caused an injury to Mr. Loma and, as a result, he is entitled to qualified immunity from the First Amendment claim.

    iii.    <u>Det. Rocco-McKeel sought a search warrant for Mr. Loma's phone to investigate potential crimes</u>

Similarly, the Amended Complaint lumps Det. Rocco-McKeel into the First Amendment retaliation claim but fails to include any supporting factual allegations. (*See* Doc. #6, ¶¶ 146-162.) As discussed in the preceding section IV.B., the plain language of the search warrant and Affidavit establish that the purpose for the search warrant was to investigate specified criminal activities occurring between May 28, 2020 and October 14, 2020, including suspected criminal conduct by Mr. Loma. *See Ex. B*. Because the Amended Complaint fails to include any factual allegations supporting that Det. Rocco-McKeel sought a search warrant for Mr. Loma's phone because he desired to retaliate against Mr. Loma for his filming activities, Det. Rocco-McKeel is entitled to qualified immunity and Mr. Loma's the Fourth Claim for Relief should be dismissed.

    iv.    <u>The Amended Complaint does not show Sgt. Berger acted in retaliation for Mr. Loma's conduct in recording police activity</u>

Finally, the Amended Complaint fails to plausibly allege that Sgt. Berger struck Mr. Loma's recording equipment out of his hand in response to Mr. Loma's recording activities. Mr. Loma merely alleges that he was recording Denver employees erecting a fence in the area of a homeless encampment. (Doc. #6, ¶¶ 70-73.) After Mr. Loma approached the crew erecting the fence, he was approached by Sgt. Berger who refused to identify himself in response to Mr. Loma's repeated demands to do so. *Id.* at ¶ 74. Sgt. Berger then called over additional officers, who Mr. Loma filmed while he requested that they, too, identify themselves. *Id.* at ¶¶ 75-76. These events occurred over the course of a few minutes during which Sgt. Berger did not make physical contact with Mr. Loma, did not order Mr. Loma to stop filming, and did not make any overt gestures to prevent Mr. Loma from recording. *Id.* at ¶¶ 73-76. According to Mr. Loma, the only commands

Sgt. Berger gave him were to back up from the crew erecting the fence. *See id.* at ¶ 74. The only response Sgt. Berger gave to Mr. Loma's repeated demands to identify himself was to verbally refuse and to call back up. *Id.* at ¶¶ 76-77.

At best, the factual allegations establish that Sgt. Berger made contact with Mr. Loma's recording equipment in an attempt to get Mr. Loma to move back when he got closer to Sgt. Berger to read the name badge on his lapel—not because Sgt. Berger was attempting to stop Mr. Loma's recording efforts. *Cf. McJunkins v. Susquehanna*, No.1:CV-07-0428, 2008 WL 4671775, at *2, 4 (M.D. Pa. Oct. 17, 2008) (officer was reasonably concerned for his safety when plaintiff was argumentative with officers and encroached on their safe space). As a result, Mr. Loma's Fourth Claim for Relief as to Sgt. Berger should be dismissed for failing to establish that Sgt. Berger had the requisite motivation for a First Amendment retaliation claim.

## V.    Mr. Loma's Attempts to State a Plausible Municipal Liability Claim Also fail

Claims two, three, and four of the Amended Complaint seek to impose municipal liability on Denver. Specifically, Mr. Loma alleges that Denver has a policy of seeking area restrictions in municipal criminal cases against defendants who were exercising their First Amendment rights based on the content of their speech; a custom of issuing area restrictions against individuals who are arrested or issued a summons while exercising free speech rights to keep them out of downtown Denver; and a custom of specifically retaliating against him based on the content of his speech. (Doc. #6, ¶¶ 102, 129, 131, 162.) To assert a plausible municipal liability claim, Mr. Loma must allege facts showing that (1) his constitutional rights were violated; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). An "official policy or custom" may be shown

by the existence of "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 770 (10th Cir. 2013).

Here, the failure to sufficiently plead that any of the Denver Defendants violated his constitutional rights requires dismissal of Mr. Loma's municipal liability claims. Further, as discussed below, the Amended Complaint fails to allege facts showing that Mr. Loma's alleged injuries were caused by an official policy or widespread custom. *See Schneider*, 717 F.3d at 770-71. Thus, even when construed in the light most favorable to Mr. Loma, the Amended Complaint states no plausible grounds for municipal liability.

### A. Mr. Loma fails to sufficiently plead a plausible municipal liability theory based on an official policy

To support a municipal liability claim based on an official policy, Mr. Loma must show that the challenged conduct was taken pursuant to a policy adopted by an official with policymaking authority in that area of the city's business. *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The Amended Complaint alleges that, "[Denver], by and through its City Attorney's Office, has an official policy of issuing Area Restrictions in municipal criminal cases for defendants who exercise their Free Speech Rights based on the content of their speech." (Doc. #6, ¶ 103.) This allegation fails on its face because the City Attorney's Office is not vested with the power to issue area restrictions; a court must enter that order. *See* Ex. A (noting that the court must issue an area restriction).

Mr. Loma's claim also fails because the email upon which he attempts to rely to establish liability does not demonstrate the existence of an official municipal policy of targeting people exercising their First Amendment rights. To the contrary, it specifically thanks downtown

businesses "for participating in the efforts *to accommodate* free speech on the [16th Street] mall."
*Id.* (emphasis added). It then notes that they have had difficulty with people "who consistently step
on that line," and when people overstep their First Amendment rights, the City Attorney's Office
"continue[s] to prosecute [them] vigorously, but have had limited success in getting a penalty that
deters the behavior." *Id.* In the context of pending criminal cases, Ms. Drazen Smith then requests
victim impact statements pertaining to how Mr. Loma and Mr. Brandt's conduct has negatively
impacted the recipients of the email in hopes that it may persuade a judge to impose stronger
sanctions should either man be convicted. *Id.* There is no question that at the time the email was
sent, Mr. Loma was a criminal defendant in a case being prosecuted by the CAO for his alleged
assault on a security officer working in a building on the 16th Street Mall. (*See* Doc. #6, ¶¶ 23, 29,
40, 45 (establishing citation was issued on Feb. 15, 2019 and criminal case was not dismissed until
Aug. 18, 2019)). Moreover, one email does not show that any policy or custom existed.

Further, Mr. Loma does not allege that Ms. Drazen Smith is a final policymaker for the
CAO—only that she is an agent of Denver. (Doc. #6, ¶ 107). While Mr. Loma *does* allege that Ms.
Bronson is a final decisionmaker, *id.* at ¶¶ 12, 106, the Amended Complaint is bereft of any facts
showing that Ms. Bronson adopted the challenged policy. Thus, even when accepting the well-
pled allegations of the Amended Complaint as true, Mr. Loma fails to plausibly allege that an
unconstitutional policy was adopted by a municipal policymaker. As a result, Mr. Loma's Second
Claim for Relief against Denver should be dismissed.

### B.  Mr. Loma fails to sufficiently plead a widespread custom

The Amended Complaint's Third and Fourth Claims for Relief purport to allege two
additional claims against Denver based on a widespread practice of violating First Amendment

rights and a custom of retaliating against Mr. Loma based on the content of his speech, respectively. Municipal liability may be based upon an informal custom so long as the "custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Typically, plaintiffs demonstrate the existence of a continuing, widespread, and persistent custom by offering "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Here, the Amended Complaint fails to include sufficient factual allegations of prior incidents involving similarly situated individuals that would even arguably suggest that Denver deliberately maintains the customs he alleges.

For example, Mr. Loma alleges that Denver has a custom of seeking area restrictions against individuals who were exercising their constitutionally protected rights to protest to keep them out of downtown Denver. *See id.* at ¶¶ 129-145.) Mr. Loma relies, in part, on the allegations that an area restriction was entered against him during his *assault* case in 2019 and another was sought against him in his case pertaining to his arrest for obstruction relating to an incident that occurred on September 28, 2020. *E.g., id.* at ¶¶ 46, 118, 135. These allegations do not demonstrate the factual similarity necessary to establish a widespread custom. In fact, the Amended Complaint is absent of any detailed factual allegations of the incident in September 2020 other than to say that it took place at 8th and Broadway. *See id.* at ¶ 121. Thus, all the Amended Complaint alleges is that Mr. Loma was arrested for two different charges (assault and obstruction) in two different

places (16th Street Mall and 8th & Broadway). There are general allegations that "Plaintiff's attorney's law firm has defended several Denver Municipal cases involving peaceful protestors . . . where individuals were issued an Area Restriction . . .." *Id.* No further details, which arguably are in Plaintiff's counsel's knowledge, were provided, which prohibits the Court from determining that the allegations are sufficient to demonstrate the existence of a widespread practice to violate constitutional rights.

The Amended Complaint also asserts that Denver has a custom of specifically retaliating against Mr. Loma for exercising his First Amendment Rights. (Doc. #6, ¶¶ 146-162.) In order to state a plausible claim under this theory, Mr. Loma must still allege similar instances of misconduct. *Carney*, 534 F.3d at 1274. He fails to do so here. None of the instances alleged by Mr. Loma are substantially similar. Cpl. Smith cited Mr. Loma for allegedly spitting on someone. Sgt. Burton made a comment based on Mr. Loma's refusal to speak with officers without his attorney present after Mr. Loma was arrested pursuant to a warrant. Det. Rocco-McKeel sought a search warrant for Mr. Loma's phone because he believed it contained evidence of criminal acts by both Mr. Loma and other individuals. Sgt. Berger struck the recording equipment in Mr. Loma's hand when Mr. Loma got too close him. Ms. Drazen Smith sent an email to victim's impacted by Mr. Loma's conduct that she described as stepping on the line of free speech seeking victim impact statements to be used at a potential sentencing hearing. *See Ex. A*. Ms. Bordovsky's name appeared in later cases in which an area restriction was sought by CAO attorneys against Mr. Loma. As discussed above, Mr. Loma fails to allege any actual actions taken by Ms. Bronson. With the exception of the two area restrictions, which were sought by CAO attorneys over two years apart from one another, (Doc. #6, ¶¶ 114, 118), none of these incidents even border on similarity.

Even if the Court accepts the well-pled allegations of the Amended Complaint as true, the absence of any factual allegations demonstrating substantial similarity between the incidents Mr. Loma has included are not sufficient to impose municipal liability on Denver based upon a widespread practice or custom.

### C.  A direct causal link is also lacking

Causation is a required element of municipal liability. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Monell*, 436 U.S. at 691–92). To establish causation, "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Id*. at 770. To show causation, Mr. Loma must present competent evidence that directly connects Denver's alleged policy and/or customs to the constitutional violation he is alleging. *See City of Canton*, 489 U.S. at 385. A "municipality is not liable solely because its employees caused an injury," but rather, because the municipality, "[t]hrough its [own] deliberate conduct, ... [was] the 'moving force' behind the injury." *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). Accordingly, the causation requirement is stringent and courts must "carefully test the link" between the alleged policymaker's inadequate decision and the particular injury alleged." *Brown*, 520 U.S. at 410, 415.

The Amended Complaint contains no allegations sufficient to demonstrate a direct causal link between any of Mr. Loma's various municipal liability theories and the actions of the individual Defendants in this case. As discussed at length above, the Amended Complaint cannot even establish that any of the individual Defendants were motivated by a desire to retaliate against Mr. Loma for conduct protected by the First Amendment. Accordingly, for this reason as well, Mr. Loma's municipal liability theories should be dismissed

**VI.    Mr. Loma's Claims under the Law Enforcement Integrity Act Also Fail**

Mr. Loma purports to assert one claim against Det. Rocco-McKeel[6] and three claims against Sgt. Berger[7] pursuant to Colorado's Law Enforcement Integrity Act, which requires a violation of a right secured by the Colorado Constitution. C.R.S. § 13-21-131(1). Mr. Loma, however, relies only on violations of the United States Constitution to support these claims. (*See* Doc. #6, ¶¶ 193, 207, 214, 223.) The Amended Complaint's failure to identify a violation of a right secured by the Colorado Constitution by Det. Rocco-McKeel and Sgt. Berger requires dismissal of these claims.

**VII.    Mr. Loma's Assault and Battery Claims against Sgt. Berger Are Barred by the Colorado Governmental Immunity Act**

The Twelfth and Thirteenth Claims for Relief allege assault and battery against Sgt. Berger. The Colorado Governmental Immunity Act applies to "all claims for injury which lie in tort or could lie in tort[.]" C.R.S. § 24-10-105(1). It is apparent from the Amended Complaint's allegations that Mr. Loma's assault and battery claims against Sgt. Berger "lie in tort" within the meaning of C.R.S. § 24-10-105.

Under the CGIA:

[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment . . . shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury . . .. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

---

[6] Mr. Loma's Eighth Claim for Relief
[7] Mr. Loma's Ninth, Tenth, and Eleventh Claims for Relief.

C.R.S. § 24-10-109(1). Written notice is a jurisdictional prerequisite to filing an action against a public employee, and the failure to comply with the CGIA's notice requirements bars any such action. *See Aspen Orthopaedics & Sports Medicine, LLC*, 353 F.3d at 839-40 (a plaintiff must plead compliance with notice requirements to avoid dismissal on jurisdictional grounds)*; East Lakewood Sanitation District v. District Court*, 842 P.2d 233, 235-36 (Colo. 1992) (when a party fails to strictly comply with the CGIA's notice requirement, the party's action must be dismissed).

Here, the Amended Complaint failed to plead that notice was provided to Denver for the Mr. Loma's assault and battery claims and, Mr. Loma, in fact, failed to provide the requisite notice *See Exhibit C*, Declaration of Brett Malkowich, ¶ 5. Because the dismissal of a complaint is mandatory under the CGIA when a plaintiff fails to provide a timely notice of claim to the public entity, dismissal of the Twelfth and Thirteenth Claims for Relief against Sgt. Berger with prejudice is required by statute. *See* C.R.S. § 24-10-109(1); *Aspen Orthopaedics & Sports Medicine, LLC*, 353 F.3d at 839-40.

## VIII.   Request for Mandatory Award of Attorney Fees for Dismissal of Common Law Assault and Battery Claims against Sgt. Berger

An award of attorney fees is mandatory when a trial court dismisses an action under the CGIA for lack of subject matter jurisdiction. *Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo. App. 1996); *see also* C.R.S. § 13-17-201. As explained by the Court in *Smith*: "[W]hile the consequences may be harsh, we conclude that, consistent with the Supreme Court's analysis in *Trinity Broadcasting*, and the plain language of § 13-17-201, an award of attorney fees is mandatory when a trial court dismisses an action under the [CGIA] for lack of subject matter jurisdiction." *Id*.; *see also Jaffe v. City & County of Denver*, 15 P.3d 806, 814 (Colo. App. 2000)

(C.R.S. § 13-17-201 "is applicable to a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the [CGIA]").

Accordingly, if the Court grants this Motion and dismisses Mr. Loma's assault and battery claims against Sgt. Berger, Sgt. Berger is allowed to seek his reasonable attorney fees and costs incurred as a result of being required to respond to those claims.

**WHEREFORE**, for all of the foregoing reasons, Defendants City and County of Denver, City Attorney Kristin M. Bronson, Assistant City Attorney Melissa M. Drazen Smith, Assistant Director Marley Bordovsky, Corporal Robert D. Smith, Detective Nicholas Z. Rocco-McKeel, Sergeant Jason Burton, and Sergeant Jeffrey Berger, respectfully request that the Court dismiss Mr. Loma's Amended Complaint [Doc. #6] against them in its entirety with prejudice.

Dated this 13th day of December 2021.

Respectfully submitted by,

_s/ Jennifer Johnson_
Jennifer Johnson
Assistant City Attorney
Denver City Attorney's Office
Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, Colorado 80202-5332
Telephone: 720-913-3304
Facsimile: 720-913-3190
E-mail: jennifer.johnson2@denvergov.org
*Attorney for Defendants City and County of Denver, Kristin Bronson, Melissa Drazen Smith, Marley Bordovsky, Robert D. Smith, Nicholas Rocco-McKeel, Jason Burton, and Jeffrey Berger*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 13th day of December 2021, the foregoing **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

Adam R. Yoast
adam@baumgartnerlaw.com
*Counsel for Plaintiff*

Jason D. Melichar,
Kimberly L. Koehler
jason.melichar@wilsonelser.com
kimberly.koehler@wilsonelser.com
*Counsel for Universal Defendants*

*s/ Jennifer Johnson*
Denver City Attorney's Office