# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

**Exhibit B**

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado



Case No. 2020-582721

## SEARCH WARRANT

To Detective Nicholas Rocco-McKeel 06079, or any officer authorized by law to execute a search warrant in the county in which the property is located in Colorado. The Affiant, Detective Nicholas Rocco-McKeel 06079 has filed an affidavit for a search warrant in conformity with the provisions of the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure for the following described property:

The following data stored in the cellular phone(s), SIM card(s), and/or memory card(s), relevant to the criminal activity described in the affidavit (i.e., assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20), which is incorporated by reference and attached hereto, that can be viewed, extracted, copied, and maintained by any member of the Denver Police Department or a designee, the Denver District Attorney's Office or a designee, and/or a computer forensic lab or a designee:

- Data which tends to show possession, dominion and control over said equipment, including device and system ownership information (telephone number, ESN number, serial number, IMEI, IMSI, CCID);
- Passwords, encryption keys, codes, and/or other devices or information that may be necessary to access the device and its contents;
- Date/time, language, and other settings preferences to include wireless local area network setting(s), Bluetooth settings to include device name(s), hotspot SSID (name), and MAC address and connection dates and times to the device;
- System and device usage files, logs, and databases utilized to record device activities such as lock/unlock activities, powering on/off cycles, installation and deletions records;
- Telephone contact lists, phone books and telephone logs;
- Data contained in notes, reminders, documents, calendars and/or other similar applications that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Communications made, stored, sent, received or deleted that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred on 05/28/20 – 10/14/20;
- Photos and videos created, stored, sent, received or deleted, or documents containing such photographs or videos that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- All electronic files, data, videos, and communications, including related metadata and location data, stored, sent, received or deleted from social media and third party applications located on the device that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Communications through the SIRI/GOOGLE ASSISTANT system, including all communications entered and/or recorded into the system as well as communicated from the system to the user that relate to the assaults, arsons, trespassing and criminal mischief that occurred between;
- Global position system (GPS) data and any other geolocation data that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;

Page 1 of 3

# DENVER POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY
### (TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

- Records of internet activity that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20, including internet protocol (IP) addresses and Port IDs, firewall logs, transactions with internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses pertaining to violations of the law or that show who used, owned, possessed, or controlled the device(s).

Located at the premises, person, place, or thing to be searched, described as:

Black Motorola brand, Android type Smartphone bearing "Verizon" in white lettering on the bottom of the back side and having a screen that is chipped around the edges and cracked throughout. Currently secured in the Denver Police Property Management Bureau as item #1144751-1





Denver Police Department
Property Management Bureau
1331 Cherokee Street, Denver CO 80204

For which a search warrant may be issued upon one or more of the grounds set forth in the Colorado Rules of Criminal Procedure and CRS § 16-3-301 and 19-2-504, namely that this property is stolen or embezzled, or is designed or intended for use as a means of committing a criminal offense, or is or has been used as a means of committing a criminal offense, or the possession of which is illegal, or would be material evidence in a subsequent criminal prosecution in this state or another state, or the seizure of which is expressly required, authorized or permitted by any statute of this state, or which is kept, stored, maintained, transported, sold, dispensed, or possessed in violation of a statute of this state, under circumstances involving a serious threat to public safety or order or to public health, or which would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest warrant is outstanding.

Based upon the affidavit of the above named Affiant, which is incorporated by reference, I am satisfied that there is probable cause to believe that the property described is located at the place or thing to be searched as described above, and probable cause to search that property upon one or more of the grounds set forth in the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure.

Page 2 of 3

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 3 of 13

# DENVER POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

THEREFOR, THE AFFIANT, ANY MEMBER OF THE DENVER POLICE DEPARTMENT OR A DESIGNEE, THE DENVER DISTRICT ATTORNEY'S OFFICE OR A DESIGNEE, AND/OR A COMPUTER FORENSIC LAB OR A DESIGNEE, are commanded to:

- If not already in possession of the device, seize the aforementioned device within 14 days of the date this warrant is signed;
- Access the aforementioned device and view, copy and maintain the above described data contained therein;
- Use and employ such force as may reasonably be necessary in the performance of the duties described herein;
- Deliver to the person from whom the property is taken a copy of this warrant together with a receipt for the property taken, or to leave a copy of the warrant and receipt at the place from which the property was taken;
- Make prompt return of this search warrant, accompanied by a written inventory describing the physical storage media that was seized or copied, to the undersigned judge.

Date October 26, 2020, Time 11:06am

In Denver, Colorado

Judge James Zobel
Signature of Judge

Page 3 of 3

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 4 of 13

# DENVER POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY
### (TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #    4

County/District Court
City and County of Denver, Colorado



Case No. 2020-582721

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Detective Nicholas Rocco-McKeel 06079, state under oath that I have reason to believe that at the place or thing to be searched, described as:

Black Motorola brand, Android type Smartphone bearing "Verizon" in white lettering on the bottom of the back side and having a screen that is chipped around the edges and cracked throughout. Currently secured in the Denver Police Property Management Bureau as item #1144751-1



Denver Police Department
Property Management Bureau
1331 Cherokee Street, Denver CO 80204

In the City and County of Denver, State of Colorado, there is now located the following described property:

The following data stored in the cellular phone(s), SIM card(s), and/or memory card(s), relevant to the criminal activity described in the affidavit (i.e., assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20), which is incorporated by reference and attached hereto, that can be viewed, extracted, copied, and maintained by any member of the Denver Police Department or a designee, the Denver District Attorney's Office or a designee, and/or a computer forensic lab or a designee:
- Data which tends to show possession, dominion and control over said equipment, including device and system ownership information (telephone number, ESN number, serial number, IMEI, IMSI, CCID);
- Passwords, encryption keys, codes, and/or other devices or information that may be necessary to access the device and its contents;
- Date/time, language, and other settings preferences to include wireless local area network setting(s), Bluetooth settings to include device name(s), hotspot SSID (name), and MAC address and connection dates and times to the device;
- System and device usage files, logs, and databases utilized to record device activities such as lock/unlock activities, powering on/off cycles, installation and deletions records;
- Telephone contact lists, phone books and telephone logs;

Page 1 of 10

Case No. 1:21-cv-02214-NYW-SBP  Document 28-2  filed 12/13/21  USDC Colorado
pg 5 of 13



DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #  4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

- Data contained in notes, reminders, documents, calendars and/or other similar applications that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Communications made, stored, sent, received or deleted that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Photos and videos created, stored, sent, received or deleted, or documents containing such photographs or videos that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- All electronic files, data, videos, and communications, including related metadata and location data, stored, sent, received or deleted from social media and third party applications located on the device that relate to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Communications through the SIRI/GOOGLE ASSISTANT system, including all communications entered and/or recorded into the system as well as communicated from the system to the user that relate to the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20;
- Global position system (GPS) data and any other geolocation data that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred on between 05/28/20 – 10/14/20;
- Records of internet activity that relates to the planning and commission of the assaults, arsons, trespassing and criminal mischief that occurred between 05/28/20 – 10/14/20, including internet protocol (IP) addresses and Port IDs, firewall logs, transactions with internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses pertaining to violations of the law or that show who used, owned, possessed, or controlled the device(s).

For which a search warrant may be issued upon one or more of the grounds set forth in the Colorado Rules of Criminal Procedure and CRS § 16-3-301 and 19-2-504, namely that this property is stolen or embezzled, or is designed or intended for use as a means of committing a criminal offense, or is or has been used as a means of committing a criminal offense, or the possession of which is illegal, or would be material evidence in a subsequent criminal prosecution in this state or another state, or the seizure of which is expressly required, authorized or permitted by any statute of this state, or which is kept, stored, maintained, transported, sold, dispensed, or possessed in violation of a statute of this state, under circumstances involving a serious threat to public safety or order or to public health, or which would aid in the detection of the whereabouts of or in the apprehension of a person for whom a lawful arrest warrant is outstanding.

The facts that establish the grounds for issuance of a Search Warrant are as follows:

Your Affiant, Detective Nicholas Rocco-McKeel 06079, has been a Police Officer for over 14 years and has received training in criminal investigations, crime scene investigations and evidence collection. Your Affiant was assigned to the Denver Police Department District 6 Investigations Unit in May of 2019 as a

Page 2 of 10

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 6 of 13

DENVER POLICE DEPARTMENT
GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #   4

| County/District Court City and County of Denver, Colorado | | |
|---|---|---|

Case No. 2020-582721

Detective. Your Affiant currently holds this position. Your Affiant was previously assigned to the Denver Police District 6 Patrol Division for over 12 years. Your Affiant learned the following information through the written accounts and observations of the involved Denver Police Officers, from consulting with fellow Detectives, through the review of open source social media, from the review of Body Worn Camera (BWC) footage and from past and current case investigations.

Historical:
On 05/28/20 the Denver area began to experience demonstrations consisting of large groups of people. During these demonstrations, multiple criminal incidents began to occur. The criminal episodes occurring within the demonstrations continued through the summer and into the fall. The criminal episodes include but are not limited to the following:
-05/29/20 Weapons Seizure at the State Capitol 200 E Colfax Ave.
-05/30/20 Hit and Run and one party with a machete arrested 1600 N Lincoln St.
-06/02/20 Felony Menacing.
-06/25/20 Civil War Statue damaged at the State Capitol. Columbus Statue taken down from Civic Center Park. Three parties later arrested for Felony Criminal Mischief.
-06/27/20 Arson at the State Capitol and bomb threat.
-07/03/20 "Times Up APD" Aurora Police District 1 Station take-over.
-07/19/20 Numerous assaults during the Back the Blue Rally in Civic Center Park. One suspect arrested for assault on-scene, One additional suspect later arrested for assault.
-07/24/20 "Fuck the Feds" rally and resulting property destruction on the 16th St Mall. One suspect later arrested for felony criminal mischief.
-07/25/20 Aurora Police protest and resulting shooting.
-07/29/20 Homeless encampment clean up at Veteran's Park.
-08/19/20 Homeless encampment clean up at 29th St and Glenarm Pl. Five suspects arrested for Obstruction and Assault to Police.
-08/22/20 "Give Em Hell" Protest at Denver Police Headquarters 1331 N Cherokee St. Eight suspects arrested for obstruction, throwing missiles, dangerous weapons, criminal mischief.
-08/25/20 Homeless encampment clean up at 22nd St and Stout St. Eight suspects arrested for assault to peace officer and interference.
-08/28/20 Attempt to breach the fence at the Denver Police District 6 Station 1566 N Washington St.
-09/01/20 Denver Police Academy break-in 2155 N Akron Way. Seven suspects arrested for criminal trespass and possession of burglary tools.
-09/11/20 "Justice for Antonio Blackbear" march and criminal mischief to the Denver Jail, Denver Courthouse and the State Capitol. Two suspects arrested for criminal mischief.
-09/23/20 Breonna Taylor Protest.
-09/28/20 "Justice for Trey March"- documented obstruction of streets. One suspect later arrested for obstruction of roadways.
-10/10/20 "Patriot Muster and Soup Drive Counter Protest"- Two arsons and shooting homicide 100 W 14th Ave. One suspect arrested for homicide.

Throughout the responses and investigations of these criminal incidents, Your Affiant and fellow Detectives recognized that many individuals were present for multiple events. Your Affiant and fellow Detectives reasonably believed that the participants were receiving calls to action via their cellphones and

Page 3 of 10

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 7 of 13

# DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY

(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT
PRESENTED/REFUSED
BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

were using their cellphones communicate over social media, apps, voice calls and text messaging. Three incidents stand out with particular importance:

1) On 09/01/20 a group attempted to break into the Denver Police Academy 2155 N Akron Way. Seven suspects were arrested at the Police Academy. Four of those arrested agreed to speak with Detectives after being advised of their Miranda rights. All four of those interviewed stated that during the summer, they had met and developed relationships with people at demonstrations where crimes had occurred. All four of those interviewed stated that they had been using their cellphones to communicate with the people they had met and developed relationships with at demonstrations where criminal events had occurred. All four of those interviewed stated that they were using their cellphones to communicate with each other during the planning and commission of the Academy break-in. Search warrants for those phones were obtained. The analysis of the data recovered from the suspects' phones is ongoing. However, the data analyzed thus far reveals that the suspects were using their phone's voice calls, text, social media and apps to communicate with one another on the planning and commission of the Denver Police Academy Break-In. Furthermore, the analysis of the data obtained from the cellphone communication shows that during the preparation for the Denver Police Academy Break-In, the involved parties assumed different roles and assignments relating to the obtaining and supplying of the necessary tools, coordinating the staging area and carrying out the break-in itself.

2) 08/19/20 Homeless encampment clean-up at 29th St and Glenarm Pl. In this incident, Officers were assigned the clean-up of a homeless encampment. A group responded to the clean-up and began to interfere with Officers who were dealing with the camp's occupants and removal of tents and trash. One Officer was kicked in face and suffered multiple broken teeth and another Officer had their Body Worn Camera Stolen. Assisting Officers were forced to encircle the Officers struggling to make arrests as the crowd attempted to extricate arrestees from custody. Your Affiant notes that Timothy Montana 11/27/90 was arrested at both this event and at the 22nd St and Stout St Homeless Encampment Clean-up. Present at this event and at the 22nd St and Stout St homeless encampment clean-up was Brian Loma 03/12/76, the subject of this warrant and investigation, and Daxx Dalton 07/07/97. Loma was live-streaming at both events.

3) 08/25/20 Homeless Encampment Clean-up at 22nd St and Stout St. A group responded to target Police for violence during another homeless encampment clean-up. The group physically interfered with Officers as they attempted to deal with the camp's occupants and the removal of tents and trash. Officers were again assaulted. Timothy Montana 11/27/90 was arrested at both this event and at the 29th St and Glenarm Pl homeless encampment clean-up. Daxx Dalton 07/07/97 was arrested at this event and was present at the 29th St and Glenarm Pl. Brian Loma 03/12/76 was present and live-streaming at both this event and at the 29th and Glenarm Pl homeless encampment clean-up.

Because the suspects are communicating via their cellphones through multiple platforms in order to receive and respond to a call to action and to plan and commit the ongoing criminal activity, it becomes vital to the furtherment of Your Affiant's investigation into these criminal incidents to have access to the data contained in those phones.

Page 4 of 10

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
### (TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #  4

| County/District Court<br>City and County of Denver, Colorado | | |
|---|---|---|

Case No. 2020-582721

**Current Probable Cause:**

On 09/28/20 Sergeants Kevin Ford 07046 and Eric Denke 98002 were made aware of a protest march that was starting at the State Capitol 200 E Colfax Ave. Sergeants Ford and Denke monitored the march remotely. At 2321hrs the march participants stood in the intersections of N Broadway and E 8th Ave completely blocking all S/B traffic of N Broadway (which is a one-way Southbound only street). Sergeants Ford and Denke monitored this portion of the march over HALO cameras and through the Youtube live feed from one of the march participants. Sergeants Ford and Denke observed Brian Loma 03/12/76, who is known to Sergeant Ford from numerous previous encounters, among the group that was blocking Broadway vehicle traffic. Loma is also the operator of the Youtube live stream channel "Cut The Plastic" and was live streaming this event (the same live stream that Sergeants Ford and Denke were monitoring). While the group was blocking the street, several vehicles pulled up the intersection and were stopped by the wall of people in the road. One vehicle, a dark colored Jeep was blocked by the group of people in the far East lane of Broadway. Loma ran toward the Jeep. Loma was waiving his arms while in the roadway in what appeared to be an attempt to get the Jeep to stop and remain stationary. Loma gets on the passenger side of the Jeep by the front door. The driver of the Jeep is trapped for a brief period of time but then drives forward through the group. All members of the group are able to move away from the Jeep and avoid injury. The Jeep does not appear to strike any member of the group. A silver sedan attempts to follow the Jeep but is blocked by Loma and the rest of the group. As the group surrounds the sedan, it drives forward and again escapes from the blockade without appearing to strike anyone. Sergeants Ford and Denke completed a US&C arrest warrant for Brian Loma 03/12/76 for Denver Revised Municipal Code 38-86 Obstruction of Streets and Other Public Passageways.

On 10/14/20 at 1940hrs Denver Police Officers were staged to monitor an event occurring in Civic Center Park 1499 N Broadway. Officers were standing in front of the City and County Building 1437 N Bannock St and away from the event itself. Loma approached Officers, while live streaming from his phone, which was on a selfie-stick. Officers Alejandro Zapien-Mata 17019, Matthew Peterson 18011 and Andrew Carman 18002 were familiar with Loma and knew that he had an active warrant for his arrest. Officers told Loma that he was under arrest. Loma went limp and dropped to the ground. Loma's phone and selfie stick landed on the ground next to Loma and were recovered by Officer Zapien-Mata. Officer Zapien-Mata turned Loma's phone and selfie stick over to Officer Peterson. Officer Peterson turned Loma's phone and selfie stick over to Officer Carman, who transported Loma to the Denver Downtown Detention Center 490 W Colfax Ave. Officer Carman then booked Loma's phone into the Denver Police Department Property Management Bureau where it was assigned item #1144751-1.

Your Affiant is familiar with Brian Loma and his Youtube Channel "Cut The Plastic". Your Affiant consulted with Officer Chelsea Novotny 14030, who is also familiar with Loma and his Youtube channel "Cut the Plastic". Officer Novotny was tasked with cross referencing Loma's live streaming with the criminal incidents occurring in the Denver area since 05/28/20. Your Affiant learned that Loma was present and live-streaming at every incident listed above with the exception of the Denver Police Academy Break-In.

Brian Loma was present and live-streaming at both Homeless encampment clean-ups that turned into a coordinated attack on the Officers assigned to the clean-ups. Loma was present and live-streaming on

DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY

(TRAF - OTHER)

GO# 2020-582721

ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #  4

| County/District Court City and County of Denver, Colorado | | |
|---|---|---|

Case No. 2020-582721

10/10/20 during the Patriot Muster when two arsons occurred. Additionally, Loma was present and live streaming during the shooting homicide in the 100 block of W 14th Ave in conjunction with the same event.

Most recently, Loma was live streaming during the commission of the crime for which he was arrested (Obstruction of Streets and Other Public Passageways at E 8th Ave and N Broadway). Loma was also live-streaming when he was arrested for his resulting outstanding warrant and his phone was seized by Officers.

On 10/20/20 Officer Greg Dulayev 13092 responded to the Denver Police Department Property Management Bureau 1331 N Cherokee and inspected item #1144751-1. Officer Dulayev verified that item #1144751-1 was a Black Motorola brand, Android type Smartphone bearing "Verizon" in white lettering on the bottom of the back side and having a screen that is chipped around the edges and cracked throughout. Officer Dulayev provided Your Affiant with photographs of the phone and evidence packaging.

Your Affiant submits the following:
-Since 05/28/20 a group has been committing violent and property crimes in the Denver area.
-The group committing these crimes uses their phones to communicate amongst each other in the planning, preparation and commission of these crimes.
-Brian Loma has been with the group committing these crimes on multiple occasions and has been present during the commission of many of these crimes.
-Brian Loma was himself, involved in the commission of unlawfully stopping vehicle traffic in the roadway on 09/28/20.

Your Affiant therefor, reasonably believes that Loma's cellphone is highly likely to contain records of the communication involving these criminal events, geographic data relating to these criminal events and video and/or photographic evidence of these criminal events. Your Affiant maintains that a forensic examination of Loma's phone is necessary in order to obtain the communication evidence, the geographic evidence and all other evidence of crimes committed. Your Affiant respectfully requests that the forensic examination of Loma's phone be allowed to proceed so that Your Affiant may further this investigation.

Due to Loma's presence at and close proximity to multiple incidents where crimes where committed by a group of people and due to Loma having committed at least one of those crimes himself, Your Affiant asserts that there is probable cause to believe that Loma has knowledge of those crimes and is privy to the group's motivations and preparations towards the commission of those crimes. Your Affiant further asserts that due to the large number of criminal events at which Loma was confirmed to be present by his own live-streaming and due to the information learned from the 09/01/20 Denver Police Academy Break-In regarding the use of cellphones to communicate the planning, preparation and commission of crimes, there is probable cause to believe that there is evidence of those crimes stored on Loma's cellphone. Your Affiant wishes emphasize that every incident detailed in this affidavit involves a crime that was committed. Your Affiant's investigation is solely focused on those crimes and Your Affiant is not seeking to obtain any information about protected behavior relating to individuals not engaging in criminal activity.

*Wireless phone capabilities:*

Page 6 of 10

# DENVER POLICE DEPARTMENT
## GENERAL OFFENSE HARDCOPY
### (TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

A cellular telephone is a handheld wireless device used for, inter alia, voice and data communication. A wireless telephone usually contains a "call log" which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities, including storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet including websites, social media sites, bulletin boards, file sharing, and other Internet sites. It also includes GPS technology for determining the location of the device.

Cellular telephones have the ability to store and utilize data from external memory devices. These external digital storage devices, i.e., microSD and SD cards, provide the device with the ability to capture and store an increased amount of data. By their design, they are removable and portable, allowing the stored information to be transported separately from the cellular telephone and/or utilized by additional cellular telephones and other digital devices.

Based on the technology available to Your Affiant, obtaining the above described data and information will necessarily require an initial extraction of all of the data from the phone. This data, in raw form, is unreadable without the use of specific software. The extraction of the data will involve processing the data through the software, and a report containing the data listed in the warrant will be produced.

In addition, based on the technology available to Your Affiant, it is not possible to limit the data to be extracted by date range. It is also not feasible to limit the data to be parsed by date range. This is due, in part, to the fact that some data on the device may not contain time stamps, and/or time stamps may have been removed or altered by either the user of the device or the device's internal functioning which occurs when, for example, a file is deleted by the user but still present in the device and available for extraction. Although the data extracted from the device cannot be limited, the search of the data extracted from this device will be limited for the items described in the warrant and only the data listed in the warrant will be seized by Your Affiant and/or his or her designee.

*Nexus between the target offense(s) and the locations within the phone to be searched:*

Your Affiant respectfully requests that this Search Warrant be approved so that your Affiant or Designee may search the above described data associated with the cellular phone identified above. A search of the data associated with the cellular phone is necessary because such data may be relevant to the offenses being investigated.

Page 7 of 10

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 12 of 23

DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

Probable cause may be based on common-sense conclusions about human behavior. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Based on training, experience, and general knowledge of human behavior in today's society, Your Affiant knows that most individuals own and possess a cellular telephone and retain their phones on their person or in their immediate possession, particularly when not at home. Our United States Supreme Court has recognized the general principle that most people maintain possession of their phones on their person, particularly when they travel or move about. *See e.g. Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018) ("While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales."); *Riley v. California*, 134 S.Ct. 2473, 2484 (2014) ("modern cell phones [] are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.").

In addition, based on Your Affiant's personal training and experience, Your Affiant knows that most people in today's society do indeed maintain their cellphones on their person at most times, including when they travel to different locations. *See e.g., United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997) (there need not be direct evidence or personal knowledge that the items sought are located at the place to be searched, and we have recognized that courts often rely on the opinion of police officers as to where contraband or evidence may be kept). "[I]t is appropriate for the magistrate, in determining probable cause, to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

Your Affiant also knows from training and experience that individuals frequently communicate with each other and/or other individuals before, during, and after criminal events. Your Affiant also knows from his/her training and experience that this type of communication usually occurs via cellular phones. Analysis of the data contained in a cellphone or other mobile/electronic device could also assist Your Affiant with determining the general location of the device before, during, or after the target offense. In fact, based on Your Affiant's experience in investigating criminal cases, data contained from cellphones has been vital in establishing the who, what, why, where and when related to criminal activity. As such, the information contained on the device to be searched will assist Your Affiant with furthering the above-described criminal investigation.

The search of the device will be limited to evidence pertaining to the crimes listed above (i.e., assaults, arsons, trespassing and criminal mischief occurring between 05/28/20 – 10/14/20), and evidence pertaining to these crimes can reasonably be expected to be found in the categories of the device as listed above, and as described in more detail below. Because the types of evidence being sought (i.e., communications, associations, location information, and attribution information) can be found in connection with data that existed well before or after the crime(s) alleged in this affidavit occurred, and can be found in data that does not contain time stamps, it is necessary to search for relevant information without temporal limitations.

Page 8 of 10

Case No. 1:21-cv-02214-NYW-SBP   Document 28-2   filed 12/13/21   USDC Colorado
pg 12 of 13

# DENVER POLICE DEPARTMENT

## GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #   4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

For example, evidence relating to the above described offense(s) and/or related events or information is likely to be contained in the categories detailed above. Communications made and preserved through call history, contact information, voice messages, text and MMS messages, emails, and social media applications with communication capability (i.e., Facebook Messenger, Snapchat, and other similar applications) may include evidence of the target offenses. Communications made by the person who possessed and used the phone through any of these methods may also include comments made to others that relate to the target offenses described above, or may include information that can lead to the discovery of other evidence. Communications are for vital importance to determine the planning aspects of these crimes and to identity the criminal participants.

In addition to information or data contained in the phone relating to communications, photos and/or videos stored in the phone may depict individuals involved in or with knowledge of the crimes, may show connections between individuals involved in the target offense(s), and/or may lead investigators to others who can provide further relevant evidence. Based on training and experience, individuals often take and distribute/post photos and videos that include information about their criminal actions and post details and communicate with others about criminal activity and other information relating to criminal activity. Photos and videos depicting involved persons wearing similar clothing to that described by witnesses or observed in recordings can also be found in cellphones. Photographic and video evidence have been used extensively to further the identification of the persons responsible for the above crimes and to ascertain the extent of injury and/or property damage presents in these crimes. Additional photos and video evidence will increase the knowledge of exactly what crimes have taken place, the identity of the involved criminal participants and reveal the extent and severity of the crimes.

Geographical location information can be obtained from various areas in the phone, such as connected with phone calls, text or MMS messages, email messages, photos, videos, and social media application. This data is important to establish the location of the phone (and therefore, the person in possession of the phone) before, during, and after the target crimes. Geographical location information may also be helpful to lead investigators to other persons who may have been present at the time the offenses described above occurred, or may lead to other locations that may be relevant to the offense(s) being investigated and may lead to the location of other witnesses and/or other evidence.

Data relating to the internet activity on the phone can provide multiple types of relevant evidence. Web searches can show efforts to identify locations, people, or other information relevant to the planning and/or commission of the offense. Such searches can also show efforts to keep track of the crime and investigation through the internet, which can establish consciousness of guilt and/or knowledge of these crimes. Internet data can show communications with others, through chat rooms, forums, or other websites, and such communications can establish the suspect's involvement in or knowledge of the crimes, as well as provide information relevant to motive and intent. Internet data can also contain location information, and can demonstrate the use of services, programs, or applications that can themselves contain evidence of the criminal activity and/or the parties' involvement therein.

Page 9 of 10

Case No. 1:21-cv-02214-NYW-SBP Document 28-2 filed 12/13/21 USDC Colorado pg 13 of 13

DENVER POLICE DEPARTMENT

GENERAL OFFENSE HARDCOPY
(TRAF - OTHER)

GO# 2020-582721
ARREST/CITATION - NOT PRESENTED/REFUSED BY DA

Follow Up Report #  4

County/District Court
City and County of Denver, Colorado

Case No. 2020-582721

In the event that relevant and/or incriminating evidence is located in the phone, it will be critical to establish the individual in possession of the phone at or about the time the communications are made, the photos and/or videos are captured, social media or third party applications are used, and/or internet activity has occurred. Evidence attributing particular data items located in the device can come in the form of other communications made at or near the time of the incriminating event that can be tied to the suspect(s), call logs and contact information connecting the device and/or particular communication events to the suspect, and other data that can be found on the phone that can establish the identity of the person in possession of the phone at the time the incriminating data was captured by the device. Data relating to possession, dominion and control over the cellphone will assist in associating any communications or data to the person who made such communications or accessed/created/distributed such data. This is not intended to constitute a general search of all of the data on the phone for simply ownership of the device; instead, it is intended to allow the investigator to attribute particular relevant data to a particular user.

Based on these facts Your Affiant has probable cause to believe that there is material evidence now located in the above described cellphone that is crucial to the investigation of this case and a search warrant is requested.

_____ 06079
Signature of Affiant

This Affidavit was read and approved by Supervisor _Sgt____ #95040_.

Review & Approval

| Victoria Sharp | Chief Deputy District Attorney #35289 | 10/26/20  0815hrs |
|---|---|---|
| District Attorney – Signature or eSignature | District Attorney Title & Registration # | Date and Time |

Subscribed under oath before me on October 26, 2020 at 11:06am

_____
Signature of Judge

Judge James Zobel
Printed Name of Judge

Page 10 of 10