**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.: 21-cv-2214-KLM

**BRIAN LOMA**, an individual,

      Plaintiff

v.

**CITY AND COUNTY OF DENVER,** a municipality,
**CITY ATTORNEY KRISTIN M. BRONSON,** in their individual capacity,
**ASSITANT CITY ATTORNEY MELISSA M. DRAZEN SMITH,** in their individual capacity,
**ASSISTANT DIRECTOR MARLEY BORDOVSKY**, in their individual capacity,
**CORPORAL ROBERT D. SMITH**, in their individual capacity,
**ALLIED UNIVERSAL SECURITY SERVICES**,
**FALIESHA LYNETT TRIMBLE**, in their individual capacity,
**ANGELIKA CHAPLINSKIY**, in their individual capacity,
**DETECTIVE NICHOLAS Z. ROCCO-MCKEEL**, in their individual capacity
**SERGEANT BURTON**, in their individual capacity
**OFFICER BURGER (#98049),** in their individual capacity

      Defendants.

---

**RESPONSE TO DEFENDANT CITY AND COUNTY OF DENVER AND CITY
EMPLOYEES' MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

COMES NOW, Plaintiff, Brian Loma, by and through counsel, Baumgartner Law, LLC, and respectfully submits this Response to City and County of Denver and City Employees' ("the City's") Motion to Dismiss in this matter, and in support thereof, states as follows:

## INTRODUCTION

This Court must not be swayed by the City's attempt to cover up their long-standing animus

against Mr. Loma. Since the Denver Occupy movement, the City has done everything in its power to silence Mr. Loma in our community. Through multiple arrests, area restrictions, and administrative hurdles in order to exercise his rights, the City has created an official policy and or widespread custom of retaliation against Mr. Loma for his protected First Amendment activates.

While the City's motion to dismiss does a good job of parsing out every detail with each specific claim, the City is attempting to bamboozle this Court by forgetting to address overarching claim of a pattern of conduct which directly violates the constitutional rights of Mr. Loma i.e. First Amendment Retaliation. The City Attorney's office has colluded with private business owners, and the Denver Police, specifically to chill Mr. Loma's First Amendment activities – this should be concerning not only to the Court, but society as a whole.

## STANDARD OF REVIEW

I.    **Motion to Dismiss Should be Denied or Converted to Motion for Summary Judgement and Also Denied**

A complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) if the factual allegations do not raise a right of relief above the speculative level. *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 556 (2007); *see also Warne v. Hall*, 373 P.3d 588, 595 (Colo.2016) (adopting the *Twombly* standard for testing the viability of a claim for relief). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations of material fact are accepted as true and viewed in the light most favorable to the non-moving party. *Brown v. Montoya*, 662 F.3d 1152, 1162-63 (10th Cir. 2011). Furthermore, the court is required to draw all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). As stated by the *Iqbal* Court, legal conclusions "must be supported by factual allegations" in order to receive the presumption of truth. *Iqbal*, 556 U.S. at 679. In this case, Plaintiff has filed a meritorious lawsuit that has been sufficiently plead along with supporting factual allegations. Plaintiff's allegations are clothed with supporting facts that allow the court to draw the inference that Defendants are liable for the misconduct alleged in Plaintiff's complaint. Thus, all of the allegations in Plaintiff's complaint are entitled to the presumption of truth.

As such, it is incredibly difficult for a defendant to win a motion to dismiss because the requirement of plausible grounds does not impose a *probability* requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal sufficient evidence in support of the claim. *Twombly*, 550 U.S. at 556 (emphasis added). Furthermore, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Id*. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

Plaintiff in this case has plead facts in addition to factual allegation related to the specific incident involving the Plaintiff to establish the standard under *Monell* and under Rule 12(b)(6) as well plead allegations. Plaintiff has met their burden by providing numerous types of support outside the incident itself and conclusory statements. The reason for not requiring a heightened pleading standard in a Section 1983 municipal liability complaint is that "a plaintiff, as an outsider

to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage." *Walker v. Zepeda*, No. 1:11-cv01242-DME-CBS, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. 2012).

Requiring Plaintiff to allege specific details of Aurora policy would risk "foreclosure of legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Walker*, at *15-16. Even though Plaintiff is not required to plead specific deficiencies in the City of Denver's policies related to Area Restrictions, Plaintiff did cite to specific communication between the City Attorney's Office and member s of the public for the sole purpose of trying to place an Area Restriction on Mr. Loma through multiple false arrests and summons. Further, in his Amended Complaint, Plaintiff also cited another Federal Lawsuit involving the Plaintiff while filming police interaction on the 16th Street Mall which was preceded by a false arrest and a failed prosecution. [ECF No. 6, ¶ 6]. In the present case, Plaintiff's allegations are more than sufficient at the pleading stage to show a constitutional deliberate indifference for constitutional rights of those who disseminate footage of police interacting with the public or other advocacy involving police misconduct.

Under *Walker*, Plaintiff has clearly met his burden in alleging several facts, when taken as true, to support a claim that the City and County of Denver, along with individual employees, has been on notice of these policy decisions and chose to continue to act indifferent to the constitutional rights related to the First. Fourth, and Fourteenth Amendments. Therefore, Defendant City's and Employees Motion to Dismiss cannot prevail.

"When a district court relies on material from outside the pleadings, the court converts the motion to dismiss into a motion for summary judgment." *Price v. Philpot*, 420 F.3d 1158, 1162

(10th Cir.2005). But when parties submit materials outside of the pleadings in support of or in opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them. *Dobson v. Anderson*, 319 Fed.Appx. 698, 702 (10th Cir. 2008). Here, while the email from Ms. Drazen Smith is central to the pleading, the City Defendant also attached the entire warrant for Mr. Loma's phone from a criminal case. While the warrant was part of a claim against Detective Rocco-McKeel, it not central to the retaliation claim that is the underling basis for the claims against Detective Rocco-McKeel. Thus, this Court has discretion to consider them. Based on the City Defendant's motion to dismiss, it appears that the City is relying on the warrant to oppose Plaintiff's claim. This material was brought in from outside of the initial pleadings. Thus, this Court should convert the motion to dismiss to a motion for summary judgment. Because there are several disputed facts in this case, a motion for summary judgment should be denied. If the motion to dismiss is not converted to a motion for summary judgement, the Court should not consider the outside materials brought in by the City as the content of the warrant is not central to the to claim of First Amendment retaliation claim.

## **ARGUMENT**

## II.    **Mr. Loma's Claims Regarding Area Restriction Claim Are Not Time Barred**

Plaintiff's claim is for a pattern of retaliatory behavior by the City, the latest being Mr. Loma's 2020 arrest and subsequent prosecution which resulted in a full acquittal by a jury of his peers. While effect of the Area Restriction did violate Mr. Loma's First Amendment Rights, Mr. Loma did not know that he could possibly have had a cause of action until his criminal case, which was the basis for the Area Restriction, was dismissed in August of 2020 within the two-year statute of limitations. "The general rule is the accrual occurs 'when the Plaintiff can file suit and obtain

relief." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1216 (2014). Due to the fact the Area Restriction was entered against Mr. Loma for a criminal law violation, Mr. Loma could not have filed suit until his criminal case was dismissed. If Mr. Loma's criminal case was successful and Mr. Loma was convicted, then the Area Restriction, on First Amendment grounds, would likely not provide any cause of action because the State would have a significant reason for limiting Mr. Loma's access to the Restricted Area. Thus, it was not until Mr. Loma's criminal case was disposed of that accrual started. Plaintiff has plead this claim within the statute limitations by filing on August 13, 2021.

Further, Plaintiff's Second, Third, and Fourth claims are claims of ongoing pattern of retaliation that could not be established individually. Thus, as cited above, Plaintiff's claims could not have filed suit until the pattern was established. Either way, however, Plaintiff has plead all claims within the statute of limitations. In addition, the retaliatory claims are based on multiple episodes that taken as a whole create the Second, Third, and Fourth claims of the Amended Complaint. Under the continuing violation doctrine, Plaintiff's retaliatory claim is based out of separate and distinct unlawful acts by the City of Denver.

Even if the City is corrected about the March 18, 2019, trigger for that specific claim, that claim is part of a continued violation i.e. First Amendment Retaliation. Plaintiff's most current event claimed to be unlawful, which is similar to the rest of the claims in the pattern, is within the statute of limitations and filing period. Because at least one of Plaintiff's claims of unlawful conduct falls within the statute of limitations, his other claims, which may be otherwise time barred, are considered "'the *entire* time period'- including those separate acts falling outside the filing period – 'for the purposes of determining liability." *Hamer v. City of Trinidad*, 924 F.3d

1093, 1099 (10th Cir. 2019). Citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (emphasis added).

Further, because Mr. Loma has plead individualized unlawful instances of continued unlawful conduct that make up the First Amendment Retaliation claim, these claims cannot be considered "continual ill effects from the original violation" which would time bar claims outside the filing period. Thus, regardless of the when the Plaintiff's Area Restriction was ordered on March 2019, its part of a continued retaliation claim and are distinct unlawful actions which cannot be dismissed from the overall First Amendment Retaliation claims.

### III. Amended Compliant Does Allege a Constitutional Violation by Individual(s) Affiliated with the City Attorney Office.

Plaintiff's overarching claim though this suit is an ongoing pattern of retaliation by the City of Denver. Plaintiff specifically cited numerous instances that while filming in public, as a constitutionally protected activity, the City of Denver has taken it upon themselves to, as Ms. Drazen stated in her email to property owners on the 16th Street Mall, "we continue to prosecute those folks vigorously." This issue, and the basis for Plaintiff's complaint, is that the City created an official policy to vigorously prosecute those who they felt stepped on that line. Not only does this communication implicated individuals right to free speech, it also specifically names Mr. Loma as someone the City had knowledge of who participated in free peach activities.

To establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). If the plaintiff can establish the existence of a municipal policy or custom, the plaintiff must then show that the policy

or custom was the moving force behind the injury alleged. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760,770 (10th Cir. 2013).

What is also alleged in the complaint, is that prior to and after the email from Ms. Drazen Smith was sent out, Mr. Loma has been arrested, charged, and given Area Restriction or put on notice of an impending Area Restrictions numerous times. Despite all numerous arrests, Mr. Loma has not been found guilty nor taken a guilty plea for at least his last three arrests, or criminal law summons.

The common theme and direct link, which was well plead in the Amended Complaint, is that every issue discussed was directly related to Mr. Loma filming; police or security guards in public as they interacted with the public. Despite numerous acquittals, the City Attorney's Office continues to unsuccessfully arrest then prosecute Mr. Loma. All the named actors are part of the pattern of unconstitutional behavior perpetuated by the City of Denver.

## A. Amended Complaint sets forth City Attorney Bronson ratified the policy of Retaliating Against Mr. Loma

The City Attorney's names are on all of the Court documents and all of the Area Restrictions that Mr. Loma either received or was put on notice for. Thus, Ms. Bronson, as the City Attorney, had the final decision naming power to move forward with the continued pattern of retaliatory prosecution by her staff. In addition, as the City Attorney, Ms. Bronson has the final decision-making authority on Area Restriction which, as it is alleged, City Attorney staff routinely seeks Area Restrictions for cases involving individuals arrest while excessing their First Amendment Rights.

A municipal policy is defined as a well-settled custom or practice or deliberately indifferent

training. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff's Amended Complaint adequately alleges a well-settled custom or practice of vigorous prosecution of Mr. Loma while exercising his First Amendment rights that gives unlawful conduct the de-facto power of policy evidenced by an email sent by the City Attorney. Therefore, the Plaintiff's claim under municipal liability cannot be dismissed.

### B. Allegations against Melissa Drazen Smith are Sufficient to Show an Actional Constitutional Violation.

Defense's argument is not credible. Ms. Drazen Smith wrote and email to property owners specifically mentioning the First Amendment, prosecuting Mr. Loma, and having her office ask the courts for "Area Restrictions." Further, contrary to the assertion motion it dismiss that Plaintiff did sufficiently plead a constitutional violation, Plaintiff is alleged that Ms. Drazen Smith did in fact coordinate with others in her office for the direct result of keeping Mr. Loma out of Downtown Denver so that he could not exercise his First Amendment right to film police officers and security personnel who interact with the public at large, and specifically the unhouse populations. [ECF Doc. 6 at para. 107-117]. Thus, Plaintiff has alleged, taken as true, facts that show a direct link between Ms. Drazen Smith's actions and a constitutional violation.

### C. Allegation Against Marley Bordovsky are Sufficient to Show Actual Constitutional Violation.

On March 4, 2019, Ms. Drazen Smith wrote and email to property owners not involved in the incident involving Mr. Loma specifically mentioning the First Amendment, prosecuting Mr. Loma, and having her office ask the courts for "Area Restrictions." Two weeks after this email was sent to property owners of the 16th Street Mall, Ms. Bordovsky sought and received an Area

Restriction against Mr. Loma in municipal court. Several years later, when Mr. Loma was against arrest for filming advocacy in the community, Ms. Bordovsky again disclosed in discovery for his criminal case another Area Restriction the City Attorney's Office intended, to seek against Mr. Loma. [ECF Doc. 6 at para. 118-123]. What the City of Denver failed to inform this court is that Ms. Bordovsky was not the prosecuting attorney in Mr. Loma's September 2021 criminal case. Thus, Ms. Bordovsky, while not prosecuting Mr. Loma submitted in discovery an Area Restriction of Mr. Loma. Not only was Ms. Bordovsky not prosecuting Mr. Loma, but the Area Restriction encompassed an area that Mr. Loma was not even arrested in and would not have had any other purposes other than to keep Mr. Loma out of downtown Denver where most First Amendment Activity takes place i.e., the Capitol, 16th Street Mall, Civic Center Park. [ECF Doc. 6 at para. 1121-124].

## IV. Assistant City Attorney Drazen Smith and Bordovsky Are Not Entitled to Any Judicial Immunity.

While City prosecutors are immune from 1983 claim arising out of their preparation of judicial proceedings, prosecutors not absolutely immune from actions taken outside of the advocacy role particularized to a specific prosecution. On other words, when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). "Thus, if a prosecutor plans and executes […], he "has no greater claim to complete immunity."  Id

While the City of Denver in its Motion to Dismiss claims Ms. Drazen Smith and Ms. Bordovsky are prosecutors for the City of Denver, their motion does nothing to address whether their functions were administrative or for prosecuting Mr. Loma other than to saying, "were acting

in their role to any criminal action." However, this is simply not credible. Ms. Drazen Smith and Ms. Bordovsky where not the prosecutors on Mr. Loma's criminal cases, at least with the September 2021 arrest. Ms. Drazen Smith, after Mr. Loma's February 15, 2019, summons, wrote an email to multiple property owners regarding Mr. Loma and Mr. Brandt and stated, "Hopefully, when we get another conviction." Thus, Ms. Drazen Smith's email was clearly intended to be a plan and scheme to deter whatever behavior the City did not like. What's more, is that Ms. Drazen Smith acknowledged the City Attorney's office "prosecuting those folks vigorously, had have limited success." Ms. Drazen then told property owners, property owners not involved in the prosecution of Mr. Loma, that her office would seek "a real consequence on them including an area restriction."

The plain language of Ms. Drazen Smith's email clearly denotes that she is not the prosecutor on the case that this plan and scheme to ask the court for Area Restriction when people are arrested when exercising their First Amendment rights. This plan and execution are not part of preparing for the judicial proceeding in which Mr. Loma was in at the current time, this was a plan put in place by the City Attorney's office for future consequences and future prosecutions. Thus, at least for Ms. Drazen Smith, her email was outside the scope of preparing for a judicial proceeding and crossed the line into creating and executing a plan to violate Mr. Loma's rights. Therefore, Ms. Drazen Smith is not entitled to absolute immunity. In addition, Ms. Bordovsky was not the prosecuting attorney on Mr. Loma's 2021 criminal case. However, it is her name on the Area Restriction order that was provided in discovery. Further, Ms. Bordovsky was the prosecutor who file Mr. Loma's Area Restriction in 2019. Thus, while not the prosecuting attorney in at least one case for Mr. Loma, Ms. Bordovsky sought an Area Restriction. As alleged, Plaintiff has plead

facts, if taken as true, that show Ms. Bordovsky and Ms. Drazen Smith are engaged in a retaliatory pattern of restricting Mr. Loma's first amendment rights. Since these restrictions do not have any bearing on the judicial proceeding in which he was arrested i.e., assault and obstruction of passage, the City Attorney's restrictions on Mr. Loma's movement can be for only reason – to keep him from exercising his First Amendment rights in downtown Denver because it makes business owners upset.

First, the email sent by Ms. Drazen Smith was sent to multiple property owners after Mr. Loma was cited in from of a one building in particular. Thus, all other business owners could hardly be said to be "victims" under any sense in Mr. Loma's assault prosecution. During that matter, Mr. Loma was hit with an Area Restriction encompassing the 16th Street Mall; not just the building where the incident occurred. This Area Restriction was sought by the City Attorney's office just two weeks after Ms. Drazen Smith's email was sent to property owners. Further, the incident that Mr. Loma was arrested for in September 2021 took place on 8th and Broadway for Obstruction of Passage, well outside the area the City Attorney was seeking to restrict Mr. Loma from going. In that case, the City Attorney was seeking to prevent Mr. Loma from entering downtown Denver where First Amendment activities take place i.e., the Capitol, 16th Street Mall, Civic Center Park, and Union Station. None, of these places had anything to do with Mr. Loma obstructing traffic on 8th and Broadway. It is clear, these Area Restriction did not have anything to do with either prosecution other than the City Attorney using false arrests to ask the court of these broad Area Restrictions.

Because these plan to restrict Mr. Loma from going downtown was not part of the judicial proceeding in which he was in front of the court for, City Attorney defendants would only be

entitled to qualified immunity if the constitutional violation was not clearly established. Here, First Amendment rights under the U.S. Constitution as to put the City Attorney on notice that seeking Area Restriction against individuals exercising First Amendment rights was clearly established. The Supreme Court held that the "[f]irst Amendment protects a significant amount of verbal criticism and challenge directed a police officer." *City of Huston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). In closing the Court stated, that "the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint. Id. at 472. Filming the police is a constitutionally protected activity under the First Amendment. *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017; see *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (stating individuals have the right to video and photograph police subject to time, place, manner restrictions); see *Adkins v. Limtiaco*, 537 Fed App'x 721, 722 (9th Cir. 2013) (holding that Plaintiff's arrest was sufficiently plead as First Amendment retaliation for being arrested for filming the police in public) *American Civil Liberties Union of Illinois v. Alvares*, 679 F.3d 40 Media L. Rep. 1721, 599-600 (7th Cir. 2012) (holding statues preventing the filming of police violated the First Amendment); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (holding Plaintiff had a clearly established right to film the police in the public space). See also *Fordyce v. City of Seattle*, 55 F.3d, 436, 493 (9th Cir. 1995) (holding a First Amendment right to film police in public spaces in matters of public importance). Thus, because verbally criticizing police and or filming the police are constitutionally protected activities, the City Attorneys are entitled to qualified immunity.

## V.      Individual Officers Are Not Entitled to Qualified Immunity

### A.  Corporal Smith is Not Entitled to Qualified Immunity

Corporal Smith did in fact seize Mr. Loma prior to giving Mr. Loma a summons. Corporal Smith told Mr. Loma he was not free to leave the area while he investigated. A "seizure" for purposes of the Fourth Amendment to the U.S. Constitution occurs when an officer intentionally restrains the freedom of a person to simply walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Without question, a seizure occurs when an officer tells an individual they are not free to leave. The distinguishing factor between *Nielander* cited by the Defendant, is the individual in *Nielander* received a summons after the officer did an investigation and found probable cause. *Nielander v. Board of County Com'rs of County Of Republic, Kan*, 582 F.3d 1155, 1162-1163 (10th Cir. 2009). In the present case however, Corporal Smith did his investigation on the scene and restricted Mr. Loma's freedom of movement when he instructed him not to leave.

Thus, Corporal Smith did seize Mr. Loma satisfying prong one of the malicious prosecutions; prong two is met since the case was dismissed; prong three is met since there was physical evidence and an eye witness confirming the allegation made was not true; Corporal Smith acted in malice by deliberating withholding true statements in his report, deliberately making false statements in his report and by stating he was going to give a summons and let them argue it out in court; prong is met since Mr. Loma did incur damages.

## B. Detective Rocco-McKeel Is Not Entitled to Qualified Immunity

The Fourth Amendment prohibits unlawful searches and seizure on individuals and their property. Plaintiff claims against to related to an ongoing claim of retaliation for Mr. Loma's free speech activates. The warrant that was executed by Detective Rocco was overbroad. Warrants shall be based upon probable cause and describe the particular "place to be searched, and the person or things to be seized." *People v. Coke*, 461 P.3d 508, 515-516 (Colo. 2020). General warrants which

permit "'a general, exploratory rummaging in a person's belongings,' are prohibited. Id. at 516. Citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). In order to prevent a general rummaging through personal property, warrants require a particular description of things to be seized so that the officer executing the warrant will have a reasonable degree of certainty of the items to be seized. *People v. Coke*, 461 P.3d 508, 516 (Colo. 2020). "Given modern cell phones' immense storage capacities and ability to collect and store many distinct types of data in one place, this court has recognized that cell phones "hold for many Americans 'the privacies of life'" and are, therefore, entitled to special protections from searches." *People v. Coke*, 461 P.3d 508, 516 (Colo. 2020). Even warrants that simply seek information to verify the ownership of the phone violate the particularity requirement of the Fourth Amendment. *People v. Coke*, 461 P.3d 508, 516 (Colo. 2020). Because of cell phone immense storage capabilities and stores "many distinct types of data in one place" the Colorado Supreme Court has recognized that cell phones hold the "'privacies of life' and are, therefore, entitled to special protections from searches. *People v. Coke*, 461 P.3d 508, 516 (Colo. 2020).

The First Amendment of the United States Constitution recognizes the "right to petition [the government] as one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Constr. Co.v. NLRB*, 536 U.S. 516, 524 (2002). Whether utilized in an individual or collective capacity the right to petition the government is among the highest first amendment values, *Connick v. Myers*, 461 U.S. 138, 145 (1983) and should be considered nothing short of sacrosanct. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach, Fla*., 138 S.Ct. 1945, 1950 (2018) citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Everything listed in

the warrant was related to Mr. Loma lawfully being in public during demonstration with hundreds and thousands of individuals.

The Denver Police Department Handbook sec. 107.04(3) clearly states that as long as someone is not interfering with a police officer's duties, anyone, including the press, have a First Amendment right to film things in public view where the person filming has a legal right to be. In addition, the handbook also states that police cannot retaliate against anyone who chooses to film police activities in public. Section (5)(g) of 107.04 make it clear that if the police have reason to believe records are made for public dissemination, the Federal Privacy Protection Act restricts search warrants and makes it necessary for law enforcement to get a subpoena to view the contents of the recordings; unless there is an exigent circumstance which is rare. Denver Police Department did not return Mr. Loma's phone once he was released. Mr. Loma was not provided any documentation as to why Denver Police Department was keeping his personal property or when it would be released as required in the DPD Handbook 106.00(5).

In addition, not only was Mr. Loma's phone pursuant to the September 2021 Obstruction of Passage charge, after Mr. Loma was acquitted and obtained an Order from the court for the release of his property, he was informed DPD did not have it and it was transfer to a different precinct to be used as evidence in sperate case for which there was not warrant. Thus, using Mr. Loma's phone after it was seized for one case with a warrant, then transferred to another jurisdiction when Mr., Loma was entitled to his property via a court order, constitutes an unlawful seizure under the Fourth Amendment. As Plaintiff has plead numerous times, all interactions and legal proceeding City Attorney and the Denver Police have with Mr. Loma are related to his First Amendment right to film police interacting with the public in public.

**C. (Incorporated in Subsection D. directly below.)**

**D. Officer Berger Seized Mr. Loma's Property by Rendering it Unusable Violating the Fourth Amendment**

The Amended complaint did have a typographical error as to the year of the incident; the claims involving Officer Berger took place in 2020, not 2021.

While the City of Denver is arguing that Mr. Loma's movement was not restricted, they are attempting to confuse this Court as to what constitutes seizure. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Plaintiff has plead a seizure for the destruction of his phone without notice by an Officer who was on duty setting up a perimeter for a "homeless sweep" and did not want to be filmed. Officer Berger, during this incident, was setting up a perimeter at a "homeless sweep" conducted by the City and County of Denver and was being filmed while preforming his duties. Due to Mr. Loma filming Officer Berger setting up their perimeter, Officer Berger did interfere with Mr. Loma's possessory interesting his when in a meaningful way when Officer Berger destroyed it without a legal justification. Mr. Loma by destroying his property. Thus, the destruction of property constituting a seizure without a warrant, or an exigent circumstance was clearly established at the time of this incident and Officer Berger acted in the with the explicit intention of keeping Mr. Loma from filming him perform his duties in public which is also clearly established by caselaw and codified in the Colorado Revised Statutes.

In Colorado, there are two statutes that specifically govern the recording of police. Without interfering with an officer's duties "[a] person has the right to lawfully record any incident involving a peace officer." C.R.S. 16-3-311(1). Further, an individual has the right to recover

(civilly) when lawfully filming the police and officers either "intentionally interfere with the person's lawful attempt to record" or an officer "retaliates against a person for recording or attempting to record. C.R.S. 13-21-128(III)&(IV).

**E. Amended Complaint Clearly Plead Denver and Individual Defendant's Continually Retaliate Against Mr. Loma for His First Amendment Activities Through Continuous Unlawful Behavior**

"It is plain that municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). *"Monell* 's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037–2038, and whose decisions therefore may give rise to municipal liability under § 1983." Id. "Municipal liability under § 1983 attaches where […] a deliberate choice to follow a course of action is made from among various alternatives by the official […] responsible for establishing final policy with respect to the subject matter in question." Id. at 483.

Mr. Loma is known to the City Attorney and the Denver Police Department as a community activist and monitor his Livestream channel "CutThePlastic." Since the Occupy Denver Movement Mr. Loma has been arrest numerous times for participating in community activism, specifically when filming the police interact with the public. Mr. Loma's work sheds light on excessive force and unconstitutional behavior from all forms of government specifically police I and judicial institutions. The City Attorney Ms. Drazen Smith acknowledge in her email to property owners on the 16th Street Mall they were actively pursuing prosecutions against people who were exercising their First Amendment right. In all interactions where police have either arrest Mr. Loma or seized

his property, the underlining bases for those interaction was due to Mr. Loma filming police or, in the case of Allied Security, security guards who interact with the public, primarily with the unhoused populations as Plaintiff has plead. These altercations taken alone and together make up the continued misconduct that has led to various constitutional violations.

To establish municipal liability, a plaintiff must show (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional injury alleged. *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) a well-settled custom or practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions; or (5) or deliberately indifferent supervision or training. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). After establishing the existence of a municipal policy or custom, the plaintiff must then show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760,770 (10th Cir. 2013).

A municipality is deliberately indifferent when they have actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation and it consciously or deliberately chooses to disregard the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307-1308 (10th Cir. 1998). Actual notice can be established by proving the existence of a pattern of tortious conduct. *Id*. Constructive notice may be established when an obvious need to train and supervise exists. *Id.* (see also *Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir.

2006)). "Where plaintiff has alleged numerous instances of prior misconduct, similar to the misconduct alleged here, the court can plausibly infer that the municipality had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner." *McComb v. Ross*, 202 F. Supp. 3d 11, 18 (D.D.C. 2016) (alteration omitted).

Here, Plaintiff has alleged several violations spanning several years. Plaintiff has provided evidence that the City Attorney's office was seeking to prosecute Mr. Loma to appease the business owners on the 16th Street Mall instead of upholding Mr. Loma's right to film and advocate for the community in a public area of a walking mall. Instead, the City Attorney's office planned in implemented an official policy to arrest and prosecute Mr. Loma at any time in order to keep him from coming to downtown Denver via an Area Restriction. The City has had notice time and time again through numerous failed prosecutions and another federal lawsuit where Denver Police arrested Mr. Loma, and the City Attorney prosecuted Mr. Loma, for a constitutionally protected right to free speech. Thus, the City Attorney's office had plenty of notice their action are unconstitutional. The City Attorney has not been able to prosecute Mr. Loma and yet, even with an acquittal at his most recent trial and Order from the Court to release his property which he uses to film the police, Denver Police would not give it back, would not provide information as to why it was transferred, was not informed of when he would get it back or for how long it would be kept – all things that Denver Police Department's own policy manual states must be provided.

All of these issues, taken as a whole, show that the City of Denver has an official policy to stop certain individuals from exercising their First Amendment rights when that individual advocates against them. Even if Ms. Drazen Smith's email, prior and subsequent prosecutions, and

police interactions do not constitute an "official policy," Plaintiff has plead more than enough facts so show a widespread custom. Ms. Drazen Smith's email is clear cut evidence that there is and or was an ongoing effort within the City Attorney's office to prosecute Mr. Loma so that he could not participate in free speech activities in downtown Denver – Ms. Drazen Smith's email says as much. Further, Plaintiff has plead numerous instances of similar attempts to chill his speech; again, specifically related to his filming the police.

While Defendant Counsel tries their best to parse out these individual interactions and justify them in isolation from the other claims, that is misleading this Court as to the overall nature of this lawsuit. As plead, one Area restriction place on Mr. Loma encompassing the entire 16th Street Mall when the incident occurred outside of just building on a public street. The second Area Restriction encompassed nearly all of downtown Denver despite Ms. Loma's alleged crimes occurring outside of the area the was sought to be restricted. [ECF Doc. 6 at para. 121-124] Thus, it is clear, the Area Restrictions where not narrowly tailored and would pass constitutional muster. Further, Plaintiff has plead they have reason to believe other individuals who received the same Area Restriction that where identical and not narrowly tailored, but simply restricted most of downtown Denver, specifically where first amendment activities take place. [ECF Doc. 6 at para. 138-142]. Not only has Plaintiff provided numerous instances and evidence of the chilling nature of these Area Restrictions, but Plaintiff has also proved information and belief that other similarly situated individuals have also experienced this unconstitutional policy and or widespread custom. Thus, Plaintiff has plead a plausible municipal liability claim for an official unconstitutional policy. In the alternative, Plaintiff has more than sufficiently plead an unconstitutional widespread custom amounting to First Amendment retaliation.

## VI. Plaintiff's Claims Under SB-217 Do Not Fail

Contrary to the City's position, these claims are codified in Article II in several ways. First, Section 24 of Article II of the Colorado Constitution clearly states "[t]he people have the right peacefully to assemble for the common good, and to apply those invested with the powers of the government for redress…" *Colorado Constitution, Article II, Bill of Rights, Section 24*; accessed on January 17, 2022 https://law.justia.com/constitution/colorado/cnart2.html#:~:text=The%20people%20shall%20be%20secure,be%2C%20nor%20without%20probable%20cause%2C. Second, Section 25 clearly states, "[n]o person shall be deprived of life, liberty or property without due process. Id. at Section 25. Third, Section 28 states that the constitution does not limit the rights of the people. Id. at Section 28. And fourth, Section 10 makes clear that the people of the State of Colorado have the right to "publish whatever he will on any subject." Id. at Section 10. Thus, not only are the claims Plaintiff plead covered by the Article II, Bill of Rights, of the Colorado Constitution, the claims are enumerated several times within the Article II.

## VII. Plaintiff's Claims for Assault and Battery are Covered Under SB-217 As the Basis for the Claims are Confided in Article II, Bill of Rights, in the Colorado Constitution.

Plaintiff's claims for assault and battery stem from an altercation where Officer Berger violated Sections 25, 28, and 10 of Article II of the Colorado Constitution. While specific claims may not be mentioned. In Article two since they are torts, the underlining bases for these claims are codified in the Constitution and therefore, covered under SB-217, Law Enforcement Integrity Act. It cannot be said, with any credibility, that citizen of the State is not entitled to the right to be

free from excessive force constituting a tort. The entire legislative purpose of the Law Enforcement Integrity Act, passed after the civil uprising surrounding the George Floyd Protests, was to ensue accountability from law enforcement. This type of claim against Officer Berger is the exact reason SB-217 was passed. Further, Section 28 of Article II clearly provides that individual have more rights not enumerated in the constitution – this provision is akin the U.S. Constitution Ninth Amendment. Section 28 in combination with Section 25 leave open that an individual can make tort claims under SB-217 when the underlining basis is codified in Article II, Bill of Rights.

### VII. City is Not Entitled to Attorney Fees for Tort Claims If Dismissed

While Plaintiff contends, based on the argument above, that these claims are covered under SB-217, even if this Court dismisses these claims, the City is not entitled to attorney fees. In *Smith v. Town of Snowmass Village*, cited by Defendant, the trial court dismissed the entire complaint under GCIA. *Smith v. Town of Snowmass Village,* 919 P.2d 868, 870 (Colo. App. 1996). Further distinguishing *Smith* from the present case, in *Smith* the Defendant and claims against the defendant was the City of Snowmass. Here, the claim is against a specific officer for a specific action after the Law Enforcement Integrity Act (SB-217) was passed by the State Legislator specifically for police accountability. That is much different than the set of circumstances presented in *Smith*. The entire purpose if SB-217 was to help citizens of the State not have to worry about GCIA when holding officers accountable.

In the present case, Officer Berger would already be defending his action via Plaintiff's U.S. Constitutional claims and the Plaintiff's claim under SB-217 for deprivation of property and excessive force which are very much codified in the Article II, Bill of Rights, of the Colorado Constitution. Therefore, Plaintiff's tort claims of assault and battery are alternately plead based on

constitutional claim already presented in this lawsuit.

In *Smith*, the court held "Section 13-17-201 was to discourage the unnecessary litigation of tort claims. It applied 'whenever a tort action is dismissed prior to trial pursuant to a motion C.R.C.P.12(b).'" Id. at 872. Thus, the City's attempt at attorney fees for the dismissal of two tort which are the basis for claims not under claims out of twelve claims does not rise to the level of having an "action dismissed." This action implicates Officer Berger not only for individual actions but also under a theory of retaliation from the City; thus, just because two tort claims may be dismissed, the action of this lawsuit does not diminish Officer Berger's liability for the other claims which are plead involved the same conduct plead in the torty claim – Officer Berger still has to defend the constitutional claims in this action.

Further, this is case of first impression. Undersigned counsel is not aware of any ruling regarding SB-217 and potential tort claims when the basis of the tort stems from a constitutional violation under the U.S. and Colorado Constitutions. "[A] Court is authorized to impose sanctions if claim is not well grounded in fact or is not warranted by existing law or good-faith attempt to establish new law or extend, modify, or reverse existing law." *Reifschneider v. City and County of Denver*, 917 P.2d 315, 319 (Colo. App. 1995). In addition, "[a] court may not award attorney fees based on allegedly frivolous nature of claim when a party makes a good faith presentation of an arguably meritorious legal theory upon which no determinative authority in the state exists." *In re Parental Responsibilities Concerning D.P.G.*, 472 P.3d 567, 573 (Colo. App. 2020). Moreover, "meritorious action that prove unsuccessful and good faith attempts to extend, modify, reverse existing law are not frivolous." Id. citing *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005). While GCIA may be well settled law, the passing of SB-217 and the removal of

GCIA requirement for police misconduct are far from settled. Plaintiff's action seeks to extend the reading on SB-217, where there is no authority, based on the subsections cited from Article II, Bill of Rights, of the Colorado Constitutions. Thus, Officer Berger is not entitled to attorney fees.

**WHEREFORE**, for all the reasons stated above, Plaintiff respectfully request this Court to deny the City and Employees of Denver's Motion to Dismiss. For the reasons stated above regarding this action as awhile at the common law tort claims, Plaintiff respectfully requests this Court deny attorney fees if those claims are dismissed.

Dated this 18th day of January 2022.

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.
*Original signature on file at Baumgartner Law, L.L.C.*

 *s/ Adam R. Yoast*
Adam R. Yoast
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: 303-529-3476
Fax: 720-634-1018
Adam@baumgartnerlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of January 2022, a true and correct copy of the foregoing filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Jennifer Johnson
Denver City Attorney's Office
*Attorneys for Denver Defendants*

Jason D. Melichar
Kimberly L. Koehler
Wilson Elser Moskowitz Edelman & Dicker LLP
*Attorneys for AUS Defendants*

 *s/ Rachael Wallace*
Rachael Wallace
