**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 21-cv-2214-DDD-KLM

**BRIAN LOMA**, an individual,

Plaintiff

See Pre-Scheduling Conf. Order at #43.

v.

**CITY AND COUNTY OF DENVER, a municipality,**
**CITY ATTORNEY KRISTIN M. BRONSON, in their individual capacity,**
**ASSITANT CITY ATTORNEY MELISSA M. DRAZEN SMITH, in their individual capacity,**
**ASSISTANT DIRECTOR MARLEY BORDOVSKY, in their individual capacity,**
**CORPORAL ROBERT D. SMITH, in their individual capacity,**
**ALLIED UNIVERSAL SECURITY SERVICES,**
**FALIESHA LYNETT TRIMBLE, in their individual capacity,**
**ANGELIKA CHAPLINSKIY, in their individual capacity,**
**DETECTIVE NICHOLAS Z. ROCCO-MCKEEL, in their individual capacity**
**SERGEANT BURTON, in their individual capacity**
**OFFICER BURGER (#98049), in their individual capacity**

Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

A Scheduling Conference was held on January 25, 2022, at 11:00 a.m. before Magistrate Judge Kristen L. Mix in Courtroom A-401 of the above Court.

Plaintiff, Brian Loma, was represented by:
Adam R. Yoast, Esq.

Baumgartner Law, LLC
300 E. Hampden Ave, Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
adam@baumgartnerlaw.com

Defendants City and County of Denver, Kristin Bronson, Melissa Drazen Smith, Marley Bordovsky, Cpl. Robert D. Smith, Det. Nicholas Rocco-McKeel, Sgt. Jason Burton, and Sgt. Jeffrey Berger were represented by:
Jennifer Johnson
Assistant City Attorney
Denver City Attorney's Office
Litigation Section
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202-5332
Phone: (720) 913-3304
Fax: (720) 913-3190
jennifer.johnson2@denvergov.org

Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy were represented by:
Jason D. Melichar
Kimberly L. Koehler
Wilson Elser Moskowitz Edelman & Dicker LLP
1225 17th Street, Suite 1700, Denver, CO 80202
(303)572-5300
jason.melichar@wilsonelser.com
kim.koehler@wilsonelser.com

## 2. STATEMENT OF JURISDICTION

This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is founded upon 28 U.S. C. § 1331, § 1343(a)(3) and (4).

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Plaintiff:** Plaintiff's lawsuit alleges the following claims against Defendants: (1) unlawful arrest/seizure. Specifically, Plaintiff is alleging that Defendants unlawfully arrested Plaintiff in

violation of his Constitutional rights when he was acting under the color of law at the time.

**Allegations for Assault Summons February 15, 2019**

This Complaint stems from the wrongful summons of Plaintiff, Brian Loma, by Denver police officers while he was ~~on February 15, 2019, Mr. Loma observed~~ observing building security harassing an unhoused person who was sleeping on a bench attached to the Tabor Center Building. Mr. Loma, as a member for the Free Press, who runs the YouTube channel "CutThePlastic" began to film and LiveStream the interactions with the unhoused person and the security team. As Mr. Loma continued to film Ms. Trimble and the security team, Ms. Trimble positioned herself in front of Mr. Loma's camera phone and began to physically push him backwards so that he could not film the interactions the security team was having with the unhoused person. Ms. Trimble called the police and told Officer Robert D. Smith upon arrival that Mr. Loma had spit in her face twice. Corporal Smith interviewed a witness, Bonnie Kutaukas, who told Corporal Smith that Mr. Loma did not spit in anyone's face, and in fact, that Ms. Trimble had physically assaulted Mr. Loma and that Mr. Loma did not retaliate. Ms. Kutaukas also showed Corporal Smith the recording of what happened which did not show Mr. Loma spitting in anyone's face. She also stated that Ms. Trimble never mentioned or said anything about being spit on until Denver Police arrived on scene.

Corporal Smith after watching a video recording of the incident told Ms. Kutaukas that he did not see any interaction between Mr. Loma and Ms. Trimble. Corporal Smith failed to report that Ms. Trimble physically assaulted Mr. Loma in his police report; failed to report that Ms. Trimble was the one following Mr. Loma; failed to report that he watched a video of the incident and did not see any interactions between Mr. Loma and Ms. Trimble; and falsely reported that the video did not start from the beginning of the incident.

Officer John D. Singapuri noted in his report that Eric Brandt also their filming. Corporal Smith gave Mr. Loma a summons to appear in Denver Municipal Court for a charge of Assault for spitting on Ms. Trimble. Office Smith, despite having evidence that Mr. Loma did not assault anyone, stated he was just going to give Mr. Loma a ticket and let them argue it out in court. On March 4, 2019, City Attorney, Melissa M. Drazen Smith, sent an email to property owner and members of the Denver Initiative specifically naming Mr. Loma stating he was stepping on the line of free speech and told those in the email that the City Attorney's Office would, despite not being able to convict Mr. Loma, seek to place Area Restrictions on him so that he could not continue his constitutionally protected right to protest. This email from the City Attorney named Mr. Loma and Eric Brandt specifically. Prior to being convicted of the Assault charge, Mr. Loma was given an Area Restriction keeping him away from the 16th Street Mall area. Mr. Loma's Assault charged was dismissed several months later by the City Attorney on August 18, 2019.



**Allegations for Arrest for Obstruction Charge September 28, 2021**

On October 14, 2020, Mr. Loma was arrest pursuant to an arrest warrant for Obstruction of Passage, case number 20GS008438, for an incident that occurred on September 28, 2020. The arrest warrant was signed by Sergeant Denke on October 12, 2020. Mr. Loma is a community organizer and independent journalist who covers actions, such as protests, that occur in public. Upon Mr. Loma's arrest, he was asked by the arresting officers if he would speak with them regarding some crimes that had been committed over the summer during the ongoing protests occurring in downtown Denver. Mr. Loma informed officers that he would be willing to speak with them provided his attorney was present. Sergeant Burton then told the arresting officer, "Never mind, we will just take his phone." Denver Police Department did not return Mr. Loma's

phone once he was released. Mr. Loma was not provided any documentation as to why Denver Police Department was keeping his personal property or when it would be released as required in the DPD Handbook 106.00(5).

On October 26, 2020, a Search Warrant Affidavit was signed to search the contents of Mr. Loma's phone. This search warrant was filed by Detective Nicholas Rocco-McKeel. The search warrant affidavit seeks a general, exploratory examination into almost everything held Mr. Loma's phone without any particularity to a specific incident and, or, specific time, location, victim, or another person who may have committed any crime. The Detective Rocco-McKeel does not specify how Mr. Loma may be involved in any crime or with anyone suspected of the crimes that occurred during these public protests.

Mr. Loma has been prosecuted numerous times by the City Attorney's Office and has had several of his cases dismissed. On March 4, 2019, City Attorney, Melissa M. Drazen Smith, sent an email to property owner and members of the Denver Initiative specifically naming Mr. Loma stating he was stepping on the line of free speech and told those in the email that the City Attorney's Office would, despite not being able to convict Mr. Loma, seek to place Area Restrictions on him so that he could not continue his constitutionally protected right to protest near the 16th Street Mall the next time they got a conviction. It is clear from the email from the City Attorney's Office, and this Affidavit for Search Warrant, that the City of Denver is targeting Mr. Loma in order to quell his First Amendment rights, and are now doing so by violating the Fourth Amendment in order to search the contents of his phone in a fishing exhibition to try and connect him to crime that occurred during public protests he attended without providing an indica of specificity of how he may be involved.

Mr. Loma was acquitted at trial through a jury of six represented by counsel, Mr. Adam R. Yoast and S. Birk Baumgartner, on April 21, 2021. On June 24, 2021, Denver Municipal Court Judge Chelsea Malone granted an order for the release of all of Mr. Loma's property seized in relation to his arrest for Obstruction which he had been acquitted at trial i.e. his phone. On Wednesday July 21, 2021, Mr. Loma tried to retrieve his property. Detective Rocco-McKeel confirmed that the phone had been transferred to another case (Case #20-387565). Mr. Loma has still been unable to retrieve his property and does not know where his property is located.

**Denver Defendants:**[1] Denver Defendants provide the following preliminary statement, as they have filed a Motion to Dismiss Plaintiff's Amended Complaint and, therefore, have not yet filed their Answers. Denver Defendants deny that they violated Plaintiff's constitutional rights. Denver Defendants assert prosecutorial, qualified, and/or governmental immunity to all allegations in Plaintiff's Amended Complaint. Further, the City and County of Denver denies that it had a municipal policy, custom, or practice of permitting its police officers to violate individuals' First Amendment rights. Moreover, Denver was not deliberately indifferent to the constitutional rights of citizens.

On February 15, 2019, Corporal Robert Smith was called by the fire department to the intersection of 16th Street and Lawrence Street in Denver Colorado to respond to a person who was acting aggressively while the fire department and medical personnel were attempting to render aid to a downed party. Upon arriving at the scene, Co-Defendant Faliesha Trimble

[1] The Denver Defendants are comprised of the City and County of Denver, Kristin Bronson, Melissa Drazen Smith, Marley Bordovsky, Cpl. Robert D. Smith, Det. Nicholas Rocco-McKeel, Sgt. Jason Burton, and Sgt. Jeffrey Berger .

Δ shall file a motion to amend caption on or before 1/31/22.

approached Cpl. Smith and told him that she worked as a security officer for the Tabor Building. While she and two other security officers were checking on the downed man, who was slumped over against the side of the Tabor Center, they were approached by Plaintiff. Ms. Trimble attempted to stand between Plaintiff and the man to provide the man with some privacy. Ms. Trimble reported that Plaintiff got in her face and began following her around while using his phone to videotape her. Ms. Trimble reported that she asked Plaintiff to stop, but he refused and spat in her face twice. Cpl. Smith interviewed at least two other witnesses at the scene: one who stated that Plaintiff spat in Ms. Trimble's face and another who stated that Plaintiff did not spit in Ms. Trimble's face, but said that spittal from Plaintiff may have landed on Ms. Trimble's face because he was yelling and very close to Ms. Trimble. Cpl. Smith reviewed Plaintiff's video of the incident and determined that, despite statements to the contrary, it did not show the entirety of the interaction between Plaintiff and Ms. Trimble and it did not show Plaintiff spitting in Ms. Trimble's face. Plaintiff told Cpl. Smith that he was speaking close to Ms. Trimble's face and belived that it was possible that some of his spittal while talking could have made contact with Ms. Trimble. As a result of Plaintiff and the witnesses' statements, Cpl. Smith issued Plaintiff a Summons and Complaint for Assault.

Subsequent to that arrest, Plaintiff was prosecuted for Assault by attorneys in the Denver City Attorney's Office. On March 18, 2019, during the pendency of that criminal case, the Denver County Court issued an Area Restriction Order barring Plaintiff from entering the area of the 16th Street Mall. On March 4, 2019, Assistant City Attorney Melissa Drazen Smith sent an email to individuals and businesses in the area of the 16th Street Mall seeking victim impact statements to be used during Plaintiff's sentencing proceedings should he be convicted. Ultimately, on August

18, 2019, the assault charge was dismissed pursuant to a motion by the prosecutor. Assistant City Attorneys Melissa Drazen Smith and Marley Bordovsky deny participating in or supervising any actions against Plaintiff that fall outside of their roles as advocates for the City and County of Denver. City Attorney Kristin Bronson denies personally participating in or supervising any actions taken by the Denver City Attorney's Office with respect to Plaintiff.

On October 14, 2020, Plaintiff was arrested by non-party Denver Police officers pursuant to an arrest warrant. While with Plaintiff at the Downtown Detention Center, non-party Officer Andrew Carman received a phone call from Sgt. Jason Burton, who advised Officer Carman that Denver Police detectives wanted Plaintiff's phone seized as evidence for a case the detectives were working. Plaintiff's phone was subsequently seized and placed into property.

On October 26, 2020, Detective Nicholas Z. Rocco-McKeel submitted an Affidvait in Support of Search Warrant seeking a warrant to search the contents of Plaintiff's phone for specified data and files. The Affidavit for Search Warrant provided specifics as to what data was to be extracted from the phone and what data was to be searched. To the extent possible, searches were limited to specified criminal activity occurring between May 28, 2020 and October 14, 2020. Also on October 26, 2020, the Court issued the search warrant. Due to the phone's security features, Denver Police officers were unable to access any of the phone's files until approximately August or September of 2021. On October 1, 2021, Plaintiff's attorneys were notified that the phone could be picked up by Plaintiff at the DPD Property Bureau.

On November 17, 2021, Plaintiff was video recording Denver employees erecting fencing around a homeless encampment. As the employees neared Plaintiff, Sgt. Jeffrey Berger instructed Plaintiff that he needed to back up. Plaintiff requested Sgt. Berger's name and badge number,

which Sgt. Berger told Plaintiff he did not need to provide during a protest. Sgt. Berger continued to calmly instruct Plaintiff to back up and informed him that he could not interfere with the employee's work. Plaintiff continued to demand that Sgt. Berger identify himself, including demanding Sgt. Berger's "name and badge number, bitch." Approximately five minutes after their interaction began, Plaintiff attempted to read Sgt. Berger's name from the tag on Sgt. Berger's shirt. Initially, Sgt. Berger appeared to move to make the name tag more visible to Plaintiff. Plaintiff, however, then moved closer to Sgt. Berger and Sgt. Berger stuck his arm out to create arms length distance between them thereby making contact with Plaintiff's recording equipment, which appeared to knock Plaintiff's recording equipment out of his hand. Plaintiff again demanded Sgt. Berger identify himself, which Sgt. Berger did. Plaintiff's recording equipment continued to work at the end of the encounter.

Denver Defendants anticipate asserting the following defenses in this action:

1. Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against Denver Defendants, in whole or in part.

2. Plaintiff's Amended Complaint and the allegations contained therein are barred by the doctrine of qualified immunity. Denver Defendants' conduct was objectively reasonable, taken in good faith, and did not violated any clearly established law.

3. Plaintiff's injuries and damages, if any, were incurred as a result of his own conduct or the conduct of third parties over which Defendants have no control, and not by reason of any conduct of Denver Defendants.

4. Plaintiff's injuries and damages, if any, were not proximately caused by any acts or omissions of Denver Defendants.

5. Plaintiff failed to mitigate his damages, if any.

6. Denver Defendants' actions at all times were legally privileged and did not meet the standard for which punitive damages may be awarded.

7. Denver's policies conform to established constitutional and statutory law and national law enforcement standards at the time of the events alleged in the Amended Complaint.

8. Plaintiff's alleged injuries and damages did not result from any official policy, custom, usage, or practice established by a final policymaker or someone whose acts or edicts may be fairly said to represent official policy.

9. Plaintiff's claims based on state law may be barred or limited by provisions of the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101, *et seq.*

10. Plaintiff's claims against Defendants Kristin Bronson, Marley Bordovsky, and Melissa Drazen Smith may be barred by prosecutorial immunity.

Denver Defendants reserve the right to assert additional defenses in their responsive pleadings should their Motion to Dismiss be denied.

**Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy (the "AUS Defendants"):** Plaintiff brings a single claim of malicious prosecution against the AUS Defendants related to an interaction between Plaintiff and the AUS Defendants that occurred on or about February 15, 2019. AUS Defendants deny that Ms. Trimble told Mr. Loma he could not film them during this interaction. AUS Defendants further deny that Ms. Trimble made any physical contact with Mr. Loma, but do admit that they contacted police and reported that Mr. Loma had spit in her face twice. AUS

Defendants further incorporate the denials and affirmative defenses set forth in their Answer. AUS Defendants anticipate that liability, causation, and damages will be disputed issues at trial.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Mr. Loma's Assault charge was dismissed by the City Attorney on August 18, 2019.

2. Mr. Loma, represented by counsel, Messrs. Adam R. Yoast and S. Birk Baumgartner, was acquitted on the charge of Obstruction of Passage at a trial to a jury of six on April 21, 2021.

On or before 2/8/22, π shall file a supplement to this Section which: (1) identifies all categories of purported economic loss, + (2) estimates damages in each category.

## 5. COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff's exact damages are still being calculated and cannot be accurately computed at this stage in the litigation. However, Plaintiff is requesting compensation for all economic and non-economic damages, attorneys' fees, and punitive damages. Plaintiff maintains a good faith belief, based upon investigation and public research, that Plaintiff's damages, including without limitation, economic damages, and embarrassment, a jury would award damages to Plaintiff in the amount of $250,000. Plaintiff reserves the ability to modify this amount if and when an expert is utilized. Plaintiff maintains a good faith belief, based upon investigation, public research and shifting social attitudes that view police in an increasingly pejorative manner, a jury would award a punitive sanction of at least $250,000.

**Denver Defendants and AUS Defendants**: Denver Defendants and AUS Defendants assert no claims for damages but reserve the right to move for attorney fees and/or costs.

## 6. REPORT OF PRE-CONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. **Date of Rule 26(f) meeting:**

January 4, 2022.

b. **Names of each participant and party he/she represented:**

Plaintiff, represented by Adam R. Yoast.

Defendants City and County of Denver, Kristin Bronson, Melissa Drazen Smith, Marley Bordovsky, Cpl. Robert D. Smith, Det. Nicholas Rocco-McKeel, Sgt. Jason Burton, and Sgt. Jeffrey Berger, represented by Jennifer Johnson.

Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy represented by Jason D. Melichar and Kimberly L. Koehler.

c. **Statement as to when Rule 26(a)(1) Disclosures were made or will be made:**

The parties' Rule 26(a)(1) disclosures will be made on January 21, 2022.

d. **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):**

The parties have extended the due date for Rule 26(a)(1) disclosures by three days to accommodate counsels' schedules.

e. **Statement concerning any agreements to conduct informal discovery:**

N/A

f. **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

Documents produced by any party shall be bates labeled. Redactions to any

document shall be made in black or by inserting some explanatory explanation in brackets (i.e.: [Redacted]). A privilege log which complies with the requirements of Fed. R. Civ. P. 26(b)(5) shall be provided for any document that is redacted. The parties shall use a unified exhibit system for depositions.

g. **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties do anticipate that these claims will involve some electronically stored information and that disclosure or discovery will involve information or records maintained in electronic form. The parties agree that ESI may initially be produced in PDF rather than native format. The parties agree that where the document or information produced does not indicate information that may be important (such as the date, location and specific terminal on which the document was created or modified, the sender and all recipients, and other metadata), the parties should discuss whether and how such information may be produced. The parties agree to work cooperatively to avoid discovery disputes related to electronically stored information and, in the event a dispute arises, the parties will attempt to apply the Sedona Principles, 2nd Ed. to resolve such dispute(s).

h. **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

During the initial Rule 26(f) conference, the parties discussed the possibilities for

an early resolution. At the time, the parties agreed that some preliminary discovery will be needed before they can adequately assess the possibility of settlement. There has been no further discussion since regarding settlement.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

**Plaintiff and Denver Defendants:** The parties may conduct depositions on the other named parties, plus three others, and all experts (retained or non-retained) once disclosed. Plaintiff may serve up to 10 interrogatories on each individual Defendant, 15 interrogatories on the City and County of Denver, and 10 interrogatories on Allied Universal Security Services. Denver Defendants may collectively serve 25 interrogatories on Plaintiff. Allied Defendants may also collectively serve 25 interrogatories on Plaintiff.

See separate order.

→ just Denver?

really??

**AUS Defendants:** Defendants propose depositions of the parties, plus two others, plus experts. Defendants disagree with Plaintiff's proposal to expand written discovery, which is not proportional to the needs of this case and which would be difficult to coordinate between all defendants given that there are different claims pending against each group of defendants, and the AUS Defendants were only involved in one interaction with Plaintiff. The AUS Defendants agree with the proposal that Plaintiff may serve up to 10 interrogatories on each individual defendant, and 10 interrogatories on AUS. Defendants will use best efforts to coordinate to avoid duplicative discovery to Plaintiff.

So how does the so-called expansion of written discovery prejudice these Ds?

b. **Limitations which any party proposes on the length of depositions.**

Deposition of any party is limited to the presumptive limit of seven (7) hours per deposition. All remaining depositions are limited to four (4) hours.

c. **Limitations which any party proposes on the number of requests for production and/or requests for admission.**

Plaintiff: ~~The parties may serve fifty (50) requests for production of documents and fifty (50) requests for admission on the other side.~~

~~Denver Defendants and AUS Defendants: Defendants disagree this is proportional to the needs of this case, and propose 20 requests for production of documents, and 20 requests for admission per "group" i.e., 20/20 per AUS Defendants (one group), and City Defendants (one group), and 20/20 (Plaintiff). Defendants will use best efforts to coordinate to avoid duplicative discovery to Plaintiff.~~

[handwritten: fifty; See separate order]

d. **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions.**

July 15, 2022.

e. **Other Planning or Discovery Orders**

1. Denver Defendants filed a Motion to Stay Discovery [Doc. #31), which remains pending as of the due date for this proposed Scheduling Order. Denver Defendants' contributions to this proposed Scheduling Order should not be viewed as a waiver of the relief requested through their Motion.

2. Plaintiff's court file in Denver County Court Case No. 19GS001583 is sealed by order of that court. Plaintiff believes that he will be able to provide all relevant documents, videos, and/or other records pertaining to the February 15, 2019 incident with his initial disclosures. If after conferral that does not appear to be the case, Plaintiff agrees to take appropriate action in the Denver County Court to allow the parties to access records covered by the sealing order that are related to this case.

## 9. CASE PLAN AND SCHEDULE

a. **Deadline for Joinder of Parties and Amendment of Pleadings:** April 28, 2022.

b. **Discovery cut-off:** November 30, 2022.

c. **Dispositive motion deadline:** January 20, 2023.

d. **Expert witness disclosure:**

1. Anticipated fields of expert testimony:

   i. **Plaintiff:** Plaintiff anticipates calling expert witnesses in the field of police arrest procedure.

   ii. **Denver Defendants:** Denver Defendants anticipate calling experts in the following areas: police practices. Denver Defendants also anticipate calling any expert necessary to rebut Plaintiff.

   iii. **AUS Defendants** anticipate calling any expert witnesses necessary to rebut Plaintiff.

2. Limitations which the parties propose on the use or number of expert witnesses: 2 retained experts per party, absent further leave of court.

   i. **Plaintiff:** Plaintiff proposes that he be permitted an unlimited number of non-retained experts, and that he be permitted up to 3 retained experts.

   ii. **Defendants:** Denver Defendnants propose limiting retained affirmative experts to two for each party group, *i.e.*, two for Plaintiff, two for Denver Defendants, and two for Allied Defendants.

3. The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before May 23, 2022.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before June 24, 2022.

**e. Identification of persons to be deposed:**

| *Name of Deponent* | *Date of Deposition* | *Time of Deposition* | *Expected Length of Deposition* |
|---|---|---|---|
| Brian Loma | TBA | TBA | 7 hours |
| Kristin Bronson | TBA | TBA | 7 hours |
| Melissa Drazen Smith | TBA | TBA | 7 hours |
| Marley Bordovsky | TBA | TBA | 7 hours |
| Robert D. Smith | TBA | TBA | 7 hours |
| Faliesha Lynett Trimble | TBA | TBA | 7 hours |
| Angelika Champlinskiy | TBA | TBA | 7 hours |
| Nicholas Z. Rocco -McKeel | TBA | TBA | 7 hours |
| Jason Burton | TBA | TBA | 7 hours |
| Jeffrey Berger | TBA | TBA | 7 hours |
| 30(b)(6) of Allied Universal Security Services | TBA | TBA | 7 hours |
| 30(b)(6) of The City and County of Denver | TBA | TBA | 7 hours |
| Bonnie Kutaukas | TBA | TBA | 4 hours |
| | | | |

**10. DATES FOR FURTHER CONFERENCES**

a. Status conferences will be held in this case at the following dates and times:

As needed.

b. A final pretrial conference will be held in this case on a date TBD by Judge at ____ o'clock ___.m. A Final Pretrial Order shall be prepared by the parties and submitted to Domenico the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement:

None at this time.

b. Anticipated length of trial and whether trial is to the court or jury:

The parties propose a 7-day jury trial.

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse, 1060 East 2nd Avenue, Suite 150, Durango, Colorado 81301.

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado this 25th day of January, 2022.

BY THE COURT:

United States Magistrate Judge

Approved as to form:

*s/ Adam R. Yoast*
Adam R. Yoast
BAUMGARTNER LAW, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (303) 529-3476
Fax: (720) 634-1018
adam@baumgartnerlaw.com
*Attorneys for Plaintiff*

/s/ *Jennifer Johnson*
Jennifer Johnson
Assistant City Attorney
Denver City Attorney's Office
Litigation Section
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202-5332
Phone: (720) 913-3304
Fax: (720) 913-3190
jennifer.johnson2@denvergov.org
*Attorneys for Defendants City and County of Denver, Kristin Bronson, Melissa Drazen Smith, Marley Bordovsky, Cpl. Robert D. Smith, Det. Nicholas Rocco-McKeel, and Sgt. Jeffrey Berger*

*/s/ Kimberly L. Koehler*
Jason D. Melichar
Kimberly L. Koehler
Wilson Elser Moskowitz Edelman & Dicker LLP
1225 17th Street, Suite 1700Denver, CO 80202
Phone: (303) 572-5300
Fax: (303) 572-5301
jason.melichar@wilsonelser.com
kim.koehler@wilsonelser.com
*Attorneys for Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy*