**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-2214-DDD-KLM

BRIAN LOMA, an individual

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
CITY ATTORNEY KRISTIN M. BRONSON, in their individual capacity,
ASSISTANT CITY ATTORNEY MELISSA M. DRAZEN SMITH, in their individual capacity,
ASSISTANT DIRECTOR MARLEY BORDOVSKY, in their individual capacity,
CORPORAL ROBERT D. SMITH, in their individual capacity
ALLIED UNIVERSAL SECURITY SERVICES,
FALIESHA LYNETT TRIMBLE, in their individual capacity,
ANGELIKA CHAPLINSKIY, in their individual capacity,
DETECTIVE NICHOLAS Z. ROCCO-MCKEEL, in their individual capacity,
SERGEANT BURTON, in their individual capacity,
OFFICER BURGER (#98049), in their individual capacity,

    Defendants.

**DENVER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants City and County of Denver ("Denver"), Kristin M. Bronson, Melissa M. Drazen Smith, Marley Bordovsky, Robert D. Smith, Nicholas Z. Rocco-McKeel, Jason Burton, and Jeffrey Berger (incorrectly designated as, "Officer Burger") (collectively, "Denver Defendants"), through their counsel, submit the following reply in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) ("Motion") [Doc. #28].

**ARGUMENT**

Denver Defendants' Motion to Dismiss identified the deficiency in each of Plaintiff's claims against them. Plaintiff's Response [Doc. #38] fails to overcome the identified deficiencies.

As a result, Plaintiff fails to show why his Amended Complaint [Doc. #6] ("Complaint") should not be dismissed in its entirety as to the Denver Defendants.

## I. The Motion Should Not Be Converted to a Motion for Summary Judgment

Plaintiff contends that the search warrant and the incorporated affidavit in support pertaining to his cell phone are not central to his claim for First Amendment retaliation against Det. Rocco-McKeel; thus, he requests that Denver's Motion be converted to a motion for summary judgment. (Doc. #38 at 5.) Plaintiff, however, asserts a claim against Det. Rocco-McKeel alleging a Fourth Amendment violation for the unconstitutional seizure of his cell phone based on what he contends to be the overly broad parameters included in the search warrant for the search of the phone. (*See* Doc. #6 at ¶¶163-175; Doc. #38 at 14-15.) As a result, the contents of the search warrant and incorporated affidavit in support, which provide the parameters of the relevant search, are central to Plaintiff's Fourth Amendment claim against Det. Rocco-McKeel, and the Motion need not be converted to a motion for summary judgment.

## II. Plaintiff's Claims Relying on the Entry of the March 18, 2019 Area Restriction Order Are Time Barred

The Tenth Circuit has explicitly rejected Plaintiff's argument that his First Amendment retaliation claim based on the issuance of the March 2019 area restriction order did not accrue until the dismissal of the criminal action against him in August 2019. *See Mata v. Anderson*, 635 F.3d 1250, 1252-53 (10th Cir. 2011). Instead, his retaliation claim pertaining to the March 2019 area restriction accrued "when he knew or had reason to know of the injury that is the basis for the action." *McDonald v. School Dist. No. 1*, 83 F.Supp.3d 1134, 1143 (D. Colo. 2015) (quoting *Mata*, 635 F.3d at 1252). As discussed in the Motion, Plaintiff immediately knew of his injuries upon entry of the order on March 18, 2019. (Doc. #28 at 5-6.) Thus, any claims against the individual

2

defendants alleging that Plaintiff's First Amendment rights were violated by the entry of such order must have been filed on or before March 18, 2021. *See id.* Plaintiff did not file his original Complaint until August 12, 2021 [Doc. #1]—almost five months past the statute of limitations. As a result, Plaintiff's claims against Ms. Bronson, Ms. Bordovsky, and Ms. Drazen Smith, in their individual capacities, based on their purported participation in obtaining the March 2019 area restriction order are time-barred and must be dismissed.

### III. Plaintiff Has Not Identified Any Facts Demonstrating a Constitutional Violation by Any Individual Affiliated with the Denver City Attorney's Office

#### A. Plaintiff continues to fail to identify any personal participation by Kristin Bronson in any of the alleged constitutional violations

Plaintiff's Complaint does not include any factual allegations showing that Ms. Bronson violated his constitutional rights. In his Response, Plaintiff alleges that Ms. Bronson ratified a policy of prosecuting him in retaliation for his protest activities. (*See* Doc. #38 at 8-9.) The Complaint, however, contains no such allegation. (*See* Doc. #6, ¶¶ 12, 106 (Complaint's only allegations against Ms. Bronson).) Plaintiff cannot attempt to amend his Complaint by alleging new facts in his Response. *In re Qwest Commc'ns Intern., Inc.*, 396 F.Supp.2d 1178, 1203 (D. Colo. 2004).

Second, Plaintiff appears to be conflating his municipal liability claims—none of which assert ratification—with his claim against Ms. Bronson in her individual capacity. (*See* Doc. #38 at 8-9.) As discussed in the Motion, in order to state a claim against Ms. Bronson in her individual capacity, Plaintiff must allege facts demonstrating her personal participation in the alleged constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Plaintiff's general accusations against Ms. Bronson as a supervisor are insufficient to satisfy his burden

3

because he may not base his civil rights claims against her solely on a theory of *respondeat superior* liability for the actions of employees she supervises. *See Mitchell v. Maynard*, 80 F.3d 1443, 1441 (10th Cir. 1996). The Complaint is bereft of any factual allegation showing that Ms. Bronson personally participated in the conduct challenged in this case. His claims against Ms. Bronson, in her individual capacity, should be dismissed.

### B. Plaintiff similarly fails to demonstrate that Melissa Drazen Smith violated his constitutional rights

The Complaint's only factual allegations against Ms. Drazen Smith pertain to an email she sent seeking victim impact statements for use in Plaintiff's pending criminal action should he be convicted. (*See, e.g.,* Doc. #6 at ¶ 41; Doc. #28-1.) As noted in the Motion, the Complaint is devoid of any factual allegations showing that Ms. Drazen Smith played any direct role in seeking the March 2019 area restriction order. (*See* Doc. #28 at 8.) Even if she did, as discussed above, such claim is time-barred. While the Response claims that Plaintiff is alleging that Ms. Drazen Smith, "coordinate[d] with others in her office for the direct result of keeping Mr. Loma out of downtown Denver . . . ," (Doc. #38 at 9), there are no factual allegations in the Complaint to support that Ms. Drazen Smith took such action. And Ms. Drazen Smith's email does not copy any other members of the Denver City Attorney's Office let alone direct any of them to seek the area restriction order entered by the Denver County Court against Plaintiff. (*See* Doc. #28-1.) Plaintiff fails to plead a direct link between Ms. Drazen Smith's conduct and an alleged constitutional violation, and his claims against her, in her individual capacity, should be dismissed.

### C. Marley Bordovsky did not personally participate in any violation of Plaintiff's constitutional rights

Plaintiff's Response, again, improperly relies on facts not alleged in the Complaint in an attempt to rescue his deficient claims against Ms. Bordovsky, including that Ms. Bordovsky actually sought the area restriction orders against him even though she was not the prosecuting attorney on his 2021 criminal case. (*See, e.g.,* Doc. #38 at 9-10); *In re Qwest*, 396 F.Supp.2d at 1203. The Complaint alleges only that: (1) Ms. Bordovsky's name is "listed" on the area restriction order entered against him in March 2019 and on another Plaintiff was notified would sought be in a later case; and (2) that she "reviewed" Plaintiff's criminal cases. (*See* Doc. #6 at ¶¶ 118-19, 122.) As noted above, any claim relying on the entry of the March 2019 area restriction order is time-barred. Further, the general allegations regarding Ms. Bordovsky's review of Plaintiff's criminal cases and the fact that her name appeared on a proposed pleading indicating that an area restriction order may be sought in another case are insufficient to plead an affirmative link between Ms. Bordovsky's conduct and a violation of Plaintiff's constitutional rights. Plaintiff's claims against Ms. Bordovsky, in her individual capacity, should be dismissed for failure to state a claim.

### IV. Prosecutorial Immunity Bars Plaintiff's Claims Against Melissa. Drazen Smith and Marley Bordovsky

Plaintiff's Response asks the Court to find ulterior motives in the basic prosecutorial functions that Ms. Drazen Smith and Ms. Bordovsky are alleged to have performed, and then waive their prosecutorial immunity based on such ulterior motives. (Doc. #38 at 9-13.) As noted in the Motion, ulterior motives for prosecutorial functions performed *during the course of a criminal prosecution*, such as seeking victim impact statements for use during sentencing and/or an area restriction order from the court with jurisdiction over the criminal case, does not waive Ms. Drazen

5

Smith's or Ms. Bordovsky's prosecutorial immunity. (*See* Doc. #28 at 10 (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).)

### V.   Plaintiff Fails To Meet His Burden of Overcoming the Individual Officers' Qualified Immunity Defense

#### A.   Cpl. Smith did not seize Plaintiff as required for a malicious prosecution claim

Plaintiff fails to explain how he was seized as a result of Cpl. Smith's issuance of a summons to him. Instead, he alleges that the fact that Cpl. Smith "seized" him while conducting an on-scene investigation which lead to the issuance of the summons is sufficient to plead a plausible municipal liability claim. (*See* Doc. #38 at 12.) A constitutional claim for malicious prosecution, however, is concerned with a deprivation of liberty—specifically an arrest or incarceration—that is caused by the initiation or continuance of legal proceedings against a plaintiff. *See Becker v. Kroll*, 494 F.3d 904, 915-916 (2007). Here, Plaintiff fails to identify any deprivation of liberty resulting from Cpl. Smith *issuing* the summons—let alone any facts showing that he was arrested or incarcerated as a result of the summons. Thus, Plaintiff fails to allege sufficient facts supporting that Cpl. Smith violated his constitutional rights as required to overcome Cpl. Smith's assertion of qualified immunity, and Plaintiff's First Claim for Relief should be dismissed as to Cpl. Smith.

#### B.   The search warrant sought and executed by Det. Rocco-McKeel did not violate the Fourth Amendment

The search warrant sought and executed by Det. Rocco-McKeel was sufficiently specific and did not violate Plaintiff's Fourth Amendment rights. Plaintiff's Response discusses the Colorado Supreme Court's opinion in *People v. Coke*, 461 P.3d 508 (Colo. 2020), wherein the court held that a search warrant that allowed a general search of a defendant's phone violated the

defendant's Fourth Amendment rights. *Id.* at 516. The court was concerned that the search warrant contained "no particularity as to the alleged victim or to the time period during which the assault allegedly occurred, and instead allowed officers to search "all texts, videos, pictures, contact lists, phone records, and any data that showed ownership or possession." *Id.* at 516. That is not the case here. As discussed in detail in the Motion, the search warrant for Plaintiff's phone was limited to specific dates, times, and locations at which criminal activity occurred and established probable cause as to why Plaintiff's phone likely contained evidence of such criminal activity. (*See* Doc. #28 at 13-16.)

Plaintiff also provides no support for his claim that keeping his phone past a court order releasing his property held in relation to his obstruction of passage charge constitutes a Fourth Amendment violation. (Doc. #38 at 16; *see also* Doc. #6, ¶ 66.) Notably, the Complaint is devoid of any allegation that Plaintiff's phone was seized to serve only as evidence for the obstruction of passage charge. Instead, the plain language of the search warrant demonstrates that Plaintiff's phone was believed to contain evidence of criminal activity by Plaintiff and other individuals. (*See* Doc. #28 at 13-14). Thus, Plaintiff's Response fails to identify any legal or factual basis from which to find that Det. Rocco-McKeel violated Plaintiff's Fourth Amendment rights. As a result, he is entitled to qualified immunity for Plaintiff's Fifth Claim for Relief.

### C. Sgt. Berger was not acting under the color of state law at the time of the challenged conduct

Denver Defendants' Motion asserted that Officer Berger was not acting under the color of law at the time he took the actions Plaintiff claims violated his constitutional rights. (Doc. #38 at 19-20.) Plaintiff's Response is silent on this issue. Therefore, and for the reasons outlined in the Motion, Plaintiff's § 1983 claims against Sgt. Berger should be dismissed.

7

### D. Sgt. Berger did not seize Plaintiff's phone under the Fourth Amendment

Plaintiff's Response seeks to shift his excessive force claim against Sgt. Berger to one for unreasonable seizure of property. (*See* Doc. #38 at 17.) As noted repeatedly throughout this Reply, Plaintiff cannot amend his operative complaint by redrafting his claims in his Response. *In re Qwest*, 396 F.Supp.2d at 1203. Regardless, even if the Court evaluated Plaintiff's excessive force claim under the standard applicable to a claim for an unreasonable seizure of property, the Complaint still fails to state a claim. In order to state a claim for unreasonable seizure of property, Plaintiff must allege facts showing that Sgt. Berger acted with the intention of making contact with Plaintiff's phone; it is not enough that Sgt. Berger acted negligently in attempting to create distance between himself and Plaintiff. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (2011) (Fourth Amendment liability only attaches to intentional conduct). Denver Defendants' Motion explains in detail that the Complaint fails to provide any facts from which this Court could conclude that Sgt. Berger acted with requisite intent. (*See* Doc. #28 at 25-26.) Plaintiff's Response fails to direct the Court to any such factual allegations and, instead, simply concludes that "[Sgt.] Berger acted in the with the [sic] explicit intention of keeping Mr. Loma from filming him . . .." (Doc. #38 at 17.) This conclusory allegation is insufficient to state a claim against Sgt. Berger for an unreasonable seizure and, therefore, Sgt. Berger is entitled to qualified immunity on Plaintiff's Seventh Claim for Relief.

### E. Plaintiff fails to plead plausible claims for First Amendment retaliation against the individual officer defendants

Plaintiff's Fourth Claim for Relief purports to assert First Amendment retaliation claims against Cpl. Smith, Det. Rocco-McKeel, Sgt. Burton, and Sgt. Berger. (Doc. #6 at 146-162.) Denver Defendants' Motion evaluated that factual allegations levied against each of these

defendants in the Complaint and discussed how the allegations failed to plead a plausible First Amendment retaliation claim against them. (Doc. #28 at 22-26.) Instead of directing the Court to any factual allegations supporting Plaintiff's First Amendment retaliation claims against these defendants, Plaintiff's response improperly conflates his claims against the officers—in their individual capacities—with his municipal liability claims. (Doc. #38 at 18-21.) Personal liability under § 1983 must be based on the specific defendant's personal participation in the allegedly unconstitutional conduct. *Brown*, 662 F.3d at 1164. Plaintiff's apparent argument that each of the individual defendants' actions combined together with the actions of members of the Denver City Attorney's Office to culminate in a widespread practice of violating Plaintiff's First Amendment rights is insufficient to state a claim against Cpl. Smith, Det. Rocco-McKeel, Sgt. Burton, and Sgt. Berger in their individual capacities. As a result, they are entitled to qualified immunity and Plaintiff's Fourth Claim for Relief should be dismissed as to them.

## VI. Plaintiff Does Not Plead Sufficient Facts to Support a Municipal Liability Claim

As discussed in the Motion, Plaintiff's municipal liability claims against Denver simply do not meet the pleading requirements set forth in *Twombly* and *Iqbal*, and Plaintiff's Response does not point to well-pled allegations that support his municipal liability claims. These claims still consist of primarily "unadorned, the-defendant-unlawfully-harmed-me accusation[s]", and of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not benefit from the assumption of truth afforded to Plaintiff's well-pled factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citation omitted). Further, Plaintiff's inability to demonstrate an underlying constitutional violation by any of the individual

9

Denver Defendants requires dismissal of these claims. *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009).

### A. Plaintiff fails to identify any official policy to support his Second Claim for Relief

Denver Defendants' Motion demonstrated that the Complaint failed to include factual allegations showing that the conduct Plaintiff challenges was taken pursuant to a policy adopted by an official with policymaking authority in that area, as required to sufficiently plead his Second Claim for Relief. (*See* Doc. #28 at 27.) In his Response, Plaintiff claims that Ms. Bronson "ratified the policy of retaliating against Mr. Loma," but fails to direct the Court to any factual allegations in the Complaint that support this conclusion. (Doc. #38 at 8.) The Complaint's conclusory allegation that Ms. Bronson "is the final decision maker as it relates to the prosecution of municipal offenses in Denver Municipal Court,"(Doc. 6 at ¶ 106), without any facts evidencing that Ms. Bronson approved the challenged "policy," is not enough to survive dismissal. *See Twombly,* 550 U.S. at 545.

Plaintiff's Response also claims that Ms. Drazen Smith's email establishes that such policy exists. (*See* Doc. #38 at 9.) However, as discussed extensively in the Motion, Ms. Drazen Smith's email discusses a policy of "accomodat[ing] free speech on the mall," and Plaintiff fails to explain how Ms. Drazen Smith, an Assistant City Attorney, was vested with the authority to make any policy on behalf of Denver. (Doc. #28 at 27-28; Doc. #28-1.) Plaintiff's Response makes no effort to address these points. Thus, even when accepting the well-pled allegations of the Complaint as true, Plaintiff fails to plausibly allege that an unconstitutional policy was adopted by a municipal policymaker. As a result, Plaintiff's Second Claim for Relief against Denver should be dismissed.

### B. Plaintiff fails to allege facts supporting a widespread practice or custom

Denver Defendants' Motion pointed out that the Complaint "fails to include sufficient factual allegations of prior incidents involving similarly situated individuals that would even arguably suggest that Denver" maintains the practices and/or customs of: (1) violating individual's First Amendment rights through the issuance of area restrictions; and (2) retaliating against Plaintiff based on the content of his speech. (*See* Doc. #28 at 28-29.)

"[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citation omitted). "With informal unwritten policies, customs, or practices, the plaintiff can plead a pattern of multiple similar instances of misconduct; no set number is required and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible." *Arakji v. Hess*, No. 15–cv–00681–CMA, 2015 WL 7755975, at *6 (D. Colo. Dec. 2, 2015 ) (internal quotation marks and citation omitted). Here, Plaintiff's Complaint fails to allege such a pattern or custom.

The Complaint offers only factual allegations relating to Plaintiff's interactions with DPD officers and the Denver City Attorney's Office to support his municipal liability claims, which Plaintiff appears to admit. (Doc. #38 at 21 ("Plaintiff has plead numerous instances of similar attempts to chill his speech; again specifically relating to his filming the police.")). Plaintiff's aggregation of factually dissimilar situations and calling them the result of a custom or practice is insufficient. *See Atwell v. Gabow*, Nos. 06–cv–02262–JLK, 07–cv–2063–JLK, 2008 WL 906105,

11

at *8 (D. Colo. Mar. 31, 2008). He must show how they are factually similar—not just claim they all resulted from individual Denver Defendants' unproven intent to retaliate against him.

Plaintiff's claims in this case arise from three interactions with DPD officers and the attendant investigations and criminal prosecutions. In the first incident, he was cited for assault based on statements from the victim and a supporting witness. (*See* Doc. #6, ¶¶ 29, 30.) In the second, he was arrested pursuant to a warrant for obstruction of passage[1] and, during that arrest, his phone was seized and then held to allow officers to obtain a search warrant and perform a search seeking evidence of numerous identified instances of criminal conduct. *Id.* at ¶¶ 46, 52, 54, 55. In the third, Plaintiff approached a Denver work crew at a homeless encampment cleanup and was asked by a DPD officer to back up, which he did. Instead of ending the encounter, Plaintiff repeatedly demanded that the officer identify himself with his name and badge number. *Id.* at ¶¶ 74-76. These interactions are not substantially similar Further, the Complaint's allegation demonstrate that the DPD officers' contact with Plaintiff did not arise from Plaintiff's First Amendment activities, but rather other conduct such as spitting, blocking traffic, and aggressively demanding information from an officer during a voluntary encounter and invading that officer's personal space. None of these incidents supports Plaintiff's claim that Denver, through its police officers, has a custom of retaliating against him based on the content of his speech.

Plaintiff also seeks to impose municipal liability on Denver for its City Attorney's Office's pursuit of area restriction orders against him and other individuals, during the pendency of their criminal cases, allegedly in retaliation for their exercise of their First Amendment rights. (Doc. #6, ¶¶ 145, 162.) In his Complaint, Plaintiff identifies one instance in March 2019 where an area

---

[1] Plaintiff does not challenge the constitutionality of this arrest.

12

restriction order was entered against him after a request by an unidentified assistant city attorney, *id.* at ¶ 114, and one instance where he was put on notice that another unidentified assistant city attorney *may* seek an area restriction order.[2] *Id.* at ¶ 118. Plaintiff does not identify any cases involving the Denver City Attorney's Office seeking and obtaining area restrictions against any individuals other than himself. Thus, Plaintiff has identified only one instance where an area restriction order was entered against him, which is insufficient to support his claim. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019); *Abilav v. Funk*, No. CV 14-1002 JB/SMV, 2016 WL 9021834, at *19 (D.N.M. Dec. 14, 2016) (citing cases in support of the statement that "two or three instances will not suffice" to establish practice or custom). Therefore, Plaintiff has failed to plead a widespread custom or practice of violating individual's First Amendment rights through the issuance of area restrictions and/or retaliating against him based on the content of his speech; thus, his Third and Fourth Claims for Relief should be dismissed.

### C. Plaintiff identifies no facts supporting a causal link between Denver's action or inaction and his alleged constitutional injuries

Although raised in the Motion, Plaintiff's Response does not even attempt to explain how the allegations of the Complaint demonstrate a direct causal link between Denver's alleged actions or inactions and the alleged constitutional violations. (*See* Doc. #28 at 31.) Accordingly, for this reason as well, Plaintiff's Second, Third, and Fourth claims for relief should be dismissed.

### VII. Plaintiff's Assault and Battery Claims Must Be Dismissed for His Failure to Comply with the Notice Requirements of the CGIA

In his Response, Plaintiff claims that his assault and battery claims against Sgt. Berger are "covered" under SB-217 (Doc. #38 at 22), however, that is not how they are pled in the Complaint.

---

[2] It is not clear whether such area restriction was actually sought.

Neither Plaintiff's Twelfth nor Thirteenth Claim for Relief reference SB-217 or the Colorado Constitution. (*See* Doc. #6 at ¶¶ 235-243.) Plaintiff cannot amend his Complaint by asserting a new cause of action in his Response, nor should the Court consider allegations raised for the first time in a response. *In re Qwest*, 396 F.Supp.2d at 1203. Further, Plaintiff's Seventh Claim for Relief purports to assert a claim against Sgt. Berger under SB-217 for excessive force using the same facts as those alleged to support of his assault and battery claims. (*See* Doc. #6 at ¶¶183-191.) Thus, Denver Defendants' construction of these claim as asserted pursuant to Colorado common law is supported by the allegations of the Complaint.

It appears that rather than admit his mistake that his common law claims for assault and battery are barred by his failure to comply with the notice requirements of the CGIA, Plaintiff asks this Court to construe his Complaint as asserting duplicative claims under SB-217. Because Plaintiff does not dispute that he failed to file the notice of claim required under C.R.S. § 24-10-109, his Twelfth and Thirteenth Claims for Relief, which assert common law tort claims, should be dismissed for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**VIII.   Plaintiff Cannot Amend His Complaint through His Response in Order to Save His Claims under the Law Enforcement Integrity Act**

Plaintiff's Response fails to address the single, dispositive fact that his Complaint fails to identify any right secured by the Colorado Constitution that Det. Rocco-McKeel and Sgt. Berger allegedly violated. (*See* Doc. #6 at ¶¶ 192-234.) Instead, the Complaint identifies only rights secured by the United States Constitution and cites to federal case law interpreting such rights. *Id.* Plaintiff's Response ignores such deficiency in the Complaint and simply identifies the portions of the Colorado Constitution he claims codify the rights at issue. (Doc. #38 at 22). For the final time, Plaintiff may not use a response to a motion to dismiss to amend his Complaint. *In re Qwest*,

396 F.Supp.2d at 1203. As a result, he fails to sufficiently plead his Eighth, Ninth, Tenth, and Eleventh Claims for Relief, which should be dismissed.

## CONCLUSION

Plaintiff's Complaint fails to articulate sufficient facts which give rise to plausible violations of his rights under the United States Constitution by any of the individual Denver Defendants. Further, the Complaint fails to include any facts from which municipal liability against Denver could be imposed. Finally, Plaintiff has failed to plead any facts to support his claims made under the Colorado Constitution, and his claims made under Colorado common law are barred by his failure to comply with the notice requirements of the CGIA. Accordingly, for the reasons stated herein and in the Motion, Denver Defendants respectfully request that the Court dismiss Plaintiff's Complaint against them, in its entirety.

Dated this 16th day of February 2022.

Respectfully submitted by,

*s/ Jennifer Johnson*
Jennifer Johnson
Assistant City Attorney
Denver City Attorney's Office
Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, Colorado 80202-5332
Telephone: 720-913-3304
Facsimile: 720-913-3190
E-mail:jennifer.johnson2@denvergov.org
*Attorney for Denver Defendants*

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in Judge Domenico's Practice Standard III.A.1 and the Court's Order granting Denver Defendants' Unopposed Motion for Relief from Word Limit for Reply in Support of Motion to Dismiss [Doc. #53], as this Reply contains 4,279 words.

> *s/ Jennifer Johnson*
> Denver City Attorney's Office

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2022, the foregoing **DENVER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

Adam R. Yoast
adam@baumgartnerlaw.com
*Counsel for Plaintiff*

Jason D. Melichar,
Kimberly L. Koehler
jason.melichar@wilsonelser.com
kimberly.koehler@wilsonelser.com
*Counsel for Universal Defendants*

> *s/ Jennifer Johnson*
> Denver City Attorney's Office