**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02214-NYW-KLM

BRIAN LOMA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
CITY ATTORNEY KRISTIN M. BRONSON, in her individual capacity,
ASSISTANT CITY ATTORNEY MELISSA M. DRAZEN SMITH, in her individual capacity,
ASSISTANT DIRECTOR MARLEY BORDOVSKY, in her individual capacity,
CORPORAL ROBERT D. SMITH, in his individual capacity,
ALLIED UNIVERSAL SECURITY SERVICES,
FALIESHA LYNETT TRIMBLE, in their individual capacity,
ANGELIKA CHAPLINSKY, in their individual capacity,
DETECTIVE NICHOLAS Z. ROCCO-MCKEEL, in his individual capacity,
SERGEANT JASON BURTON, in his individual capacity, and
SERGEANT JEFFREY BERGER, in his individual capacity,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Pending before the Court is the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (the "Motion") filed by Defendants City and County of Denver ("Denver"), Kristin M. Bronson ("Defendant Bronson" or "Ms. Bronson"), Melissa M. Drazen Smith ("Defendant Drazen Smith" or "Ms. Drazen Smith"), Marley Bordovsky ("Defendant Bordovsky" or "Ms. Bordovsky"), Robert D. Smith ("Defendant Smith" or "Corporal Smith"), Nicholas Z. Rocco-McKeel ("Defendant Rocco-McKeel" or "Detective Rocco-McKeel"), Sergeant Jason Burton ("Defendant Burton" or "Sergeant Burton"), and Sergeant Jeffrey Berger ("Defendant Berger" or

"Sergeant Berger," and, collectively, "City Defendants").[1]   [Doc. 28, filed December 13, 2021].

Plaintiff Brian Loma ("Plaintiff" or "Mr. Loma") timely filed a response brief (the "Response") opposing the Motion, [Doc. 38, filed January 18, 2022], and City Defendants followed with a reply brief (the "Reply"), [Doc. 55, filed February 16, 2022]. The issues have been fully briefed, and the Court does not believe that oral argument would materially aid in the resolution of this matter. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

**BACKGROUND**

The following facts are drawn from the Amended Complaint, [Doc. 6], and are taken as true for the purposes of resolving the instant Motion. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 757 F.3d 1125, 1136 (10th Cir. 2014). Plaintiff Brian Loma is an individual who operates a YouTube channel that he uses to livestream community events and interactions between members of the public and police in the City and County of Denver. [Doc. 6 at ¶¶ 1, 4]. Plaintiff alleges that, because of his ability to expose government misconduct through the use of video platforms, he "has become a continual target for the City and County of Denver and the Denver Police in an effort to silence his advocacy." [*Id.* at ¶ 6].

I.      **February 2019 Interaction with Police and Assault Charge**

On February 15, 2019, Mr. Loma observed security guards harassing an unhoused individual sleeping on a bench outside of the Tabor Center Building located on the 16th Street Mall in downtown Denver. [*Id.* at ¶ 23]. He specifically recalls them poking and prodding the

---

[1] The Court cites to the docket number and the page numbers assigned by the District of Colorado's Electronic Court Filing ("ECF") system for all documents. The Court also employs the corrected spelling of two Defendants' names: Sergeant Jason Burton and Sergeant Jeffrey Berger. [Doc. 59].

unhoused individual, and he began to film and livestream the guards' actions.  [*Id.* at ¶¶ 24–25].  As he was filming, a member of the team—Defendant Faliesha Lynett Trimble ("Defendant Trimble" or "Ms. Trimble"), an employee of Allied Universal Security Services ("Allied Universal")—approached him and informed him that "he could not film them."  [*Id.* at ¶ 26].  Plaintiff continued to film the interaction, and Ms. Trimble began to push him backwards and block his camera's view.  [*Id.* at ¶¶ 27–28].

Ms. Trimble subsequently called the police.  [*Id.* at ¶ 29].  Upon Corporal Robert D. Smith's arrival, Ms. Trimble told him that Mr. Loma had "spit in her face twice."  [*Id.*].  Corporal Smith proceeded to interview witnesses at the scene.  [*Id.* at ¶ 30].  One witness—Angelika Chaplinskiy ("Defendant Chaplinskiy" or "Ms. Chaplinskiy"), another employee of Allied Universal—confirmed Ms. Trimble's story.  [*Id.*].  A second witness, Bonnie Kutaukas ("Ms. Kutaukas"), informed Corporal Smith that Mr. Loma had not spit in Ms. Trimble's face and that Ms. Trimble had physically assaulted him.  [*Id.* at ¶ 31].  She showed Corporal Smith a recording of the previous events, which did not show Plaintiff spitting in Ms. Trimble's face, and confirmed that Ms. Trimble never mentioned having been spat on until he had arrived at the scene.  [*Id.* at ¶ 32].  Corporal Smith informed Ms. Kutaukas that he did not see any interaction between Mr. Loma or Ms. Trimble on the video, and asked if the recording had started at the beginning of their interaction; she confirmed that it had.  [*Id.* at ¶ 33].

In his report, Corporal Smith did not state that Ms. Trimble had physically assaulted Plaintiff, that Ms. Trimble had followed Plaintiff, or that he had reviewed a video of the incident.  [*Id.* at ¶¶ 34–36].  Instead, Mr. Loma alleges that Corporal Smith falsely reported that the video had not started at the beginning of the incident.  [*Id.* at ¶ 37].  The interaction ended when Corporal

Smith issued Plaintiff "a summons to appear in Denver Municipal Court for a charge of Assault for spitting on Ms. Trimble." [*Id.* at ¶ 39].

Approximately three weeks later, Ms. Drazen Smith emailed the property owner and members of the "Denver Initiative"[2] naming Plaintiff and stating that he was "stepping on the line of free speech." [*Id.* at ¶ 41]. Mr. Loma claims she promised to place "Area Restrictions" on him, despite not being able to secure a conviction against him, "so that he could not continue his constitutionally protected right to protest near the 16th Street Mall the next time they got a conviction." [*Id.*]. Before he was convicted of the aforementioned assault charge, Plaintiff "was given an Area Restriction, keeping him away from the 16th Street Mall area." [*Id.* at ¶ 43]. At the time the restriction was issued, Mr. Loma "was employed as a Field Director of a campaign that was in direct opposition to the current Mayor." [*Id.* ¶ 44]. He claims the restriction prevented him from working on the campaign in a heavily-populated area of downtown Denver. [*Id.*]. On August 18, 2019, Mr. Loma's assault charge was allegedly dismissed. [*Id.* at ¶ 45].

## II.    October 2020 Arrest and Search Warrant

Over a year later—on October 14, 2020—Mr. Loma was arrested pursuant to an arrest warrant "for Obstruction of Passage . . . for an incident that occurred on September 28, 2020." [*Id.* at ¶ 47]. Upon his arrest, Mr. Loma was asked by the arresting officers if he would speak with them regarding a set of crimes that had been committed during the summer of 2020 in downtown Denver. [*Id.* at ¶ 49]. At the time, the officers were on the phone with Sergeant Burton. [*Id.*]. Mr. Loma said that he would speak with the officers if his attorney were present. [*Id.* at ¶ 50]. Sergeant Burton replied over the phone that, rather than allow him to speak with an attorney, "we will just take his phone." [*Id.* at ¶ 52].

---

[2] Plaintiff does not clarify what the "Denver Initiative" is.

After spending the night in jail and being released on bond, Mr. Loma's phone was not returned to him. [*Id.* at ¶¶ 53–54]. On October 26, 2020, Detective Nicholas Rocco-McKeel ("Detective Rocco-McKeel") "filed" an affidavit in support of a search warrant regarding Mr. Loma's phone. [*Id.* at ¶¶ 55–56]. The Search Warrant Affidavit sought "a general, exploratory examination into almost everything held on [Plaintiff's] phone without any particularity to a specific incident and/or specific time, location, victim, or another person who may have committed any crime." [*Id.* at ¶ 56]. Mr. Loma claims that the Affidavit permitted the collection of, *inter alia*, identifying information, ownership, usage files, communications, notes, photos, and metadata from between May 28, 2020 to October 14, 2020. [*Id.* at ¶ 57]. Nevertheless, the Affidavit did specify "certain offenses committed by members of the community during the ongoing protests throughout the summer." [*Id.* at ¶ 58]. Mr. Loma notes that it does not clarify how he might have been involved with any crimes or suspects, and that he has been prosecuted numerous times but has had several of his cases dismissed. [*Id.* at ¶¶ 59–60].

Moving forward to the spring of 2021, Plaintiff was acquitted at a jury trial regarding his arrest for obstruction. [*Id.* at ¶ 65]. On June 24, 2021, Mr. Loma avers that Judge Chelsea Malone of the Denver Municipal Court ordered the release of all property seized in relation to his obstruction arrest—including his phone. [*Id.* at ¶ 66]. On July 21, 2021, Mr. Loma attempted to retrieve his property from the Denver Police Department; however, he was informed that they did not have possession of his phone "because it was transferred to another jurisdiction." [*Id.* at ¶¶ 67–68]. Detective Rocco-McKeel confirmed that the phone had been transferred "to another case" in an email dated the same day. [*Id.* at ¶ 68]. Mr. Loma remains unaware of the whereabouts of his phone. [*Id.* at ¶ 69].

### III.    November 2020 Interaction with Police and Damage to Phone

On November 17, 2020,[3] Plaintiff traveled to an area outside of St. Joseph's Hospital to film the "traumatic displacement of an encampment where BIPOC[4] persons were residing," as he had heard word of a planned peaceful sit-in.  [*Id.* at ¶¶ 70–71].  When he arrived, he observed a work crew erecting a fence around the encampment and approximately twelve police officers.  [*Id.* at ¶ 72].  He began filming the area, and was "holding in his hand a stabilizing device known as a gimbal with his cellphone attached and held out away from his body."[5]  [*Id.* at ¶ 73].

At this point, Sergeant Berger approached him, refused to identify himself, and struck the camera and gimbal from his hand when Mr. Loma attempted to film his badge.  [*Id.* at ¶¶ 76–77].  His phone shattered, and he was unable to film the remainder of the displacement.  [*Id.* at ¶ 79].  Following the loss of his phone and his ability to live stream events, Mr. Loma alleges that he suffered a loss of income and property.  [*Id.* at ¶ 80].

### PROCEDURAL BACKGROUND

Mr. Loma initiated this action on August 13, 2021 against the City and Defendants Bronson, Drazen Smith, Smith, Allied Universal, Trimble and Chaplinskiy asserting three claims for relief:  (1) malicious prosecution against Defendants Smith, Allied Universal, Trimble, and Chaplinskiy; (2) violation of First Amendment rights against Defendants the City, Bronson, and Drazen Smith based on an official policy; and (3) violation of First Amendment rights against

---

[3] The Amended Complaint avers that these events occurred in November 2021; but Plaintiff clarifies in his Response to the Motion to Dismiss that they occurred in November 2020. *See* [Doc. 38 at 17].

[4] The term BIPOC is an acronym that refers to Black, Indigenous and People of Color.  *See* Ernestine Chaco, *Mentorship, Leadership, and Being an Indigenous Woman*, 69 J. Legal Educ. 630, 636 (2020).

[5] The Court notes that it is unclear whether or not this is the same phone that was seized, or whether it is a new phone.

Defendant the City, Bronson, and Drazen Smith based on a custom. [Doc. 1]. Then, on October 7, 2021, prior to service of the original Complaint, Mr. Loma filed his operative Amended Complaint. [Doc. 6]. In the Amended Complaint, Plaintiff named additional defendants, who are all sued in their individual capacities, and asserts the following claims for relief:

1. Count One, raised against Corporal Robert D. Smith, Allied Universal Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy, for malicious prosecution under § 1983. [*Id.* at ¶¶ 87–100].

2. Count Two, raised against the City of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, and Assistant Director Marley Bordovsky, for an official policy violating the First Amendment to the United States Constitution under § 1983. [*Id.* at ¶¶ 101–127].

3. Count Three, raised against the City of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, and Assistant Director Marley Bordovsky, for a custom of violating the First Amendment to the United States Constitution under § 1983. [*Id.* at ¶¶ 128–145].

4. Count Four, raised against the City of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, Assistant Director Marley Bordovsky, Corporal Smith, Detective Rocco-McKeel, Sergeant Burton, and Officer Burger, for a custom amounting to First Amendment retaliation. [*Id.* at ¶¶ 146–162].

5. Count Five, raised against Detective Nicholas Z. Rocco-McKeel, for a violation of the Fourth Amendment to the United States Constitution under § 1983. [*Id.* at ¶¶ 163–175].

6. Count Six, raised against Sergeant Berger, for a violation of the Fourteenth Amendment to the United States Constitution for the allegedly unconstitutional deprivation of his property under § 1983. [*Id.* at ¶¶ 176–182].

7. Count Seven, raised against Sergeant Berger, for a violation of the Fourth (or Fourteenth) Amendment to the United States Constitution for the use of excessive force under § 1983. [*Id.* at ¶¶ 183–191].

8. Count Eight, raised against Detective Rocco-McKeel, for a violation of the Fourth Amendment to the United States Constitution that resulted in an allegedly unconstitutional seizure of property under "SB-217." [*Id.* at ¶¶ 192–205].

9.   Count Nine, raised against Sergeant Berger, for a violation of the Fourteenth Amendment to the United States Constitution that resulted in an unconstitutional deprivation of property under "SB-217." [*Id.* at ¶¶ 206–212].

10.   Count Ten, raised against Sergeant Berger, for a violation of the Fourteenth Amendment to the United States Constitution that resulted in the use of excessive force under "SB-217." [*Id.* at ¶¶ 213–221].

11.   Count Eleven, raised against Sergeant Berger, for a violation of the First Amendment to the United States Constitution under "SB-217." [*Id.* at ¶¶ 222–234].

12.   Count Twelve, raised against Sergeant Berger for assault under state law. [*Id.* at ¶¶ 235–238].

13.   Count Thirteen, raised against Sergeant Berger for battery under state law. [*Id.* at ¶¶ 239–243].

On November 24, 2021, Allied Universal, as well as Defendants Trimble and Chaplinskiy, filed an answer to the Amended Complaint and are not part of this instant Motion. [Doc. 25].

## LEGAL STANDARD

### I.   Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring); *see also Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (explaining courts have an independent obligation to ensure subject matter jurisdiction exists). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United State*s, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.      Conversion of a Rule 12 Motion to a Motion for Summary Judgment

In his Response, Mr. Loma argues that—because City Defendants have submitted three exhibits along with their Motion to Dismiss—that the Court must either convert the pending Motion into a motion for summary judgment or ignore those materials.  [Doc. 38 at 4–5].  The exhibits that Mr. Loma references consist of (1) the email from Ms. Drazen Smith that Plaintiff claims is evidence that the state is seeking to suppress his free speech rights, [Doc. 28-1], (2) the search warrant and affidavit in support of the search warrant that Plaintiff claims have also been

used to violate his constitutional rights, [Doc. 28-2], and (3) a declaration by Brett Malkowich ("Mr. Malkowich"), a Claims Adjuster employed by the City and County of Denver who avers that Mr. Loma did not file a notice of claim in reference to his alleged assault, [Doc. 28-3].

Rule 12(d) provides for conversion of a motion for failure to state a claim upon which relief into a motion for summary judgment whenever matters outside the pleading are presented to and accepted by the court. Fed. R. Civ. P. 12(d); *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1159 (10th Cir. 1999); Charles Alan Wright et al., 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.). Of course, courts have broad discretion in deciding whether to consider materials outside the pleadings and may convert a Rule 12 motion into a motion for summary judgment where such conversion is justified. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). However—and short of conversion—"if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* at 1385.

## ANALYSIS

### I. Framework and Record Before the Court

The Court is mindful of its constraints at the motion to dismiss stage and considers each document appended to the City Defendants' Motion in turn. First, the Court finds that the email from Ms. Drazen Smith (the "Drazen Smith Email") is clearly referred to—and central to—every claim raised against Ms. Drazen Smith, as well as many raised against Denver. *See* [Doc. 28-1].

Plaintiff believes that the Drazen Smith Email evidences an official policy of violating his rights guaranteed by the First Amendment to the United States Constitution, [Doc. 6 at ¶¶ 107, 109–14, 116–17]. He squarely alleges that "[t]he email from ACA Drazen Smith acknowledges that Mr. Loma, and others, are excursing [sic] their right to Free Speech and that the City Attorney's Office has had difficulty securing convictions against Mr. Loma, and other individuals the business do not like speaking freely in public at the 16th Street Mall," [*id.* at ¶ 109], and that "[i]t is clear, based on ACA Drazen Smith's email to business partners and the continued targeting of Mr. Loma for arrest in order to secure Area Restrictions against him, the City and County of Denver has a policy to violate and chill Mr. Loma's Free Speech Rights," [*id.* at ¶ 117]. And while the email is most extensively discussed in Mr. Loma's Second Claim for Relief, Ms. Drazen Smith is still named as a defendant in Counts Three and Four. [*Id.* at 17, 20]. The contents of the Drazen Smith Email—and whether it can form the basis of a plausible claim for relief—are central to those claims raised against Ms. Drazen Smith. As such, the Court considers the Drazen Smith Email without converting the instant Motion into one for summary judgment.

The same holds true for the Affidavit. Mr. Loma gestures at its alleged overbreadth in recounting the factual predicates of his lawsuit, *see* [*id.* at ¶¶ 55–58], and it serves as the basis of his claim against Detective Rocco-McKeel for the violation of his rights against the unconstitutional seizure of property, [*id.* at ¶ 171 ("The Search Warrant Affidavit seeks a general, exploratory examination into almost everything held on Mr. Loma's phone without any particularity to a specific incident and/or specific time, location, victim, or another person who

may have committed any crime."), ¶ 203 (same)].   Given the assertion that the Affidavit is unconstitutionally overbroad, it follows that the Affidavit is central to the claims.[6]

Finally, City Defendants have attached a declaration by Mr. Malkowich, a Claims Adjuster employed by the City and County of Denver who states that Plaintiff did not file a notice of claim related to "an incident that took place on November 17, 2020 involving Denver Police Department Sergeant Jeffrey Berger." [Doc. 28-3].   The City Defendants seek to demonstrate that Mr. Loma did not provide notice of his assault and battery claims against Sergeant Berger, as required by Colorado law.   [Doc. 28 at 33].   When faced with a challenge upon which subject matter jurisdiction is based, "a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   It follows that a "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*   "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion" for summary judgment. *Id.*   It follows that, as here—where a declaration is offered to challenge this

---

[6] It is unclear whether or to what extent Plaintiff takes issue with the Court reviewing the warrant in conjunction with the instant Motion to Dismiss.   Mr. Loma argues:

> Here, while the email from Ms. Drazen Smith is central to the pleading, the City Defendant[s] also attached the entire warrant for Mr. Loma's phone from a criminal case. *While the warrant was part of a claim against Detective Rocco-McKeel, it not central to the retaliation claim* that is the underl[lying] basis for the claims against Detective Rocco-McKeel.   Thus, this Court has discretion to consider them. Based on the City Defendant[s'] motion to dismiss, it appears that the City is relying on the warrant to oppose Plaintiff's claim . . . .   If the motion to dismiss is not converted to a motion for summary judgment, the Court should not consider the outside materials brought in by the City as the content of the warrant is not central to the to claim of First Amendment retaliation . . . .

[Doc. 38 at 5 (emphasis added)].   In short, Plaintiff seems to suggest that the Court "has discretion to consider" the warrant and admits that it is "part of a claim against Detective Rocco-McKeel." [*Id.*].   Mr. Loma does not reference any text from the warrant in his Amended Complaint but rather singles out the Affidavit as the basis of his claims. Thus, this Court need, and does, not consider it.

Court's subject matter jurisdiction—it may be considered at the motion to dismiss stage.  Mr. Malkowich's declaration may therefore be considered at the motion to dismiss stage for the limited purpose of resolving the question of subject matter jurisdiction.

Because this Court finds that it may appropriately consider these extrinsic documents in the context of a Motion to Dismiss, it respectfully declines to convert it to a motion for summary judgment.  *See Humood v. City of Aurora,* No. 12–cv–02185–RM–CBS, 2014 WL 4345410, at *5 (D. Colo. Aug. 28, 2014).  This Court will first consider Defendants' arguments with respect to the CGIA and the CLEIA.  The Court will then proceed to considering the defenses as to the remaining Counts.

## II.    CGIA – Counts Twelve and Thirteen

The City Defendants argue that the Court lacks subject matter jurisdiction over two claims: Count Twelve (for assault) and Count Thirteen (for battery).  [Doc. 6 at ¶¶ 235–243].  Both claims are raised solely against Sergeant Berger.  [*Id.*].  City Defendants argue that the Colorado Governmental Immunity Act ("CGIA") deprives the Court of jurisdiction over both claims, as Plaintiff failed to comply with the statute's notice requirements.  [Doc. 28 at 32–33].

In relevant part, the CGIA immunizes "public employees" from liability in tort actions that "arise[ ] out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing injury was willful and wanton[.]"  Colo. Rev. Stat. § 24-10-118(2)(a).  The CGIA defines a "public employee" as "an officer, employee, servant, or authorized volunteer of the public entity."  Colo. Rev. Stat. § 24-10-103(4).  Sergeant Berger is such a public employee, given his position as an employee of the Denver Police Department.  [Doc. 6 at ¶ 21].  *See Bouchard v. Whetstone*, 772 F. Supp. 2d 1352, 1360 (D. Colo. 2011) (noting that a police officer is a public employee for the purposes of a CGIA).

The CGIA further provides that a plaintiff *must* file written notice with the public employee "within one hundred eighty-two days after the date of discovery of the injury, regardless of whether the person knew all of the elements of a claim or of a cause of action for such injury." *Id.* at § 24-10-109(1). The notice must contain a "concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act; the name and address of any public employee involved; a concise statement of the nature and extent of the injury suffered; and a statement of the amount of monetary damages requested." *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 652 (Colo. App. 2006) (citing Colo. Rev. Stat. § 24-10-109(2)). This requirement is not onerous. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 298 (Colo. App. 2009) (reasoning that "[t]he plaintiff has the relatively lenient burden of demonstrating that it complied with the notice requirements" and must only show substantial compliance with the content requirements). Still, the notice provision is a jurisdictional prerequisite to suit, and it applies even when federal courts consider Colorado state law tort claims under supplemental jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013–14 (10th Cir. 2003). Battery and assault are such Colorado state law tort claims, *see* Colo. Rev. Stat. § 13–80–103(1), and are thus subject to the CGIA's notice prerequisite.

Here, Mr. Loma bears the burden of establishing subject matter jurisdiction*, Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008), and asserts no allegations that he attempted to comply with the CGIA's notice provision in Counts Twelve or Thirteen (or anywhere else in his Amended Complaint).[7] *See generally* [Doc. 6]. And, for Defendants' part,

---

[7] Nor does Mr. Loma make any mention of attempted compliance with CGIA in his Response. *See generally* [Doc. 38]. Instead, he argues that his claims for assault and battery are "covered under SB-217, Law Enforcement Integrity Act" and that "[i]t cannot be said, with any credibility, that citizen[s] of the State [are] not entitled to the right to be free from excessive force constituting a tort." [*Id.* at 22–23]. Plaintiff is apparently referencing the Enhance Law Enforcement Integrity

they have produced a declaration from a claims adjuster employed by the City and County of Denver who states that no notice of any claim "regarding or related to the subject matter of [this] litigation" has been filed.  [Doc. 28-3 at 2].  "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions." *Aspen Orthopedics & Sports Med., LLC v. Aspen Valley Hospital Dist.*, 353 F.3d 832, 840 (10th Cir. 2003).  "This lack of compliance, then, is a jurisdictional issue." *Id*.  Mr. Loma's failure to plead that he provided notice under CGIA, and the City Defendants' evidence that he did not, leads the Court to conclude that it lacks subject matter jurisdiction over his assault and battery claims contained in Counts Twelve and Thirteen of his Amended Complaint.  The Court therefore **GRANTS** the City Defendants' Motion to Dismiss with respect to Counts Twelve and Thirteen.[8]

---

Act ("ELEIA"), which creates a cause of action for individuals whose rights secured by Article II of the Colorado Constitution (that is, the Colorado Constitution's Bill of Rights) are violated by a peace officer. *See* Colo. Rev. Stat. § 13-21-131.  Mr. Loma's claims for assault and battery are common law torts, not constitutional claims, and he may not use his Response to amend the Amended Complaint. *Plotner v. Hodge*, No. 17–cv–02584–PAB–STV, 2018 WL 2075849, at *4 (D. Colo. April 9, 2018) (quotations and alteration omitted) ("This Court does not consider allegations that are raised for the first time in a response, even by a pro se plaintiff, and [the plaintiff] may not amend his complaint via his Response."); *see also Cox v. Mobilex USA*, No. CIV-16-6-M, 2016 WL 4920185, at *4 (W.D. Okla. Aug. 16, 2016) ("[T]he Court should refuse to consider any new claims that Plaintiff may have attempted to assert in his response to the Motion to Dismiss.").  To the extent Mr. Loma wishes to raise excessive force claims under the Colorado Constitution (which, as discussed *infra*, he may already have attempted to do), he must do so after seeking leave to amend the Amended Complaint.

[8] Defendants make note that "an award of attorney fees is mandatory when a trial court dismisses an action under the [CGIA] for lack of subject matter jurisdiction." *Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo. App. 1996).  The Court does not pass on that issue in the instant Memorandum Opinion and Order, and leaves it to Defendants to raise the issue by appropriate motion. *See* D.C.COLO.LCivR 54.3.

### III.     Colorado Law Enforcement Integrity Act – Counts Eight, Nine, Ten, and Eleven

The City Defendants also argue that Mr. Loma's claims raised "pursuant to SB-217" are subject to dismissal because the state statute does not provide a cause of action for rights secured by the United States Constitution.  [Doc. 28 at 32].  As noted *supra*, Mr. Loma appears to be referencing the Enhance Law Enforcement Integrity Act ("ELEIA"), which created a cause of action for individuals whose rights are secured by Article II of the Colorado Constitution (that is, the Colorado Constitution's Bill of Rights) and are subsequently violated by a peace officer.  *See* Colo. Rev. Stat. § 13-21-131.  These claims encompass Count Eight—raised against Detective Rocco-McKeel—and Counts Nine, Ten, and Eleven, all raised against Sergeant Berger.  [Doc. 6 at ¶¶ 192–234].  As the City Defendants point out, Plaintiff only alleges violations of the United States Constitution in the Amended Complaint.  [*Id.*].  Plaintiff does not respond substantively to these purported shortcomings, and instead cites to Article II of the Colorado Constitution for the proposition that his claims are "covered by" the state constitution's Bill of Rights.  [Doc. 38 at 22].

Whether or not that is the case, the fact remains that Mr. Loma has not alleged a violation of any single provision of the *Colorado Constitution* in his Amended Complaint.  *See* [Doc. 6 at ¶¶ 192–234].   The Amended Complaint raises ELEIA claims under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  *See* [*Id.*].  And ELEIA *only* creates a cause of action against peace officers who deprive individuals of rights "secured by the bill of rights, article II of the state constitution."  Colo. Rev. Stat. § 13-21-131(1).  Once again, the Court notes that Mr. Loma is represented in this matter and is not entitled to a liberal reading of his pleadings.  *Mann*, 477 F.3d at 1148 n.4.  Even under such a liberal reading, the Amended Complaint is clear that Counts Eight through Eleven are not state constitutional claims.  It is not enough to gesture at rights secured by the Colorado Constitution in his Response for Plaintiff to

state a plausible claim for relief pursuant to ELEIA.  As a result, the City Defendants' Motion to Dismiss with respect to Counts Eight, Nine, Ten, and Eleven is **GRANTED**.

## IV.    Counts Two, Three, and Four Against Defendants Bronson, Drazen Smith, and Bordovsky

Counts Two, Three, and Four of the Amended Complaint respectively allege: (1) a violation of Mr. Loma's First Amendment rights through an official policy of issuing Area Restrictions; (2) a violation of Mr. Loma's First Amendment rights through a custom amounting to a widespread practice of issuing Area Restrictions; and (3) First Amendment retaliation based on the Denver Defendants' pattern of arresting and placing Mr. Loma under Area Restrictions for filing the police.  [Doc. 6 at ¶¶ 101–62].  Though not entirely clear, these Counts appear to assert claims against the City under a *Monell* theory, and against Defendants Bronson, Drazen Smith, and Bordovsky in their respective individual capacities.[9]

### A.    Individual Defendants

***Defendant Bronson*.**  The City Defendants argue that City Attorney Bronson should be dismissed from this action because Mr. Loma has not alleged her individual participation in any constitutional harm he has suffered.  [Doc. 28 at 7–8].  It is axiomatic that under § 1983, when a defendant is sued in her individual capacity, the Complaint must allege facts that show she personally participated in the alleged violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997); *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir.1996) ("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not

---

[9] The City Defendants first argue that—because Mr. Loma relies "significantly" on a March 18, 2019 Area Restriction order—Counts Two, Three, and Four should be dismissed as untimely. [Doc. 28 at 5–6].  Mr. Loma counters by arguing that his claims related to the Area Restriction are timely because he could not obtain relief until dismissal of the charges against him that led to the restriction and, alternatively, that the area restrictions were part of a continuous violation of his rights that extend his time to file suit.  [Doc. 38 at 5–7].

sufficient to state a constitutional violation."). Mr. Loma contends that he has sufficiently alleged that Ms. Bronson "ratified" the policy of retaliating against him for the exercise of his First Amendment rights. [Doc. 38 at 8]. In attempting to do so, Plaintiff references Ms. Bronson by name in just one paragraph of his Amended Complaint, [Doc. 6 at ¶ 12 ("Defendant City Attorney Kirstin M. Bronson is or was at all times relevant a citizen of the State of Colorado employed by the City Attorney's Office.")], and individually by title on only one other occasion, [*id.* at ¶ 106 ("In the present matter, the City Attorney is the final decision maker as it relates to the prosecution of municipal offenses in Denver Municipal Court.")].

Respectfully, the Court concludes that this is insufficient to state a claim against Ms. Bronson in her individual capacity. Though Mr. Loma argues that Ms. Bronson is the final decisionmaker in the City Attorney's Office and that her staff routinely seek area restrictions for "cases involving individuals [sic] arrest," that does not bear on her *individual* liability. *See* [Doc. 38 at 8]. Instead, Plaintiff must allege either (1) that Ms. Bronson was personally involved in unconstitutional conduct or (2) that she promulgated an unconstitutional policy. *E.g. Brown v. Montoya*, 662 F.3d 1152, 1164–65 (10th Cir. 2011) (affirming grant of motion to dismiss where complaint failed to allege that New Mexico secretary of corrections personally participated in unconstitutional treatment or promulgated a policy that violated a clearly established constitutional right). The Amended Complaint alleges neither, describing only Ms. Bronson's job title and her role as "final decision maker." [Doc. 6 at ¶¶ 12, 106]. And while Mr. Loma later argues that Ms. Bronson has "ratified" her staff's unconstitutional practices, he only raises that point in his Response—the incorrect vehicle for doing so – and does so without offering any factual averments

as opposed to a legal conclusion.[10]  *Plotner v. Hodge*, No. 17–cv–02584–PAB–STV, 2018 WL 2075849, at *4 (D. Colo. April 9, 2018).  As such, the City Defendants' Motion is **GRANTED** with respect to claims raised against Ms. Bronson.

    ***Defendant Drazen Smith.***  As far as the Court can discern, Ms. Drazen Smith's only alleged involvement in Mr. Loma's constitutional claims is the email she authored on March 4, 2019 referencing area restrictions.  *See* [Doc. 6 at ¶¶ 109, 116].

    "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted). If from the complaint, "the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law" suitable for resolution at the motion to dismiss stage. *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995).  State law determines the applicable statute of limitations for a § 1983 action. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions").  The applicable statute of limitations for a § 1983 claim in Colorado is two years. *See Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993) (citing Colo. Rev. Stat. § 13–80–102(1)(i) (residual statute of limitations for personal injury actions)).  But while state law governs limitations and tolling issues, federal law determines the accrual of § 1983 claims. *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir.

---

[10] Mr. Loma's reference to "an email sent by the City Attorney" includes no citation to the Amended Complaint, and this Court's review of the Amended Complaint revealed no mention of any email sent by the City Attorney, let alone any factual averments regarding its substantive content. *See generally* [Doc. 6].

1993).  A civil rights action accrues when "facts that would support a cause of action are or should be apparent."  *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988); *see also Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

Even assuming that the factual allegations against Defendant Drazen Smith are sufficient, they are time-barred, as Mr. Loma's cause of action against Defendant Drazen Smith accrued no later than March 18, 2019 when it was imposed.  Mr. Loma filed his original Complaint on August 13, 2021.  [Doc. 1].  That is over two years after March 4, 2019.  It is well-settled that § 1983 claims are not tolled during the pendency of criminal proceedings (even where a state actor continues to participate in those proceedings).  *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (reasoning that § 1983 First Amendment retaliatory prosecution claims accrued on date officer filed criminal complaint against plaintiff, not at the conclusion of criminal proceedings). thus barring his claims against Ms. Drazen Smith under § 1983.  *See Blake*, 997 F.2d at 750–51. Mr. Loma does not allege any continuing or repeated involvement by Ms. Drazen Smith following March 4, 2019, which falls outside the bounds of the two-year statute of limitations period.  Nor does Mr. Loma allege that he only realized at a later time that he was subject to an official policy of imposing area restrictions due to the exercise of his First Amendment rights.

The Court therefore **GRANTS** the City Defendants' Motion to Dismiss with respect to Ms. Drazen Smith. [11]

---

[11] The Court further notes that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," render that prosecutor immune for civil liability. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  While this Court need not decide whether Ms. Drazen Smith's email alone implicates prosecutorial immunity, it recognizes that she is not civilly liable for acts undertaken by a prosecutor in the course of her role in preparing for the initiation of judicial proceedings like those directed at Mr. Loma in this matter in state court.

*Assistant Director Marley Bordovsky.*   Aside from identifying Ms. Bordovsky and her employer, [Doc. 6 at ¶ 14], Mr. Loma makes allegations with respect to Ms. Bordovsky in just two paragraphs, [id. at ¶¶ 119 ("The City Attorney listed on the Area Restriction is Marely [sic] Bordovsky.   Ms. Bordovsky is also the City Attorney listed on Mr. Loma's prior Area Restriction."), 122 ("City Attorney Marley Brodovsky [sic] has reviewed these cases and sought to restrict Mr. Loma from downtown Denver.")].   That Area Restriction was issued on March 18, 2019.   [Doc. 6 at ¶ 114].   Mr. Loma responds by contending that she was responsible for seeking more than one Area Restriction, and raises a set of new allegations stemming from her involvement in an unrelated criminal case.   [Doc. 38 at 9–10].

As an initial matter, the Court's attention is constrained to allegations contained in the Amended Complaint, not those raised for the first time in Plaintiff's Response.   *Plotner*, 2018 WL 2075849, at *4.   The only allegations as to Ms. Bordovsky fall outside the statute of limitations period, and there are no factual allegations in the Amended Complaint that Ms. Bordovsky engaged in repeated acts to constitute a continuing violation.   *See generally* [Doc. 6].   The Court therefore **GRANTS** the City Defendants' Motion to Dismiss with respect to Defendant Bordovsky.

## B.      The City

As an initial matter, taking all factual allegations as true and without determining whether Mr. Loma can ultimately establish that this conduct amounts to a continuing violation, this Court respectfully declines to dismiss Counts Two, Three, and Four against the City on statute of limitations grounds because it cannot clearly discern from the Amended Complaint that the right to sue has been extinguished.   *See e.g., Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 467 (10th Cir. 2009) (where the complaint did not contain dates clearly setting forth when the injury was discovered, the complaint did not make clear that the right to sue had been

extinguished and statute of limitations did not apply).  Thus, it turns to assessing whether Mr. Loma has stated cognizable claims for municipal liability.

It is axiomatic that government entities can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[12]  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  In order to state a claim for the liability of local government entities under § 1983, a plaintiff must allege "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  A plaintiff may make out a *Monell* claim by showing the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation, alteration marks, and citations omitted).  Because Mr. Loma alleges the existence of both an unconstitutional official policy (Count Two) and unconstitutional customs (Counts Three and Four), the Court addresses each separately.

---

[12] Such claims are commonly referred to as "*Monell*" claims.  *See Pastore v. Bd. of Cnty. Commr's for Cnty. of Catron*, 572 F. Supp. 3d 1100, 1110 (D.N.M. 2021).

A.     **Official Policy – Count Two**

In Count Two of the Amended Complaint, Mr. Loma contends—at bottom—that Denver maintains an official policy of issuing area restrictions to individuals who are arrested in the course of exercising their rights to free speech under the First Amendment to the United States Constitution.  *See* [Doc. 6 at ¶ 129].  The City Defendants argue that Plaintiff has failed to sufficiently allege the existence of such a policy, first because he does not claim that challenged conduct was taken pursuant to a policy adopted by an official with policymaking authority and, second, because Ms. Drazen Smith's March 4, 2019 email does not actually evidence the existence of an unconstitutional policy.

The Court respectfully agrees with the City Defendants on both counts.  Even assuming Ms. Drazen Smith's email—which forms the basis for Mr. Loma's municipal liability claims, *see* [Doc. 38 at 18] reflects a policy of seeking Area Restrictions to violate the free speech rights of individuals, Plaintiff does not allege that Ms. Drazen Smith possesses final policymaking authority over the City Attorney's Office and "only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotation marks omitted).  To the contrary, Mr. Loma alleges that *Ms. Bronson* possesses that authority.  [Doc. 6 at ¶ 106].

The Amended Complaint contains no factual allegations that Ms. Bronson authored the email in question.  Plaintiff references Ms. Bronson's "ratification" of an official policy in his Response.   [Doc. 38 at 8].   While a municipality may be held liable for an employee's unconstitutional conduct under § 1983 if it ratifies that employee's unconstitutional conduct, *Praprotnik*, 485 U.S. at 127; *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009), the Amended Complaint does not contain any factual allegation to support a legal conclusion of ratification.  For

instance, there is no allegation that any individual with policymaking authority, Defendant Bronson or otherwise, *affirmatively approved* Ms. Drazen Smith's email. Indeed, there is no allegation that Defendant Bronson was even aware of the email, and her name does not appear on the fact of the email at issue. [Doc. 28-1]. Furthermore, "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification." *Boudette v. Buffington*, No. 18-cv-02420-CMA-MEH, 2020 WL 6119521, at *11 (D. Colo. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 4593220 (D. Colo. Aug. 11, 2020).

Second, Mr. Loma has not sufficiently alleged facts upon which the Court could determine that an official (and unconstitutional) policy directing City Attorney's Office officials to seek Area Restrictions existed. Mr. Loma is required to allege must allege facts that allow a factfinder to conclude that *Denver* "intended the unconstitutional conduct to happen or was deliberately indifferent to the possibility that unconstitutional conduct[ ] would result from the policies." *Mullins v. City of Colo. Springs*, 575 F. Supp. 3d 1360, 1377 (D. Colo. 2021) (citing *Jenkins*, 81 F.3d at 994). Standing alone, Ms. Drazen Smith's email does not sufficiently reflect the existence of such intent on the part of city officials with policymaking authority, and Mr. Loma does not allege additional facts to permit a factfinder to draw such a conclusion. "[A]t the pleading stage, the existence of a *Monell* policy is a conclusion to be built up to, rather than a fact to be baldly asserted." *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (citation and internal quotations omitted). Mr. Loma's bare allegations of the existence of an official policy in Count Three do not build to that conclusion, and rest on the type of assertions that are insufficient to "nudge[ ]" the claim "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247. It follows that the City Defendants' Motion to Dismiss with respect to Denver in Count Two is **GRANTED.**

24

### B.      Custom – Counts Three and Four

In Counts Three and Four, Mr. Loma alleges two unconstitutional customs, rather than official policies, exist.   "[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."   *Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted); *see also Praprotnik*, 485 U.S. at 127 (establishing an informal policy or custom requires the plaintiff to show that the misconduct was widespread—that is, that it involved a series of decisions).   In Count Three, Plaintiff alleges the existence of a custom of using Area Restrictions to chill the First Amendment rights of individuals who are arrested or issued a summons while peacefully protesting.  *See* [Doc. 6 at ¶¶ 128–45].   In Count Four, Mr. Loma alleges the existence of a custom of retaliating against those individuals who choose to exercise their First Amendment right to record the actions of police officers.  *See* [*id.* at ¶¶ 146–62].    Nevertheless, in reviewing the Amended Complaint, this Court respectfully concludes that there are insufficient factual averments to permit Counts Three and Four to survive this instant Motion to Dismiss.

***Count Three.***   In Count Three, Mr. Loma points to many of the same underlying facts as alleged in Count Two; the principal difference seems to be that he is alleging the existence of a custom of unconstitutional behavior rather than an official policy.  Mr. Loma defines that custom as one wherein Denver issues "Area Restrictions for those individuals who are arrested or issued a Summons while exercising their Free Speech Rights in order to keep them from the downtown Denver area."   [Doc. 6 at ¶ 129].   "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Hernandez v.*

*City & Cnty. of Denver*, No. 21-CV-01538-PAB-MEH, 2022 WL 3597452, at *5 (D. Colo. Aug. 23, 2022) (*quoting Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quotations omitted)).

But, as with his claims predicated upon the existence of an official policy of unconstitutional conduct, Mr. Loma fails to support this bald assertion with sufficient factual allegations.  Aside from his own Area Restrictions—which, as discussed above, are not sufficient evidence of an unconstitutional policy—Mr. Loma only gestures at other cases that "Plaintiff's attorney's law firm has defended."  [*Id.* at ¶ 137].  The Amended Complaint does not articulate facts that allow a factfinder to conclude that an unconstitutional policy exists; for instance, there are no factual assertions that identify these other cases; the circumstances behind them; or any overlapping decision-makers.  Absent supporting factual allegations, Count Three—as raised against Denver—is subject to dismissal.

***Count Four.***  In Count Four, Mr. Loma alleges that the City and non-party the Denver Police Department have joined together to retaliate against him for the exercise of his First Amendment rights by arresting him and implementing area restrictions against him to prevent him from filming the police and exposing failures within the City when it comes to policing.  [Doc. 6 at ¶¶ 146–62].

In either case, the only allegations supporting his claim are (1) the Drazen Smith email [Doc. 28-1], (2) a pattern of arrests and other interactions with Denver police officers, and (3) the breaking of his phone in November 2020.  First, the Drazen Smith email is not evidence of a custom or practice so "widespread as to have the force of law."  *See Bryan Cnty.*, 520 U.S. at 404 (internal quotation marks omitted).  And even on its own terms, the email does not outline an unconstitutional policy; if anything, it discusses how difficult the City Attorney's office has found

the process of obtaining area restrictions in a significant number of cases to be.  *See* [Doc. 28-1].

Second, the fact that Plaintiff has been arrested repeatedly is not sufficient to allege a widespread

custom on Denver's part to restrict rights guaranteed by the First Amendment.  Though Plaintiff

alleges that "[i]t is clear that the city of Denver and the Denver Police do not appreciate" his

advocacy, [Doc. 6 at ¶ 156], it is far from evident on the face of the Amended Complaint that his

arrests related at all to his First Amendment rights.  Nor does the fact that he has raised "wrongful

arrest and excessive force claims since 2018" change this analysis, [*id.* at ¶ 161], as Plaintiff's own

civil litigation does not bear on the existence of an unconstitutional custom that is actionable under

§ 1983.  Third and finally, Plaintiff points to the November 2020 incident in which his phone was

allegedly shattered by Sergeant Berger.  Taking that allegation as true, it still falls short of plausibly

alleging the existence of a widespread custom of retaliating against individuals—Plaintiff

included—for the exercise of their rights guaranteed by the First Amendment.[13]

In sum: the Court finds that these three allegations are insufficient to plausibly allege a

widespread practice of constitutional violations, much less a practice "so permanent and well

settled as to constitute a custom or usage with the force of law."  *Bryan Cnty.*, 520 U.S. at 404; *see*

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (finding that one prior

similar incident fell "far short" of plausibly alleging the existence of an informal policy).  It follows

that the City Defendants' Motion to Dismiss Counts Three and Four as raised against Denver is

**GRANTED**.

---

[13] Of course, the Court discusses claims raised against Sergeant Berger in his individual capacity
*infra* in more detail.

## VI.  Qualified Immunity for Law Enforcement Defendants – Counts One, Four, Five, Six, and Seven

The City Defendants also move to dismiss claims raised against the law enforcement Defendants that Mr. Loma has named in the Amended Complaint—Corporal Smith (Counts One and Four), Detective Rocco-McKeel (Counts Four, Five, and Eight), Sergeant Burton (Count Four), and Sergeant Berger (Counts Four, Six, Seven, Nine, Ten, and Eleven)—on qualified immunity grounds.  For the reasons discussed herein, *supra* §§ I–IV, only Counts One, Five, Six, and Seven remain at issue.  Mr. Loma claims that qualified immunity does not shield any of the aforementioned law enforcement officials from liability.

The doctrine of qualified immunity protects public officials whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions from litigation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Accordingly "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is an immunity *from suit*, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial.  *Id.* at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability.").

When a defendant asserts qualified immunity, the *plaintiff* has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments" and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877–78 (10th

Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part

burden; otherwise, the defendants are entitled to qualified immunity.'") (quoting *Medina v. Cram*,

252 F.3d 1124, 1128 (10th Cir. 2001)).  An official's conduct violates clearly established law

when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear"

that every "reasonable official would have understood that what he is doing violates that right."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  To satisfy the clearly established prong of the test,

the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point,

or the clearly established weight of authority from other courts must have found the law to be as

the plaintiff maintains."  *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Courts employ a two-step process for resolving qualified immunity questions: "First, a

court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a

constitutional right . . . . Second, if the plaintiff has satisfied this first step, the court must decide

whether the right at issue was clearly established at the time of the defendant's alleged

misconduct."  *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal

citations and quotation marks removed)).  However, the Supreme Court has afforded courts the

discretion to decide "which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand."  *Id*. at 236; *see also*

*Christensen v. Park City Mun. Corp*., 554 F.3d 1271, 1277 (10th Cir. 2009).

The Tenth Circuit has repeatedly emphasized that it is a plaintiff's obligation to cite to

cases that satisfy the burden of demonstrating the asserted law is clearly established.  *Thomas v.*

*Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what

he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903

(10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated

clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (finding that, although the plaintiff "might well have been able to satisfy us that Defendants' actions violated his clearly established rights," the plaintiff "through his counsel, [has simply] failed to carry the burden assigned to him by law").  For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must support Mr. Loma's position.  *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019), *cert. denied sub nom.*, *I.B. v. Woodard*, 139 S. Ct. 2616 (2019).

"The question is not whether there is a prior case with precisely the same facts, but 'whether the law put officials on fair notice that the described conduct was unconstitutional.'"  *Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) (citation omitted). The Tenth Circuit has "cautioned that defining a right too narrowly risks making recovery against a public official virtually impossible because only 'those rare cases in which a precedential case existed which was 'on all fours' factually with the case at bar' would abrogate qualified immunity."  *Id.* (citation omitted).  On the other hand, the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A.    **Corporal Smith**

***Count One***.  Mr. Loma first names Corporal Smith as a defendant in Count One of the Amended Complaint, in which he raises a § 1983 claim under the Fourth Amendment for malicious prosecution.[14]  To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  The "favorable termination" element only requires a plaintiff to show that his criminal prosecution "ended without a conviction."  *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).

The Supreme Court has held that, because malicious prosecution claims are Fourth Amendment claims, a plaintiff must prove that he was also seized in order to prevail.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Significantly, Mr. Loma does not allege he was arrested nor incarcerated by Corporal Smith; rather, he was issued a criminal summons.  [Doc. 6 at ¶ 39].  The Tenth Circuit has held that "[w]hatever may be the logic to this argument [that a criminal summons amounted to seizure because it had a legal effect on plaintiff's freedom of movement], [] precedent dictates otherwise."  *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009) (internal citation omitted).  Instead, the Tenth Circuit has "conclude[d] that the

---

[14] Section 1983 "does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere."  *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995).  Plaintiff does not cite a specific constitutional provision that he believes has been violated in Count One.  Nevertheless, the Court looks to the entire Complaint and applicable law to determine the specific constitutional violation alleged. While not entirely clear from the Amended Complaint, the Court concludes Count One invokes the Fourth Amendment.  *See Margheim v. Buljko,* 855 F.3d 1077, 1085 (10th Cir. 2017) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).  Indeed, in his Response, Mr. Loma discusses the Fourth Amendment.  [Doc. 38 at 14].

issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure." *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) (comparing its conclusion to other Courts of Appeals). *See Lewis v. Rock*, 48 F. App'x 291, 294 (10th Cir. 2002) ("Because [the plaintiffs] have not shown they sustained any other deprivations of liberty in connection with their receipt of the summonses, they have failed to show they were seized in violation of the Fourth Amendment.").

Plaintiff implicitly acknowledges in his Response that the issuance of a criminal summons does not amount to a seizure under the Fourth Amendment. [Doc. 38 at 14]. Mr. Loma then pivots, and contends that "Corporal Smith did in fact seize Mr. Loma *prior to giving Mr. Loma a summons.*" [*Id.* (emphasis added)]. Specifically, Mr. Loma argues that Corporal Smith "did his investigation on the scene and restricted Mr. Loma's freedom of movement when he instructed him not to leave." [*Id.*]. As an initial matter, Mr. Loma's Amended Complaint makes no mention of such actions, and thus, they are not properly before this Court. *See, e.g.*, *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991). Furthermore, even if the Court were to consider this additional allegation, it would be insufficient to state a cognizable "seizure" for the purposes of a malicious prosecution claim. The Court accordingly **GRANTS** that portion of the City Defendants' Motion.

***Count Four.*** Corporal Smith is also named in Count Four, and Mr. Loma alleges that Corporate Smith retaliated against him for exercising his First Amendment right to free speech. [Doc. 6 at 20]. While "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out," *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal citations omitted), to state a cognizable claim of retaliation for the exercise of First Amendment rights, a plaintiff must articulate facts that allow

the factfinder to conclude: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007).

Notably, Plaintiff does not specifically reference Corporal Smith within the body of Count Four. [*Id.* at ¶¶ 146–162]. Nor does Mr. Loma identify any allegations with respect to Corporal Smith's alleged retaliation in his Response to the Motion to Dismiss. [Doc. 38 at 13-14, 18-21]. This Court is mindful of its duty to take Plaintiff's allegations as true, but even at the Motion to Dismiss phase, a plaintiff must identify facts alleged in the operative pleading, taken as true, that allow a factfinder to find in his favor. *See Backus v. Univ. of Colo.*, No. 15–cv–01340–REB–NYW, 2015 WL 10490565, at *4 (D. Colo. Dec. 14, 2015). In addition, Plaintiff has been represented by able counsel since the inception of this action. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). The Court accordingly concludes that Plaintiff has failed to state a claim against Corporal Smith in Counts One and Four that could overcome a defense of qualified immunity, and **GRANTS** the Motion to Dismiss with respect to both counts as raised against Corporal Smith.

### B.    Detective Rocco-McKeel

*Count Four.* Count Four of the Amended Complaint names Detective Rocco-McKeel, and is premised on the allegation that Mr. Loma has experienced retaliation for the exercise of his

First Amendment rights.  Though Plaintiff does not allege facts with respect to Detective Rocco-McKeel within the body of Count Four, the Court construes Count Four to allege that Detective Rocco-McKeel obtained a search warrant for Mr. Loma's phone in retaliation for his exercise of his First Amendment rights.  [Doc. 6 at ¶ 146 ("incorporate[ing] by reference herein all preceding allegations set forth"); Doc. 38 at 15-16].  Though not entirely clear, it also appears that Mr. Loma contends that the failure to return his phone once he was released also amounts to retaliation in violation of his First Amendment rights.  [Doc. 38 at 15-16].

The Amended Complaint contains no factual allegations that Detective Rocco-McKeel sought a search warrant *in retaliation* for Mr. Loma's exercise of his First Amendment rights.  Mr. Loma's Response comes closer to doing so, but focuses on the existence of a right to film police officers performing their duties.  [Doc. 38 at 15–16].  The Court declines to read such allegations into Mr. Loma's Amended Complaint.  Without such allegations, the Court cannot conclude that Detective Rocco-McKeel has violated Mr. Loma's clearly-established First Amendment right.  It follows that the Court **GRANTS** the Motion with respect to Count Four of the Amended Complaint as raised against Detective Rocco-McKeel.

***Count Five.***  Count Five is also raised against Detective Rocco-McKeel, albeit this time under the Fourth Amendment to the United States Constitution.  Mr. Loma challenges the breadth of the Affidavit supplied by Detective Rocco-McKeel, arguing that it sought a "general, exploratory examination into almost everything held on" his phone.  [Doc. 6 at ¶ 171].  In addition, in Response to the Motion to Dismiss, Mr. Loma argues that using his phone after it was seized for one case with a warrant and then transferring it to another jurisdiction when Mr. Loma was entitled to his property via a court order constitutes an unlawful seizure under the Fourth Amendment.  [Doc. 38 at 16].  Again, this Court will not consider the argument raised in the

Response that is not reflected in the Amended Complaint. *Plotner*, 2018 WL 2075849, at *4 (citing *Luck v. Smith*, No. 17-cv-00183-WJM-NYW, 2017 WL 3970512, at *4 (D. Colo. Sept. 8, 2017)).

Mr. Loma's allegations against Detective Rocco-McKeel in the Amended Complaint appear premised upon his execution of an *affidavit* issued in support of a search warrant—not the warrant itself. And it is well established that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents" or in "the papers presented to the judicial officer asked to issue the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (quoting *United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir.1999)); *see also United States v. Hurwitz*, 459 F.3d 463, 470 (4th Cir. 2006) ("Significantly, the particularity requirement applies to the warrant, as opposed to the application *or the supporting affidavit* submitted by the applicant." (emphasis added)). "And for good reason: the description of what is sought to be seized is written in, or incorporated into, the warrant to ensure that the executing officer(s) stay within the specific bounds set *by the issuer*." *United States v. Suggs*, 998 F.3d 1125, 1136 (10th Cir. 2021) (emphasis added). "Otherwise, we might indeed elevate the author of the unincorporated affidavit over the warrant's issuer, thereby transforming the independent magistrate into little more than a rubber stamp." *Id.* Plaintiff does not challenge the particularity of the warrant itself in the Amended Complaint; rather, he challenges Detective Rocco-McKeel's *Affidavit* supporting the warrant. *See, e.g.*, [Doc. 6 at ¶¶ 55–57 (specifically referencing the "Search Warrant Affidavit")]. Whether or not the Affidavit itself is overbroad is thus of no moment to this Court, which is tasked with considering the breadth of the *warrant*.

Mr. Loma has thus failed to allege that Detective Rocco-McKeel has violated a clearly established right guaranteed by the Fourth Amendment. As such, the Court **GRANTS** the Motion with respect to Count Five as raised against Detective Rocco-McKeel.

### C.     Sergeant Burton

Sergeant Burton is only named in Count Four of Plaintiff's Amended Complaint. Mr. Loma avers that in response to being told by arresting officers that Mr. Loma wished to have his attorney present during questioning, Sergeant Burton responded "Never mind, we will just take his phone." [Doc. 6 at ¶¶ 165–67]. As the City Defendants note, this is the *only* factual allegation raised against Sergeant Burton. [Doc. 28 at 24].

This Court finds it dispositive that Mr. Loma has failed to allege facts sufficient to demonstrate that Defendant Burton's statement caused him to suffer an injury. As the City Defendants point out, there is no allegation that Defendant Burton was the individual who took Mr. Loma's phone. *See generally* [Doc. 28 at 24; Doc. 6]. In addition, there is no allegation that the arresting officers to whom Defendant Burton was speaking took Mr. Loma's phone upon direction from Defendant Burton. *See generally* [Doc. 6]. Mr. Loma fails to specifically address Defendant Burton at all in his Response. *See generally* [Doc. 38]. Notably, courts routinely deem an issue "waived" when a party fails to respond to a movant's substantive argument. *See, e.g., Rock Roofing, LLC v. Travelers Cas. & Sur. Co.*, 413 F. Supp. 3d 1122, 1128 (D.N.M. 2019) (plaintiff's failure to respond to defendant's argument waived the issue); *Zane v. Kramer*, 195 F. Supp. 3d 1243, 1256 (W.D. Okla. 2016); *Palmer v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999). So too here.

As such, the City Defendants' Motion is **GRANTED** with respect to Sergeant Burton.

### D.     Sergeant Berger

Finally, the City Defendants argue that Sergeant Berger is entitled to qualified immunity for the allegations contained in Counts Six and Seven of Mr. Loma's Amended Complaint.[15] Count Four is raised under the First Amendment, and appears to allege that Sergeant Berger shattered his phone in retaliation for filming the police.  Count Six is couched as a claim for the unconstitutional seizure of property under the Fourteenth Amendment, while Count Seven is raised as an excessive force claim under the Fourteenth Amendment.  For the reasons set forth below, the Court finds that dismissal is improper with respect to each count.

*Count Four.*   Count Four is raised against Sergeant Berger for alleged retaliation in response to his exercise of his right to film police officers in the course of their duties, in violation of the First Amendment.  To state a First Amendment retaliation claim, a plaintiff must allege facts showing (1) that he was engaged in constitutionally protected activity; (2) that Sergeant Berger's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Sergeant Berger's adverse action was substantially motivated as a response to Mr. Loma's exercise of constitutionally protected conduct. *See Van Deelen*, 497 F.3d at 1155–56.   The City Defendants argue that Mr. Loma failed to plausibly allege that Defendant Berger struck Mr. Loma's recording equipment out of his hand in response to his recording activities, and "at best, the factual allegations establish that Sgt. Berger made contact with Mr. Loma's recording equipment in an attempt to get Mr. Loma to move back when he got closer to Sgt. Berger to read the name badge of his lapel – not because Sgt. Berger was attempting to stop Mr. Loma's recording efforts. [Doc. 28 at 25-26].

---

[15] As noted *supra*, Counts Nine, Ten, and Eleven—each raised against Sergeant Berger—warrant dismissal on other grounds.

To the extent that the City Defendants invite the Court to weigh the merits of Mr. Loma's claim, or challenge the credibility of his assertions, this Court respectfully declines to do so. *See Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006) ("Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint."). Instead, this Court's focus must be upon whether or not Mr. Loma has adequately pleaded facts, taken as true, that state a cognizable violation of the First Amendment based on retaliation.

It is well settled that "there is a First Amendment right to film the police performing their duties in public." *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). The Court concludes that Plaintiff has adequately alleged that Sergeant Berger's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to" film the officers' actions in clearing the unhoused individuals from a public space. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted). Plaintiff points to the fact that Sergeant Berger approached him and did not identify himself, and then proceeded to strike the phone from his hand. [Doc. 6 at ¶¶ 76–77]. His phone fell to the ground and shattered, rendering him unable to film the remainder of the displacement. [*Id.* at ¶ 79]. As a result, Mr. Loma alleges that he suffered a loss of income and property. [*Id.* at ¶ 80]. The Tenth Circuit's "standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quotations omitted). Physical and verbal intimidation can both chill speech, s*ee Van Deelen*, 497 F.3d at 1157–58, and Mr. Loma's allegations—taken as true—suggest that Sergeant Berger struck his arm or his phone, thereby preventing him from filming the police activity at issue.

With respect to the third element of a First Amendment retaliation claim—that is, the requirement that Sergeant Berger's actions were "substantially motivated as a response to the

plaintiff's exercise of constitutionally protected conduct."  The Court is mindful that it proceeds at the motion to dismiss stage.  Here, Mr. Loma has alleged that Sergeant Berger approached him, refused to identify himself, and struck his phone and gimbal from his hand when Plaintiff attempted to film his badge.  [Doc. 6 at ¶¶ 76–77].  His phone shattered, and he was unable to film the remainder of the displacement.  [*Id.* at ¶ 79].  At this juncture, it is reasonable to infer that Mr. Loma's filming "substantially motivated" that action.  The City Defendants' Motion is **DENIED** with respect to that claim.

***Count Six.***  In Count Six, Mr. Loma claims that Sergeant Berger deprived him of his property in violation of the Fourteenth Amendment to the United States Constitution when he allegedly struck his phone from his hand and shattered it.  The Fourteenth Amendment to the United States Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV.  Protected property interests typically take the form of "actual ownership of real estate, chattels, or money."  *Bd. of Regents v. Roth*, 408 U.S. 564, 571–72 (1972).  As with any § 1983 claim, a claim for the violation of an individual's due process rights must "allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  More particularly, a Plaintiff must show that (1) "the petitioners acted under color of state law," (2) the property in question "falls within the definition of property," and (3) "the alleged loss . . . amounted to a deprivation."  *Parratt v. Taylor*, 451 U.S. 527, 536–537 (1981).  The City Defendants concede that Plaintiff has borne his burden with respect to the second of these elements; they do not, however, agree that he has done so with respect to the first or third elements.  *See* [Doc. 28 at 19].

First, the Court is unpersuaded that Mr. Loma's allegations do not paint Sergeant Berger as acting under color of state law. While the City Defendants claim that "[a]t the end of the day, any person can strike at another person," [Doc. 28 at 20], that does not mean that Sergeant Berger was not acting under color of state law when *he* struck Plaintiff's phone from his hand. Indeed, while the City Defendants make much of the fact that "Sergeant Berger was [not] attempting to question Mr. Loma, arrest him, remove him from the area, or was otherwise exerting any form of authority over him," [*id.*], the Court is unaware of any authority requiring that a police officer be engaged in any of those specific activities to be held liable under § 1983 for the unconstitutional deprivation of property. Furthermore, the Amended Complaint avers that Sergeant Berger *was* acting in his capacity as a police officer; Plaintiff alleges that Sergeant Berger was on duty at the clearing of an encampment of unhoused individuals, that he was instructing Plaintiff to back up as he filmed the ongoing activities, that Plaintiff asked for his badge number in this process, that Sergeant Berger called for backup, and that only then did Sergeant Berger knock the phone and gimbal from Plaintiff's hand. [Doc. 6 at ¶¶ 70–77].

Regardless of their form, deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); s*ee also Smith v. Colo. Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). But in this case, the Court is unpersuaded at this juncture that such a remedy exists.[16] While the City Defendants argue that Colorado law

---

[16] While Plaintiff does not appear to directly address this argument in his Response [Doc. 38 at 17-18], this Court is not satisfied that dismissal as a matter of law is appropriate here. *Cf. Citizens*

provides an explicit remedy "for individuals who were filming police and had their recording equipment unlawfully damaged," [Doc. 28 at 21], the statute they cite provides for "a right of recovery against a peace officer's *employing law enforcement agency*," Colo. Rev. Stat. § 13-21-128(1)(a)(I) (emphasis added). Plaintiff does not raise his § 1983 claim for the deprivation of his due process rights against Sergeant Berger's employing law enforcement agency, but rather against Sergeant Berger himself.

In light of these shortcomings in the City Defendants' Motion, the Court concludes that Mr. Loma has adequately stated a claim against Sergeant Berger in Count Six of his Amended Complaint and that qualified immunity does not shield him from liability on Mr. Loma's allegations. That portion of the City Defendants' Motion is accordingly **DENIED**.

***Count Seven.*** Finally, Count Seven is raised against Sergeant Berger and alleges a violation of the Fourth Amendment to the United States Constitution for "excessive force resulting in permanent[ ] deprivation of personal property." [Doc. 6 at 25 (cleaned up)]. The City Defendants contend that Mr. Loma's allegations with respect to Defendant Berger do not constitute as "seizure" under the Fourth Amendment. [Doc. 28 at 21-22].

"The Fourth Amendment protects individuals against 'unreasonable searches and seizures.'" *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994). "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Id.* Excessive force claims under the Fourth Amendment are analyzed for objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determining the objective reasonableness of a seizure "requires a careful balancing of the 'nature

---

*Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980).

and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The Court must assess the officer's conduct "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" in situations "that are tense, uncertain, and rapidly involving." *Id.* at 396–97. Further, the Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

This Court's central inquiry here turns on the definition of a "seizure" under the Fourth Amendment. "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *United States v. Ojeda-Ramos*, 455 F.3d 1178, 1183 (10th Cir. 2006) (quoting *United States v. Drayton*, 536 U.S. 194, 201 (2002)). Relevant here, the United States Supreme Court has recently clarified that there are "seizures by control and seizures by force." *Torres v. Madrid*, 141 S. Ct. 989, 1001 (2021). With respect to seizures by force, the Court has held that "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Id.* at 1003. A seizure by force can be fleeting—it "lasts only as long as the application of force," absent submission. *Id.* at 999. Furthermore, while the amount of force remains relevant in assessing the objective intent to restrain, "a mere touch can be enough for a seizure." *Id.* at 998. That said, "[a] seizure requires the use of force *with intent to restrain.*" *Id.* (emphasis in original).

Guided by *Torres* and *Graham*, the Court concludes that Plaintiff has plausibly stated a claim for relief against Sergeant Berger for excessive force under the Fourth Amendment.  He alleges that he was peacefully present at the clearing of an encampment of unhoused individuals, that his only interaction with officers included filming them and requesting their badge numbers, and that the result was that his phone was struck from his hand and shattered.  These allegations are sufficient to make out a claim for an unreasonable seizure.  *See Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1291 (D. Colo. 2020) (finding that plaintiffs were likely to prevail on their Fourth Amendment excessive force claim where "plaintiffs were attacked with rubber bullets, tear gas, etc. allegedly solely on the basis of their presence at the demonstrations"). Stated differently, Sergeant Berger's alleged conduct "objectively manifested an intent" to restrain and incapacitate Plaintiff while he was peacefully observing a public event at which the police were present. *Torres*, 141 S. Ct. at 999.  And, as noted above, the right to film police officers in the course of their public duties was clearly established at the time of Plaintiff's interaction with Sergeant Berger. *Irizarry*, 38 F.4th at 1295.  The Court is mindful that qualified immunity is an immunity from suit, *Ahmad*, 435 F.3d at 1198, but is also cognizant of its duty to take Plaintiff's allegations as true at the motion to dismiss stage, *Casanova*, 595 F.3d at 1124.  Accepting those allegations here, the Court respectfully concludes that qualified immunity does not shield Sergeant Berger from liability with respect to Count Seven of the Amended Complaint and **DENIES** that portion of the City Defendants' Motion.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

    1.  The City Defendants' Motion to Dismiss is **GRANTED IN PART** with respect to:

    a.  Plaintiff's First Claim for Relief as raised against Corporal Robert D. Smith;

    b.  Plaintiff's Second Claim for Relief;

    c.  Plaintiff's Third Claim for Relief;

    d.  Plaintiff's Fourth Claim for Relief as raised against the City and County of Denver, City Attorney Kristin M. Bronson, Deputy City Attorney Melissa M. Drazen Smith, Corporal Smith, and Detective Rocco-McKeel;

    e.  Plaintiff's Fifth Claim for Relief;

    f.  Plaintiff's Eighth Claim for Relief;

    g.  Plaintiff's Ninth Claim for Relief;

    h.  Plaintiff's Tenth Claim for Relief;

    i.  Plaintiff's Eleventh Claim for Relief;

    j.  Plaintiff's Twelfth Claim for Relief; and

    k.  Plaintiff's Thirteenth Claim for Relief.

2. The City Defendants' Motion to Dismiss is **DENIED IN PART** with respect to:

    a.  Plaintiff's Fourth Claim for Relief as raised against Sergeant Berger;

    b.  Plaintiff's Sixth Claim for Relief; and

    c.  Plaintiff's Seventh Claim for Relief.

DATED:  March 20, 2023                    BY THE COURT:

                                          _____
                                          Nina Y. Wang
                                          United States District Judge