# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-2214-NYW-SBP

BRIAN LOMA, an individual,

    Plaintiff

v.

ALLIED UNIVERSAL SECURITY SERVICES,
FALIESHA LYNETT TRIMBLE, in their individual capacity,
ANGELIKA CHAPLINSKIY, in their individual capacity,
OFFICER BURGER (#98049), in their individual capacity,

    Defendants.

---

## DECLARATION OF JEFFERY BERGER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Jeffery Berger, being of lawful age and duly sworn pursuant to 28 U.S.C. § 1746, state the following:

1. I submit this declaration in support of Defendant's motion for summary judgment based on my personal experience and knowledge and a review of the records maintained by the Denver Police Department ("DPD").

2. I am currently employed as a member of the DPD.

3. I became a police officer on October 1, 1998.

4. I was promoted to sergeant in December 2020.

5. The Denver Department of Public Health and Environment ("DDPHE") declared an unlawful encampment located at 19th Avenue and Emerson Street in the City and County of Denver a public health hazard, DDPHE requested Department of Transportation and Infrastructure ("DOTI") assist with a cleanup of the location and DPD officers provided protection for City employees while cleanup operations were conducted on November 17, 2020.

6. On November 17, 2020, I assigned to provide security for the illegal encampment cleanup operation at 19th Avenue and Emerson Street.

7. From past experiences it was common for demonstrators to attempt to prevent the cleanup operation by physically preventing the erection of fences and direct confrontation with police.

8. Accordingly, it was the responsibility of the DPD to ensure there was sufficient separation for crews conducting the operation and protestors so the work could be completed in a safe and timely manner.

9. At about 6:30 a.m. I responded to the intersection of 19th and Emerson with other officers, including Sergeant Kevin Ford, based on a report of an individual interfering with the construction of a fence.

10. When I arrived, the individual was holding a phone attached to a gimbal in his right-hand filming police and the erection of the fence.

11. The individual was later identified as Brian Loma.

12. Prior to November 17, 2020, I did not know Brian Loma.

13. Prior to November 17, 2020, I did not have any interactions with Brain Loma.

14. Sgt. Ford advised Mr. Loma that he was permitted to film so long as he did not interfere with the construction of the fence.

15. In an aggressive and hostile manner, Mr. Loma began demanding the names and badge numbers of all officers on scene.

16. In addition, there were other protestors in the area engaging police in hostile tone.

17. When Mr. Loma demanded my name, I advised him that I did not know who he was.

18. Mr. Loma was standing within three (3) feet of me when he demanded my name.

19. My name was visible on the right lapel of my shirt.

20. Mr. Loma extended his right hand towards my chest apparently to film my name.

21. Mr. Loma extended his right arm within inches of my chest.

22. My lapel pin was visible from where Mr. Loma was standing, and it was unnecessary to get that close to film my name.

23. As it was unnecessary for Mr. Loma to get that close to my chest to film my name, I did not know what his intentions were.

24. I was concerned that he may attempt to strike me.

25. When Mr. Loma extended his right hand within inches of my chest, I reached up with my right hand and pushed his phone back.

26. I did not touch Mr. Loma's arm or any other part of his body.

27. I only made contact with the phone that he was holding in his right hand.

28. By reaching out, it was my intent to create distance between Mr. Loma and myself.

29. I did not reach out to stop Mr. Loma from filming the cleanup operation or my name.

30. It was not my intent to prevent him from filming.

31. My sole intent in reaching out was to create a safe distance between Mr. Loma and myself.

32. After I pushed back on Mr. Loma's phone, the phone fell to the crowd.

33. It was not my intent to knock the phone out of Mr. Loma's hand when I reached out to create distance.

34. My sole motivation in reaching out to push Mr. Loma's phone back was for my safety.

35. Mr. Loma was not arrested or seized on November 17, 2020.

36. Mr. Loma was free to leave and to continue filming the cleanup.

37. I did not know, until this action was filed, that Mr. Loma's phone was broken.

38. At all times I acted in good faith.

Wherefore, it is respectfully requested that Defendant's Motion for Summary Judgment be granted.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: March 22, 2024

_Jeffery Berger_