```
 1         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2   _____
 3   BRIAN LOMA,                        Civil Action No.
                                        1:21-cv-02214-NYW-SBP
 4            Plaintiff,
     vs.
 5
     ALLIED UNIVERSAL SECURITY SERVICES,
 6   FALIESHA LYNETT TRIMBLE, in their individual capacity,
     ANGELIKA CHAPLINSKIY, in their individual capacity,
 7   OFFICER BERGER(#98049), in their individual capacity,
 8            Defendants.
     _____
 9
          VIDEO DEPOSITION OF BRIAN BENJAMIN LOMA
10              THURSDAY, FEBRUARY 22, 2024
     _____
11
     APPEARANCES:
12   ON BEHALF OF THE PLAINTIFF:
     DANIEL MOSSINGHOFF, ESQ.
13   Baumgartner Law, LLC
     730 17th Street, Suite 340
14   Denver, Colorado  80202
     Phone: 303-529-3476
15   Email: Daniel@baumgartnerlaw.com
16   ON BEHALF OF THE DEFENDANTS ALLIED UNIVERSAL SECURITY
     SERVICES, FALIESHA LYNETT TRIMBLE, AND ANGELIKA
17   CHAPLINSKIY:
     KIMBERLY L. KOEHLER, ESQ.
18   Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
     1225 17th Street, Suite 1700
19   Denver, Colorado  80202
     Phone: 303-572-5300
20   Email: Kim.koehler@wilsonelser.com
21   ON BEHALF OF THE DEFENDANT OFFICER BERGER:
     KEVIN PATRICK McCAFFREY, ESQ.
22   City and County of Denver
     201 West Colfax Avenue, Dept. 1108
23   Denver, Colorado  80202
     Phone:
24   Email: Kevin.mccaffrey@denvergov.org
25   ALSO PRESENT: Davis Baumunk, Videographer
      Job No. CS6440548
```

Page 2

1        PURSUANT to WRITTEN NOTICE and the appropriate rules of civil procedure, the video
2    deposition of BRIAN BENJAMIN LOMA, called for examination by the Defendants Allied Universal
3    Security Services, Faliesha Lynett Trimble, and Angelika Chaplinskiy, was taken at Baumgartner Law,
4    LLC, 730 17th Street, Suite 340, Denver, Colorado 80202, commencing at 9:59 a.m. on Thursday, February
5    22nd, 2023 before Randi E. Barrett, Notary Public within the State of Colorado.

6
7                    I N D E X
8    EXAMINATION:                                          PAGE
9    By Ms. Koehler                                           4
     By Mr. McCaffrey                                   136,215
10   By Mr. Mossinghoff                                     211
11
12
13
14   EXHIBITS:                                            PAGE
15   Exhibit 1   Denver Police Department List of
                 Charges for Brian Loma                    28
16   Exhibit 2   Video                                    106
     Exhibit 3   Plaintiff's Response to AUS Defendant's
17               First Set of Interrogatories, Requests
                 for Production, and Requests for
18               Admission                                127
     Exhibit 4   Plaintiff's Amended Responses to AUS
19               Defendant's First Set of Interrogatories,
                 Requests for Production, and Requests for
20               Admission                                133
     Exhibit 5   Plaintiff's Second Amended Responses to
21               AUS Defendant's First Set of
                 Interrogatories, Requests for Production,
22               and Requests for Admission               134
     Exhibit 6   Brian Loma Case List                     169
23   Exhibit 7   YouTube Channel                          188
     Exhibit 8   Video                                    192
24
25

Page 187

1    career of financial stability for me.  You can't pay
2    the rent on these videos.
3         Q    Do you know -- prior to November 17th, 2020
4    did you know Sergeant Berger?
5         A    Did I know him?
6         Q    Had you ever seen him before?
7         A    Yes, I have seen him before.
8         Q    Prior to November 17th, 2020, had you ever
9    interacted with him?
10        A    It's possible.
11        Q    Prior to November 17th, 2020, do you recall
12   any conversation or interaction you had with him?
13        A    Specific and individual to Berger, no.
14             MR. MOSSINGHOFF:  Mr. Loma indicated to me
15   quietly that he would like to request a break.
16             MR. McCAFFREY:  Oh, yeah.  Sure,
17   absolutely.  Five minutes?  I mean, I'm going to be
18   done within 40 minutes, 45 minutes, so how much time
19   did you want?
20             THE WITNESS:  I need to use the washroom.
21             THE VIDEOGRAPHER:  Going off the record at
22   3:20.  This marks the end of media three.
23             (Recess taken.)
24             THE VIDEOGRAPHER:  This is marks this start
25   of media four of the video deposition of Brian Loma.

Page 195

1    ones who arrested me in the other case.
2        Q    So you recognize at least two of the
3    officers?
4        A    Yeah.
5        Q    Berger you did not recognize?
6        A    No, I -- I've had hundreds if not thousands
7    of interactions with the Denver Police Department and
8    the District 6 officers who were primarily at the
9    scene that day.
10       Q    Did any of those officers say anything to
11   you -- I'm sorry, was your whole interaction with the
12   police officers recorded in that video?
13       A    No, I'm sure there was interactions that
14   happened afterwards.
15       Q    But -- but from the moment that you started
16   recording, that was the first time you saw a police
17   officer that day, correct?
18       A    Yes.
19       Q    And did they say anything you to prior to
20   your phone being broken by -- did any of the officers
21   say anything to you which would indicate to you that
22   they didn't want you filming?
23       A    No.
24       Q    And when you were holding the camera, were
25   you holding it in a -- in your hand, or did you have

1  it in some sort of device?
2       A    It was in a gimbal.
3       Q    What is gimbal?
4       A    A gimbal is a stabilizer. It stabilizes
5  the camera so that any hand shakiness or other
6  movement is minimized to help stabilize the quality of
7  the shot.
8       Q    And the gimbal, does the gimbal extend the
9  camera from your -- from your hand? Does it hold it
10 straight up?
11      A    So the gimbal is a hand-held device with a
12 hand stick and then a gyroscope attached to it at the
13 top of the stick, that's the stabilization piece. So
14 it's within the range of a hand. It's not like it
15 would stick out any extra distance. It would be in
16 the same proximity as the arm movement would be.
17      Q    And would -- and prior to attempting to
18 place the camera to record Sergeant Berger's name, did
19 they say anything to you which would indicate to you
20 that he did not want you filming?
21      A    Did he say anything that would indicate
22 that he did not want me filming? No. Was he out of
23 compliance during that video we just watched where I
24 had to repeat to him a half dozen times or more his
25 refusal to identify while his supervisors were there

Page 197

1   showing by example how to respond to me?
2        Q    Do you have a First Amendment right to have
3   him respond to you?
4        A    He has a legal obligation, according to the
5   State of Colorado statutes, to identify himself.
6        Q    Is it a violation of any constitutional
7   right if he doesn't?
8        A    Huh?
9        Q    Is it a violation of any constitutional
10  right if he doesn't?
11       A    I believe it's a violation of state
12  statutes and City and County of Denver policy.
13       Q    All right.  Did that -- were your rights in
14  any way violated by him failing to identify?
15       A    I mean, he didn't stop my rights, but he
16  was not following the laws that he's sworn to uphold
17  and protect.
18       Q    And how close to his badge -- him name did
19  you get the camera?
20       A    The camera was -- I was standing less than
21  three feet away from him, so the extension of my arm
22  toward his badge wouldn't have been more than, you
23  know, two feet --
24       Q    So --
25       A    -- my belief.

Page 198

```
1         Q    And how tall are you?
2         A    Five six and a half.
3         Q    And your -- how about your arm?  How long
4    are your arms?
5         A    I don't know, two and a half, three feet.
6         Q    That's a long arm, three feet?  We'll
7    say --
8         A    12, 24, you know --
9         Q    We'll say two and a quarter.
10        A    Two and a quarter, great.
11        Q    So you were standing about three feet from
12   him, correct?
13        A    Sure, yes.
14        Q    And you held the camera to -- with, you
15   know, 6 inches to 12 inches from the name on his -- on
16   his badge, correct?
17        A    Yes.
18        Q    And as a result, he placed his -- and what
19   hand are you holding it?  Right or your left?
20        A    Right.
21        Q    And when you were facing him, were you
22   facing him square, meaning your shoulder -- your right
23   shoulder was square with his left shoulder and your
24   left shoulder was square with his right shoulder?
25   Were you off centered?  How were you standing?
```

```
 1       Q    He took his right hand and he -- and he --
 2   and he thrust it forward?
 3       A    Thrust it forward, hitting the gimbal and
 4   knocking the camera out of my hand -- out of the --
 5   out of the gimbal if I remember correctly.
 6       Q    So it -- it came into contact with the
 7   gimbal, correct?
 8       A    That's correct.
 9       Q    At no point in time did he ever touch you?
10       A    No, I do not believe so.
11       Q    And as a result of this incident, did you
12   sustain any sort of injury, physical injury?
13       A    Physical injury, my phone did.  It was
14   damaged.
15       Q    No, did you?
16       A    No.
17       Q    Did you have to seek any medical attention
18   from what happened?
19       A    No.
20       Q    And as a result of this incident, did you
21   sustain any sort of emotional injury?
22       A    Yeah.
23       Q    Tell me about your emotional trauma from
24   this incident.
25       A    I had never -- shortly thereafter, I ended
```