Dan Montgomery
Professional Police & Public Safety Consulting, LLC
1832 S. Lee Street, Unit C
Lakewood, Colorado 80232
303-888-7922++++
danmontgomery61@gmail.com

## Supplemental Report, March 22, 2024

## Case Information

*Loma vs. Allied Universal Security Services et al*., United States District Court, District of Colorado, Case No. 1:21-cv-02214-NYW-SBP.

## Background

On October 31, 2023, I submitted my report in this matter, and indicated, "This is my preliminary report. I recognize that further discovery will possibly occur in this case, and I reserve the right to review the additional discovery, and prepare the appropriate supplemental and/or rebuttal reports." Furthermore, my preliminary opinion expressed in the October 31, 2023, report were as follows:

**"The actions of Defendants Allied Universal Security Services, Security Officer Faliesha Trimble, and Angelika Chaplinskiy were in concert with generally accepted security practices, and consistent with what reasonable security officers would have done given the same or similar circumstances."**

## Additional Discovery Received and Reviewed

On March 13, 2024, I received the following additional discovery in this matter:

1. The February 22, 2024, full and condensed versions of Mr. Loma's 285 page deposition, including deposition exhibits 1 through 8, and including the streamed video produced by Mr. Loma on February 15, 2019.

288886287v.3

**EXHIBIT E**

2.  The February 28, 2024, three page declaration prepared by Denver Police Department Corporal Robert D. Smith.

3.  Eight (8) Denver Police Department Axon Body Worn Camera recordings identified as DENVER000368, 369, 370, 371 (1), 371 (2), 372, 373, and 374.

**<u>Declaration of Corporal Robert D. Smith, February 28, 2024</u>**

1. Corporal <u>Robert D. Smith</u> is a 20-year veteran of the Denver Police Department, and is familiar with reasonable and acceptable police practices (Page 1).

2.  He was called to the scene of 16th and Lawrence Street at 7:27 pm on February 15, 2019. It was reported by the Denver Fire Department that a person was being aggressive while fire/rescue personnel were rendering aid to a down party.

3.  Allied Security Officer <u>Faliesha Trimble</u> reported to Officer Smith that Mr. Loma approached her and two other security officers while they were checking on a downed citizen to see if the citizen needed medical assistance.

4.  Ms. Trimble tried to stand between Mr. Loma and the downed citizen to provide the citizen with some privacy. Mr. Loma got right in her face and began following her around while using his phone to record her.  She asked him several times to stop getting in her face.  Mr. Loma spit twice in her face and she described feeling the saliva hit and slide down her face. <u>Note:  I reviewed Mr. Loma's streamed video and confirmed that Ms. Trimble told Mr. Loma he was spitting on her.</u>  (@ 0:0153 into the video).  While Ms. Trimble was telling him he was spitting on her, Mr. Loma was telling Ms. Trimble that he had the right to be on the sidewalk.

5.  Security Officer <u>Angelika Chaplinskiy,</u> who was working with Ms. Trimble, reported to Corporal Smith that she observed Mr. Loma spit in Ms. Trimble's face. <u>Note:  I saw no evidence at all that Ms. Chaplinskiy was engaged in any interaction with Mr. Loma as was Ms. Trimble. She was simply a witness to the event</u> and indicated, again, that she saw Mr. Loma spit on Ms. Trimble.

6.  <u>Bonnie Kutauskas</u>, a friend of Mr. Loma, indicated to Corporal Smith that Mr. Loma did not spit on Ms. Trimble.  She indicated that spittle from Mr.

288886287v.3

**EXHIBIT E**

Loma may have landed on the victim's face because he was yelling and was very close to her. She showed Corporal Smith a video of the interaction between Mr. Loma and Ms. Trimble and the video did not show evidence of Mr. Loma spitting on Ms. Trimble. The video was incomplete however because it did not depict the interaction from the start. The video did show Mr. Loma following Ms. Trimble very closely with his camera right in her face. Note: Ms. Kutauskas is referred to as Bonnie Costas in Mr. Loma's deposition. <u>Note: Ms. Kutauskas confirmed, as already noted, that Mr. Loma was very close to Ms. Trimble and was yelling at her and spittle may have landed on Ms. Trimble's face.</u>

7. <u>Brian Loma</u> indicated to Corporal Smith that he was speaking close to Ms. Trimble's face, and he believed that it was possible that some of his spittle while talking may have made contact with Ms. Trimble. <u>Note: Mr. Loma also indicated to Corporal Smith that if spittle "accidentally" came out of his mouth, it would not constitute spitting</u>.

8. <u>Corporal Smith</u> concluded from his investigation that there was probable cause to believe that Mr. Loma had committed the crime of assault in violation of the Denver Municipal Code. Mr. Loma was issued a summons as a result.

**<u>February 27, 2024, Deposition of Brian Loma</u>**

1. Mr. Loma was asked in his deposition, "So generally speaking, the more content you pose on your YouTube, the better chance that you'll receive revenue as a result, correct? Mr. Loma responded, "Quantity, quality, some factors there, yes." (Page 24).

2. During the deposition, evidence was produced showing that Mr. Loma has been arrested several times by the Denver Police Department over the past several years. (Pages 25-33 and Exhibit 1).

3. Mr. Loma indicated that while walking on 16th Street on the night of his arrest in this incident, "My memory says that I observed three security guards trying to interact with a gentleman who was appearing to be asleep on the sidewalk…." (Page 36). Mr. Loma then stated, " I don't believe that I realized that they were security officers immediately. If any one of them would have been in uniform---again, I haven't watched the video again. My unverified memory tells me that they were not all—if any of them—in full security uniform or how many exactly were there to start with. I remember seeing an

288886287v.3

**EXHIBIT E**

incident and I pulled my camera out and started filming." (Page 36-37). Note: Ms. Trimble was in fact wearing a uniform consisting of dark trousers, a white shirt, and a dark blue or black jacket identifying her as a security officer. Ms. Chaplinskiy was not wearing a jacket, but was in fact wearing dark trousers and a white shirt which identified her as a security officer.

4.  Mr. Loma was under the impression on the night of the incident that the citizen being tended to by the "individuals" appeared to be sleeping, and that they were "poking at him or talking loudly at him." (Page 36). Mr. Loma conceded that it looked like perhaps they were trying to wake him up. (Page 39).

5.  Mr. Loma was asked if he had a problem with the fact that three people were trying to wake the sleeping citizen, and he replied, "Yeah, they were internal building security." (Page 40). Mr. Loma was then asked, "So earlier you testified you didn't know who these people were, and you don't recall whether they were wearing any sort of uniform." Mr. Loma responded, "That is what I said. I said I haven't watched the video---to review that." (Page 40).

6.  Mr. Loma indicated that medical professionals were on site and were there to check on the citizen who was down. He also stated that while the incident was occurring, he was filming. (Page 43).

7. Mr. Loma was asked what he remembered specifically about the incident in question.  He replied," I recall a gentleman sleeping on the ground I recall a woman shoving me, pushing me away from the ability to video, blocking me, waving their arms to prevent me from filming. I vaguely remember the EMTs showing up, I remember a police officer coming, I remember being accused of hawking a loogie or spitting on a woman's face where it rolled down her face as an accusation, I remember the police officer asking to see the video and I said, "I'm recording live. Go get a phone and watch the video from the beginning," I remember a bunch of people showing up to the incident, people that knew me directly, I remember there being a bunch of police officers, and I remember that I went home that night, I did not go to jail and was issued a citation instead of an arrest." (Page 58-59). Note:  Mr. Loma failed to note here that as he and some of his supporters were in the process of leaving, Mr. Loma yelled out to his supporters, "Are you going to go home now, or are you going to go to Union Station with us and fuck with cops with us?" (Page 101) (See Mr. Loma's streamed video in which, another member

288886287v.3

**EXHIBIT E**

of the group of supporters present on scene yelled out, "Let's go make a mess somewhere else." Another follower yelled, "Let's go fuck up Union Square."

8.   Mr. Loma denied during the deposition intentionally spitting on Ms. Trimble.  He stated, "I do deny that I intentionally spit or assaulted her—spit on or assaulted her in such a way that she described." (Page 59). When asked about taking out the intent in the equation, did he spit on her whether it was intentional or not, Mr. Loma replied, "Again, I don't know how you would spit on somebody unintentionally."   When asked if it happened, Mr. Loma replied, "No, I do not believe that I spit on her. Spitting on somebody requires an intentional effort." (page 60). Note: When asked if he accidentally spit on Ms. Trimble, Mr. Loma replied, "I don't believe that I did." (Page 61). Note: In his deposition, Mr. Loma did in fact indicate that he may have "accidentally" transferred spittle onto Ms. Trimble. Lastly I would point out that Mr. Loma stated that he did not believe that he spit on Ms. Trimble.

9.  Mr. Loma stated that Ms. Trimble came close to him and put her hands on him and shoved him but could not recall exactly when she allegedly touched him. When asked how she put her hands on him, Mr. Loma advised that he could not remember. He stated, "I don't remember. I just remember that she---I don't---the video's there. I don't remember if she pushed me, if she—you know, was blocking me. I don't remember the exact details." (Page 63).

10.  Mr. Loma could not recall if he related to Corporal Smith the alleged pushing or assault by Ms. Trimble. His answer to the initial question was that he "probably" did report it, but the video, "is there." (Page 63). Note:  Mr. Loma did not report the alleged shoving to Corporal Smith but did in fact tell Ms. Trimble in the streamed video that she was pushing him.

11.  Mr. Loma was asked if he ever does anything that attracts police attention in public and Mr. Loma replied, "sure."  He also confirmed that he attracts police attention by protesting, yelling, screaming, using profanity as an expression of his "constitutional free right, free speech, freedom to practice your faith, and things like that." (Page 64-65). Mr. Loma also advised that he has "street preached" in the past but is not a degreed or licensed pastor. (Page 65).

12.  Mr. Loma was asked if he recalled from his video Ms. Trimble saying to him, "Do not spit in my face sir." Mr. Loma responded, "I would have to

288886287v.3

**EXHIBIT E**

watch the video." (Page 69). <u>Note: Ms. Trimble did in fact tell Mr. Loma twice that he was spitting on her as evidenced on Mr. Loma's streamed video.</u>

13. Mr. Loma had no specific recollection of his interactions with Ms. Chaplinskiy, and when asked if he felt Ms. Chaplinskiy wronged him and deserved to be sued, Mr. Loma replied, "I didn't write the lawsuit." (Page 72). Mr. Loma asserted that he is suing Ms. Chaplinskiy because she, "was a party to the incident. She was there, she gave testimony to the police officials." (Page 74-75).

14. Mr. Loma could not recall telling Corporal Smith that he perhaps sprayed Ms. Trimble on accident while he was speaking with her. Without viewing the video, Mr. Loma could not recall. (Page 75).

15. Mr. Loma was asked if he could recall telling Corporal Smith that there was a difference between intentionally hawking a loogie on someone and accidentally spraying spit in their face while talking to them in close proximity. Mr. Loma could not recall, and advised again that he had not watched the video. (Page 77).

16. Mr. Loma advised in his deposition that he did not recall saying to several friends in the area after he received his summons, "Are you going to go home now, or are you going to go to Union Sation with us and fuck with cops with us?" (Page 101). Note: It is clear from Mr. Loma's streamed video that he did utter those words.

## **Opinions**

After having reviewed the additional discovery in this case, I submit the following:

**1. The actions of Defendants Allied Universal Security Services, Security Officer Faliesha Trimble, and Angelika Chaplinskiy were in concert with generally accepted security practices, and consistent with what reasonable security officers would have done given the same or similar circumstances.**

**2. The evidence in this case tends to support the fact that Mr. Loma did spit on Ms. Trimble, or at least sprayed her with spittle while he was yelling at her about his rights to be on a sidewalk, and holding his cell**

288886287v.3

**EXHIBIT E**

recorder in her face. I know from my education, training, and experience over 60 years in the business of policing and security, that when people are yelling at someone, (like Mr. Loma in this case), and are close up in the other's space (like Ms. Trimble's space), spittle spray is common.

3. As to the issue of Ms. Trimble allegedly pushing Mr. Loma, I submit that from my education, training, and experience over 60 years in the business of policing and security, I know that when people (like Ms. Trimble), have people close up in their face (like Mr. Loma), acting in what often is perceived to be a threatening and/or intimidating manner, it is not uncommon to push the invader away. That is a normal human defensive reaction.

5. Lastly, I would give kudos to the police officers on this scene as well as the security officers. Despite being profanely harassed verbally all evening by many people in attendance who were armed with cell phone cameras, they maintained their calm and demeanor, and did not overreact. One has but to review the video footage discovery to get a true grasp of how well the officers performed, and how badly those who were profanely taunting the police and security officers performed. Ms. Trimble had to be escorted from the scene by a DPD police vehicle to avoid being verbally or physically assaulted by members of the unruly crowd.

Respectfully Submitted,

*Dan Montgomery*

Dan Montgomery, Professional Police & Public Safety Consulting, LLC

288886287v.3

**EXHIBIT E**