IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 21-cv-2214-NYW-SBP

**BRIAN LOMA**, an individual,

    Plaintiff

v.

**ALLIED UNIVERSAL SECURITY SERVICES**,
**FALIESHA LYNETT TRIMBLE**, in their individual capacity,
**ANGELIKA CHAPLINSKIY,** in their individual capacity,
**OFFICER BERGER (#98049),** in their individual capacity

    Defendants.

---

## RESPONSE TO DEFENDANT JEFFREY BERGER'S MOTION FOR SUMMARY JUDGEMENT

---

COMES NOW, Plaintiff, Brian Loma, by and through counsel, Baumgartner Law, LLC, and respectfully submits this Response to Defendant Jeffrey Berger's Motion for Summary Judgment [ECF 80] as follows:

### INTRODUCTION

Plaintiff is a well-known advocate for the rights of the unhoused in the City and County of Denver. He is also a well-known antagonist of the Denver Police. On November 17, 2020, Plaintiff was filming the removal of a "homeless encampment" when he was surrounded by several Denver police officers, including Defendant Berger. As Plaintiff is well-known to do, he loudly and assertively demanded the officers' names and badge numbers while filming them. Plaintiff took turns aiming his camera phone at the Denver officers and demanding their names and badge

numbers. Only Defendant Berger refused to give Plaintiff his name and badge number. Instead, Defendant Berger began arguing with Plaintiff over whether he must provide his name and badge number. Plaintiff responded by aiming the camera directly at Defendant Berger's nametag. Defendant Berger was clearly aware of this because on the video he is clearly shown pulling his jacket away from his name tag so the camera could capture it. Immediately after, Defendant Berger hit Plaintiff's phone hard enough that it flew out of Plaintiff's hands and broke on the cement. Now, Defendant Berger asks the Court to ignore the video evidence, which most jurors would believe establishes improper intent, and pay attention only to his self-serving affidavit to draw an inference that he was not motivated by the animus that was apparent in the argument immediately preceding his retaliatory act of slapping the camera out of Plaintiff's hands. In short, Defendant Berger asks the Court to improperly "weigh the evidence" and resolve[] disputed issues in favor of the moving party…" *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640–641, 107 S.Ct. 3034,(1987)). The Court should decline to do so, and leave this issue to a jury. In this case, the context surrounding the issue of Defendant's intent tends to support Plaintiff's position.

## **RESPONSE TO DEFENDANT'S UNDISPUTED STATEMENT OF FACTS**

1. Admitted.

2. Admitted.

3. Denied. Defendant's affidavit is a self-serving document submitted simultaneously with his Motion for Summary Judgment. The allegations therein cannot be tested and therefore, Plaintiff denies the same.

4. Denied. Defendant's affidavit is a self-serving document submitted simultaneously with

his Motion for Summary Judgment. The allegations therein cannot be tested and therefore, Plaintiff denies the same.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted

15. Admitted.

16. Admitted.

17. Denied. Defendant's affidavit is a self-serving document submitted simultaneously with his Motion for Summary Judgment. The allegations therein cannot be tested and therefore, Plaintiff denies the same.

18. Admitted.

21. [Sic].Admitted.

22. [Sic].Admitted.

23. [Sic].Denied. Plaintiff admits that Officer Berger refused to provide Plaintiff his name and badge number, but Plaintiff believes this was because the Denver Police Department is well aware

of who Brian Loma is. Mr. Loma has had hundreds of interactions with Denver Police, including District 6 officers such as Defendant Berger. Exhibit 1, Plaintiff's Deposition, pg1, ¶2-9.

22. Admitted.

23. Plaintiff admits only that he insisted that Sgt. Berger "identify."

24. Admitted.

25. Plaintiff admits that he extended the phone to 6-12 inches of Defendant's chest. Ex. 1, pg. 198, ¶¶11-16.

26. Denied. Defendant cites only his self-serving affidavit, and nothing more. In order for Plaintiff to obtain the identification of Defendant, he had to film his name tag.

27. Denied. Defendant cites only his self-serving affidavit, and nothing more. Plaintiff was within a distance in which he could possibly strike Defendant for the entirety of their interaction, yet Defendant only struck Plaintiff after Plaintiff filmed his name tag after Defendant refused to provide it several times before. Ex. B, 05:00-06:13.

28. Denied. Defendant struck Plaintiff after Plaintiff filmed his name tag. Ex. B, 05:00-06:13.

29. Admitted.

30. Admitted.

31. Denied. Defendant struck Plaintiff after Plaintiff filmed his name tag. Ex. B, 05:00-06:13.

32. Denied. Defendant struck Plaintiff after Plaintiff filmed his name tag, exhibiting retaliatory animus. Ex. B, 05:00-06:13.

33. Denied. Defendant struck Plaintiff after Plaintiff filmed his name tag, exhibiting retaliatory animus. Ex. B, 05:00-06:13.

34. Admitted.

35. Denied. Defendant struck Plaintiff after Plaintiff filmed his name tag, exhibiting retaliatory animus. Ex. B, 05:00-06:13.

36. Denied. Defendant intentionally applied force to Plaintiff, restraining both his movement and his capacity to engage in his constitutionally protected right to film Defendant. Ex. B, 05:00-06:13.

37. Denied. Paragraph 37 is a statement of law, not fact, and should be stricken. To the extent that a response is required, this "Undisputed Material Fact" is Denied.

38. Paragraph 38 is a statement of law, not fact, and should be stricken. To the extent that a response is required, this "Undisputed Material Fact" is Denied

## STATEMENT OF ADDITIONAL DISPUTED FACTS:

1. Prior to Defendant Berger striking Plaintiff's phone, Plaintiff had walked behind Officer Berger, and had video recorded him from very close moments before video recording Officer Berger's name tag without reaction by Berger. Ex. B, 05:00-06:13, Ex. 1,

2. After Defendant Berger refused several times to identify himself, Plaintiff extended his camera toward Defendant's nametag, coming within 6-12 inches of his nametag. Ex. B, 05:00-06:13.

3. Defendant Berger knew that Plaintiff was attempting to record his nametag. Defendant is clearly seen on the video moving his jacket out of the way so that the camera can capture his name, and Defendant admits the same on his affidavit: "Mr. Loma extended his right hand towards my chest apparently to film my name." Ex. B, 05:00-06:13. Ex. A, ¶20.

4. Immediately after moving his jacket to show his nametag, Defendant Berger struck Plaintiff's camera, knocking it out of Plaintiff's hands and destroying it. Ex. B, 05:00-06:13.

5.      Plaintiff was recording in close proximity to Defendant Berger for the entire interaction; but it was not until Plaintiff recorded Defendant Berger's nametag that he struck Plaintiff's phone. Ex. B, 05:00-06:13.

6.      Plaintiff is a freelance journalist who makes a significant portion of his income through publicizing the activities of Denver police officers. Ex 1, pg. 31, ¶¶13-24; pg. 54, ¶¶4-23; pg. 146, ¶¶10-15.

7.      Plaintiff was live-streaming his interactions with Denver police officers, including Defendant Berger at the time of the incident. Ex 1, pg. 146, ¶¶10-15.

## **STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Regarding video evidence, the Supreme Court made it very clear that summary judgment is appropriate only if video evidence clearly and blatantly contradict a party's version of the facts. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). As such, to grant summary judgment in this case, the video footage of Defendant Berger striking Plaintiff's camera to the ground, coupled with other pieces of evidence, must clearly and blatantly contradict Plaintiff's version of facts.

When applying the summary judgment standard, the Court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation marks and citation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co., Inc.*, 933 F.2d 891, 892 (10th Cir.1991). If there is room for disagreement over what the evidence shows, then the video evidence cannot be said to "clearly" and "blatantly" support the moving party's version of facts.

In the United States judicial system, there is no more important right than that of the right to have one's case decided at a trial by a jury of your peers, and that is why the Tenth Circuit has repeatedly held that "summary judgment is a drastic action available only in cases where there are no material issues of fact, and a formal trial would be fruitless." *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir. 1977) (quoting *Frey v. Frankel*, 361 F.2d 437 (10th Cir. 1966)). As such, it is incredibly difficult to prevail on a motion for summary judgment such as Defendant's.

## ARGUMENT

### I. Defendant Berger is Not Entitled to Qualified Immunity on Plaintiff's Retaliation Claim.

It is well settled that "there is a First Amendment right to film the police performing their duties in public." *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). "The plaintiff must show that the retaliation was a substantial *or* motivating factor behind the [arrest]" *Nieves v. Bartlett*, 204 L. Ed. 2d 1, 139 S. Ct. 1715, 1725 (2019). *See also Lackey v. Cnty of Bernalilo*: "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*,

922 F.2d 618, 620 (10th Cir.1990) (citation omitted). *Lackey v. Cnty. of Bernalillo*, 166 F.3d 1221 (10th Cir. 1999) (establishing that the test is disjunctive.). So, if the action was taken for mixed motives, it is still actionable if one of the motives was impermissible. *Id.*

A. **Plaintiff has met each of the elements necessary to show a First Amendment retaliation Claim.**

Plaintiff agrees with Defendant that to prevail on a First Amendment retaliation claim, a plaintiff must prove:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

As to the first element, Defendant Berger does not contest that Plaintiff was engaged in constitutionally protected activity, presumably because the video record in evidence captures the interaction between Plaintiff and Defendant. *See generally*, MSJ [ECF 80]. As to the second and third elements, causation, and motivation, both elements hinge on Defendant Berger's intentions, and internal motivations, which are genuine issues of disputed fact. The same video record relied on by Defendant Berger establishes that Defendant Berger struck Plaintiff's phone out of his hand precisely because of his filming Defendant Berger's nametag. Statement of Additional Disputed Facts ("SADF") 1-5. Defendant argues, entirely based on his own self-serving affidavit and contrary to the video, that "Sgt. Berger reached over to push the phone back because Plaintiff was invading his personal space and inadvertently knocked the phone out of Plaintiff's hand causing it to fall to the ground." Defendant Berger MSJ [ECF 80], pg. 8. However, the video tells a very different story. First, Defendant and Plaintiff were in very close proximity for some time, and they were engaged in a mutually contentious argument. SADF 1-5. Defendant refused to identify

8

himself multiple times, withholding his identity from Plaintiff. *Id.* When Plaintiff recorded that information with his camera, Defendant immediately reacted with violence. *Id.* The context in which Defendant hit the phone out of Plaintiff's hands strongly suggests that he was reacting out of frustration and anger that Plaintiff was able to capture on film the information that Defendant was withholding from him. *Id.* At the very least, this context creates a fact dispute over what Defendant Berger's motives and intent were, which must be resolved in favor of Plaintiff at summary judgement. *Anderson* at 640–641. In *Tolan,* the Supreme Court reversed the Fifth Circuit for exactly the same weighing of intent that Defendant invites the Court to engage in here. *Tolan* at 656-658. In *Tolan*, the Court held that the Fifth Circuit erred when it held that "an objectively-reasonable officer in Sergeant Cotton's position could have ... believed" that Tolan "presented an 'immediate threat to the safety of the officers.'" *Id* at 655. The *Tolan* Court reiterated the long-standing principle at motions for summary judgment that a court should resolve issues of intent or motivation in the face of some countervailing evidence, and that this applies equally in qualified immunity analysis. *Id*. Here that principle applies because of the context of the interaction, and the clear animus shown by Defendant toward Plaintiff.

**B. Defendant Berger Violated Clearly Established Law.**

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308 (2015). The Tenth Circuit has been clear that, in the context of police interference with filming of their own activities, there need not be exact similarity in factual circumstances to put an officer on Notice:

> "To determine whether the law is clearly established, the relevant "precedent is considered on point if it involves *materially similar conduct* or applies with *obvious*

9

> *clarity* to the conduct at issue." *Lowe*, 864 F.3d at 1208 (quotations omitted). Thus, "[g]eneral statements of the law can clearly establish a right for qualified immunity purposes if they apply with **obvious clarity** to the specific conduct in question." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotations omitted); *see White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam). "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Lowe*, 864 F.3d at 1210."

*Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022) (emphasis added).

Here, Defendant Berger argues that because Plaintiff reached out to film his name tag, he is shielded by qualified immunity because "Plaintiff was invading his personal space." MSJ [ECF80] at 8. Such an argument is unavailing. First, it is undisputed that Defendant Berger approached Plaintiff, not the other way around. Ex. A, ¶¶10-20. Second, Defendant Berger knew Plaintiff was filming his badge, not attempting to harm Defendant. Ex. A, ¶20. Third, Defendant once again asks this Court to credit Defendant's subjective belief, and to discredit contrary evidence on video, which "weighing of the evidence" is contrary to controlling law announced in *Anderson* and *Tolan*. Additionally, the video evidence cannot reasonably be said to blatantly contradict Plaintiff's version of events, and so, pursuant to *Scott,* this Court should not credit Defendant's self-serving statements, and should leave the issue to a jury. This Court stated the same in its Order on Defendants Motion to Dismiss [ECF 63]. *See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss*, pgs.38-39.

Moreover, the *Irizarry* Court took pains to explain that manufacturing minute factual dissimilarities will not shield officers from conduct that is clearly prohibited with "obvious clarity:

> "i. Obvious clarity
> In *Worrell* we described the objective retaliation element as actions causing injury that would chill a person of ordinary firmness from continuing to engage in protected activity. Although this is a general statement of the law, it can supply

10

> clearly established law here because it applies "with obvious clarity to the specific conduct in question." *Halley*, 902 F.3d at 1149 (quotations omitted). Because filming police conduct in public is a clearly established First Amendment right, it would be obvious to a reasonable officer that blocking Mr. Irizarry's filming, shining a flashlight into the camera lens, and driving a police car at him in response to that filming would infringe First Amendment protected activity and chill its exercise."

*Irizarry,* at 1296–97.

For these reasons, this Court should similarly find that Defendant Berger's intentional interference with filming was prohibited by clearly established law.

## II.     **Plaintiff Concedes His 14th Amendment Claims.**

## III.    **Defendant Berger is Not Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Claims.**

"The Fourth Amendment protects individuals against unreasonable searches and seizures" *Bella v. Chamberlain,* 24 F.3d 1251, 1255 (10th Cir. 1994). "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred, and that the seizure was 'unreasonable.'" *Id*. Recently, the United States has clarified that there are "seizures by control and seizures by force." *Torres v. Madrid,* 141 S.Ct. 989, 1001 (2002). As this Court held in its Order on Defendant Berger's Motion to Dismiss [ECF 63], "[w]ith respect to seizures by force, the Court has held that 'the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued.' *Id* at 1003. A seizure by force can be fleeting – it lasts only as long as the application of force," absent submission. *Id* at 999. Furthermore, while the amount of force remains relevant in assessing the objective intent to restrain, 'a mere touch can be enough for a seizure.' *Id* at 998." *See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss*, pg. 42 (quoting *Torres*). A

11

court should evaluate an excessive force claim under an "objective reasonableness" standard, with attention to the circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Here, it is not disputed that Plaintiff was never placed under arrest, that he never struck or even touched any officer, and there is no allegation by Defendant Berger that Plaintiff was non-compliant with any commands. *See MSJ, generally*. His only interaction with the police was to film their activities and as a result, Defendant Berger struck his phone from his hand shattering it. *See* Ex. B, generally. The record in this matter shows that Defendant knew Mr. Loma was attempting to film his name tag, and that Defendant Berger intentionally applied force to Mr. Loma in order to restrain him from doing just that. Ex. A, 20, 32; Ex. B, 05:00-06:13. As such, the force used by Defendant Berger was simply gratuitous, and the *Graham* factors weigh heavily in Plaintiff's favor. The record here demonstrates that Plaintiff was peacefully filming the police as they assisted in the removal of the unhoused encampment. See Ex B, generally. Once again, it is clearly established that it is a First Amendment violation to interfere with filming of police activities through force or intimidation. *Irizarry,* at 1296–97.

Furthermore, it was clearly established that the use of gratuitous force, *even against a misdemeanant*, was unconstitutional on November 17, 2020. See *McCowan v. Morales*, 945 F.3d 1276, 1285-87 (10th Cir. 2019). As stated by the *McCowan* court, the relevant inquiry should not be for identical facts, but rather into the "salient facts" of the case. *Id* at 1286. In *McCowan* the Court stated:

> "[*McCoy v.Meyers,* 887 F.3d 1034] specifically identified three prior Tenth Circuit cases that, applying the *Graham* factors, "clearly establish that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued." *Id. McCoy* reached this conclusion while keeping in mind the Supreme Court's admonitions against conducting the clearly established analysis at too great a level of generality. *See id.* at 1044. It seemed clear and well established to our court in *McCoy* that when an officer inflicts gratuitous force against a fully compliant and subdued arrestee he is not protected by qualified immunity even though there has not yet been a case involving the precise manner that the officer chose to inflict that unconstitutional force."

*McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019)

Here, Defendant Berger did just what these cases put him on notice was unconstitutional. He applied gratuitous force against a civilian who he acknowledges was simply trying to record his nametag. Once again, conjuring up non-salient factual differences does not change that any reasonable officer should know that hitting a person who has committed no offense crime at all is an excessive use of force.

## **CONCLUSION**

For the reasons stated above, Defendant Berger's Motion for Summary Judgment as to Plaintiff's First and Fourth Amendment claims should be denied.

Dated this 29th day of April, 2024.

> Respectfully submitted,
> BAUMGARTNER LAW, L.L.C.
>
> *s/ S. Birk Baumgartner*
> S. Birk Baumgartner
> Baumgartner Law, LLC
> 730 17th St., Ste. 340
> Denver, CO 80202
> Phone: (303) 529-3476
> Fax: (720) 634-1018
> birk@baumgartnerlaw.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of April, 2024, a true and correct copy of the foregoing filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Jennifer Johnson
Denver City Attorney's Office
*Attorneys for Denver Defendants*

Jason D. Melichar
Kimberly L. Koehler
Wilson Elser Moskowitz Edelman & Dicker LLP
*Attorneys for AUS Defendants*

                                               *s/ Rachael Wallace*
                                               Rachael Wallace