IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-02214-NYW-SBP

BRIAN LOMA,

    Plaintiff,

v.

SERGEANT JEFFERY BERGER, in his individual capacity,[1]

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Pending before the Court is Defendant Jeffery Berger's Motion for Summary Judgment ("Motion for Summary Judgment" or "Motion") filed by Defendant Sergeant Jeffery Berger ("Sergeant Berger") on April 1, 2024. [Doc. 80]. Plaintiff Brian Loma ("Plaintiff" or "Mr. Loma") timely responded in opposition to the Motion, [Doc. 86 (the "Response")], and Sergeant Berger filed a reply brief, [Doc. 89 (the "Reply")]. The issues have been fully briefed, and the Court does not believe that oral argument would materially aid in the resolution of this matter. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment.

### BAKGROUND

This case arises from an incident between Mr. Loma and Denver Police Department ("DPD") officers that occurred while Mr. Loma was filming an unhoused

---

[1] The Court notes that Sergeant Berger's first name is spelled "Jeffery" in filings filed by his counsel, including his Declaration. *See, e.g.*, [Doc. 80; Doc. 80-1; Doc. 89]. The Clerk of Court is **DIRECTED** to amend the case caption to reflect the proper spelling of Sergeant Jeffery Berger's first name.

encampment cleanup operation in an area outside of St. Joseph's Hospital on November 17, 2020.  *See generally* [Doc. 6].  Mr. Loma brings three § 1983 claims against Sergeant Berger in his individual capacity for alleged violations of Mr. Loma's constitutional rights during the incident:  (1) a First Amendment retaliation claim, [Doc. 6 at ¶¶ 146–62]; (2) a Fourteenth Amendment deprivation of property claim, [*id.* at ¶¶ 176–82]; and (3) a Fourth Amendment excessive force resulting in the deprivation of property claim, [*id.* at ¶¶ 183–91].  The instant Motion seeks summary judgment for Sergeant Berger on all three of Mr. Loma's surviving claims.  [Doc. 80].  This matter is now ripe for consideration, *see* [Doc. 86; Doc. 89], and the Court considers the Parties' arguments below.

**LEGAL STANDARDS**

**I.   Rule 56**

Under Rule 56 of the Federal Rule of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

Where the movant does not bear the ultimate burden of persuasion at trial, the movant does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant has met its initial

2

burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views each motion "in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## II. Qualified Immunity

"Motions for summary judgment based on qualified immunity are treated differently than other summary-judgment motions." *Farrell v. Montoya*, 878 F.3d 933, 936–37 (10th Cir. 2017). The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *See Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To overcome an invocation of qualified immunity at summary judgment, although the Court reviews "the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden." *Felder ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (quotation omitted). That is, the plaintiff must establish two things: "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). This test imposes a "heavy two-part burden." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)

3

(quotationomitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). It is within the sound discretion of a court to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Addressing qualified immunity at the summary judgment stage requires the Court to adopt the plaintiff's version of the facts that are supported with evidence and ask whether that version of the facts is sufficient to overcome the invocation of qualified immunity. *Helvie v. Jenkins*, 66 F.4th 1227, 1232 (10th Cir. 2023); *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 756 (10th Cir. 2021). But the Court does not accept the plaintiff's version of the facts if there is clear video evidence that is contrary to the plaintiff's version of events. *Est. of Taylor*, 16 F.4th at 757.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and are undisputed unless otherwise noted.

1. In November 2020, the Denver Department of Public Health and Environment ("DDPHE") declared an unlawful encampment located at 19th Avenue and Emerson Street in the City and County of Denver a public health hazard and requested Department of Transportation and Infrastructure ("DOTI") assistance with a cleanup of the location. [Doc. 80 at ¶ 1; Doc. 86 at 2 ¶ 1; Doc. 80-1 at ¶ 5].

2. On November 17, 2020, DPD officers provided protection for City employees conducting cleanup operations in connection with the unlawful encampment. [Doc. 80 at ¶ 1; Doc. 86 at 2 ¶ 1; Doc. 80-1 at ¶ 5].

4

3. Sergeant Berger was assigned to provide security for the encampment cleanup operation. [Doc. 80 at ¶ 2; Doc. 86 at 2 ¶ 2; Doc. 80-1 at ¶ 6].

4. At approximately 6:30 a.m., Mr. Loma arrived at 19th Avenue and Emerson Street to livestream the encampment cleanup operation on YouTube. [Doc. 80 at ¶ 5; Doc. 86 at 3 ¶ 5; Doc. 80-2 at 00:22].

5. Mr. Loma filmed the cleanup operation with his phone set inside a gimbal. [Doc. 80 at ¶ 6; Doc. 86 at 3 ¶ 6; Doc. 80-3 at 196:2].[2]

6. A gimbal is a handheld device with a gyroscope attachment that provides stability for the image captured by a phone. [Doc. 80 at ¶ 7; Doc. 86 at 3 ¶ 7; Doc. 80-3 at 196:4–7].

7. Shortly after Mr. Loma started filming, a police officer approached and asked Mr. Loma to back up and not to interfere with the fence installation. [Doc. 80 at ¶ 8; Doc. 86 at 3 ¶ 8; Doc. 80-2 at 01:26].

8. Mr. Loma responded by demanding the officer's name and badge number. [Doc. 80 at ¶ 9; Doc. 86 at 3 ¶ 9; Doc. 80-2 at 01:30].

9. The officer declined to provide his name and badge number, prompting Mr. Loma to repeat his demand and call the officer a derogatory name. [Doc. 80 at ¶ 10; Doc. 86 at 3 ¶ 10; Doc. 80-2 at 01:56].

10. Mr. Loma continued to demand the officer's name and badge number in an aggressive and belligerent tone. [Doc. 80 at ¶ 11; Doc. 86 at 3 ¶ 11; Doc. 80-2 at 02:50].

---

[2] When citing to transcripts, the Court cites to the page and line numbers appearing on the original transcript pages but to the docket number generated by the Electronic Court Files ("ECF") system. When citing to video evidence, the Court cites to the docket number and timestamp reflected on the video footage whenever possible.

11. The officer requested back-up. [Doc. 80 at ¶ 12; Doc. 86 at 3 ¶ 12; Doc. 80-2 at 02:50].

12. Additional officers responded to the request for back-up less than one minute later. [Doc. 80 at ¶ 13; Doc. 86 at 3 ¶ 13; Doc. 80-2 at 03:31].

13. The officers advised Mr. Loma that he was permitted to continue filming so long as he did not interfere with the fence installation. [Doc. 80 at ¶ 14; Doc. 86 at 3 ¶ 14; Doc. 80-2 at 03:32].

14. Officers provided Mr. Loma their names and badge numbers upon Mr. Loma's requests. [Doc. 80 at ¶ 15; Doc. 86 at 3 ¶ 15; Doc. 80-2 at 03:33].

15. Officers again advised Mr. Loma that he was permitted to continue filming (and yelling at the officers) so long as he stayed outside of the fence line. [Doc. 80 at 4 ¶ 16; Doc. 86 at 3 ¶ 16; Doc. 80-2 at 03:53].

16. Mr. Loma walked closely behind Sergeant Berger. [Doc. 86 at 5 ¶ 1; Doc. 80-2 at 05:00–06:13].[3]

17. No officer said anything to Mr. Loma indicating that Mr. Loma was not permitted to film. [Doc. 80 at ¶ 20; Doc. 86 at 3 ¶ 20; Doc. 80-3 at 195:19–23].[4]

---

[3] Sergeant Berger "[d]en[ies]" this fact, arguing that the portion of the video to which Mr. Loma cites does not show that Mr. Loma "walked behind" Sergeant Berger. [Doc. 89 at 5 ¶ 1 (citing [Doc. 80-2 at 05:00–06:13])]. The Court notes, however, that Mr. Loma clearly walks behind Sergeant Berger less than 30 seconds before the portion cited by Mr. Loma and, therefore, finds that Mr. Loma's assertion of fact is nevertheless supported by the record. See [Doc. 80-2 at 04:32–04:36].

[4] The Statement of Undisputed Material Facts in Sergeant Berger's Motion for Summary Judgment omitted paragraphs 19 through 20, and instead repeated paragraphs 21, 22, and 23. See [Doc. 80 at 4]; see also [Doc. 89 at 7 n.3 (explaining the typographical error)]. For purposes of clarity, the Court refers to the two paragraphs following paragraph 18 as paragraphs 19 and 20, and all other paragraphs contained in the Motion consistent with the numbers used therein.

18. Mr. Loma then approached Sergeant Berger while demanding his name and badge number. [Doc. 80 at ¶ 19; Doc. 86 at 3 ¶ 19; Doc. 80-2 at 05:00].

19. At that time, Sergeant Berger did not know Mr. Loma. [Doc. 80 at ¶ 17; Doc. 86 at ¶ 17; Doc. 80-1 at ¶ 12].[5]

20. Mr. Loma also did not recall any previous interactions with Sergeant Berger. [Doc. 80 at ¶ 18; Doc. 86 at 3 ¶ 18; Doc. 80-3 at 187:1–25].

21. Mr. Loma stood approximately three feet from Sergeant Berger while demanding Sergeant Berger's name and badge number. [Doc. 80 at ¶ 22; Doc. 86 at 4 ¶ 22; Doc. 80-1 at ¶ 18; Doc. 80-3 at 197:20–23].

22. Sergeant Berger initially declined to provide his name and badge number to Mr. Loma because Sergeant Berger did not know who Mr. Loma was. [Doc. 80 at ¶ 21; Doc. 86 at 3–4 ¶ 21; Doc. 80-1 at ¶ 17; Doc. 80-2 at 05:02].

23. Mr. Loma continued to insist that Sergeant Berger "identify." [Doc. 80 at ¶ 23; Doc. 86 at 4 ¶ 23; Doc. 80-2 at 05:14].

24. Mr. Loma proceeded to extend his right hand towards Sergeant Berger's chest. [Doc. 80 at ¶ 24; Doc. 86 at 4 ¶ 24; Doc. 80-1 at ¶ 20; Doc. 80-2 at 05:18; Doc. 80-3 at 197:18–198:17].

25. Mr. Loma extended his right hand to within 6 to 12 inches of the nametag on Sergeant Berger's chest. [Doc. 80 at ¶ 25; Doc. 86 at 4 ¶ 25, 5 ¶ 2; Doc. 89 at 4 ¶ 2; Doc. 80-1 at ¶ 21; Doc. 80-2 at 05:19; Doc. 80-3 at 198:14–17].

---

[5] Mr. Loma disputes this fact by speculating that DPD officers are "well aware of who Brian Loma is [sic]. Mr. Loma has had hundreds of interactions with Denver Police, including District 6 officers such as Defendant Berger." [Doc. 86 at 3–4 ¶ 21 (citing [Doc. 80-1 at 1:2–9])]. Mr. Loma's speculation is not sufficient to establish a factual dispute.

7

26. Sergeant Berger avers that he was concerned that Mr. Loma could attempt to strike him.  [Doc. 80 at ¶ 27; Doc. 80-1 at ¶ 23].[6]

27. When Mr. Loma extended his right hand within inches of Sergeant Berger's chest, Sergeant Berger initially used his right hand to move his jacket to show his nametag.  [Doc. 86 at 5 ¶ 4; Doc. 86-2 at 05:14–05:17].

28. Sergeant Berger then reached up with his right hand and pushed Mr. Loma's camera back.  [Doc. 80 at ¶ 28; Doc. 80-1 at ¶ 25; Doc. 80-2 at 05:16–05:18; Doc. 80-3 at 202:1–5].[7]

29. Sergeant Berger struck the camera, knocking it out of Mr. Loma's hands and destroying it.  [Doc. 86 at 5 ¶ 4; Doc. 86-2 at 05:16–06:13].[8]

30. Sergeant Berger did not touch Mr. Loma or any part of his body.  [Doc. 80 at ¶ 29; Doc. 86 at ¶ 29; Doc. 80-1 at ¶ 26; Doc. 80-3 at 202:6–10].

31. Mr. Loma did not suffer any physical injury as a result of the incident.  [Doc. 80 at ¶ 30; Doc. 86 at ¶ 30; Doc. 80-3 at 202:1–25].

---

[6] Mr. Loma argument that he was within striking distance of Sergeant Berger "for the entirety of their interaction," and Sergeant Berger struck Mr. Loma's phone only after Mr. Loma filmed Sergeant Berger's nametag, [Doc. 86 at 4 ¶ 27 (citing [Doc. 80-2 at 05:00–06:13])], does not create a genuine dispute to the factual averment that Sergeant Berger was concerned.

[7] Mr. Loma disputes this fact by asserting that Sergeant Berger "struck Plaintiff after Plaintiff filmed his name tag."  [Doc. 86 at 4 ¶ 28 (citing [Doc. 80-2 at 05:00–06:13])]. Elsewhere, however, Mr. Loma concedes that he extended his hand toward Sergeant Berger's chest, [UMF at ¶ 22], and that his hand was within 6 to 12 inches of Sergeant Berger's chest, [*id.* at ¶ 25], and the Court finds that these factual assertions are not mutually exclusive.  Accordingly, the Court considers this fact undisputed.

[8] Sergeant Berger "[d]en[ies]" this fact and cites, without further argument or explanation, paragraphs 33 through 35 of Sergeant Berger's Statement of Undisputed Material Facts.  [Doc. 89 at 5 ¶ 4 (citing [Doc. 80 at ¶¶ 33–35])].  This is not sufficient to create a dispute of fact.

32. Mr. Loma's phone fell to the ground. [Doc. 80 at ¶ 34; Doc. 86 at ¶ 34; Doc. 80-1 at ¶ 32].

## ANALYSIS

Sergeant Berger seeks summary judgment on each of Mr. Loma's claims. Sergeant Berger asserts that Mr. Loma cannot adduce evidence to support elements of his claims and, even if he could, Sergeant Berger did not violate clearly established law under the second prong of the qualified immunity test with respect to Mr. Loma's First Amendment retaliation claim, Fourteenth Amendment Due Process claim, or Fourth Amendment excessive force claim. *See generally* [Doc. 80]. The Court addresses the Parties' arguments as to each claim, in turn.

### I. First Amendment Retaliation

"[A]ny form of official retaliation for exercising one's freedom of speech . . . constitutes an infringement of that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotation omitted). To prevail on a First Amendment retaliation claim, a plaintiff must prove the following:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Sergeant Berger argues that Mr. Loma cannot satisfy either the second or third elements of his First Amendment claim. *See* [Doc. 80 at 7–9].

***Causation.*** The Tenth Circuit's "standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero*, 510 F.3d at 1203 (quotations

9

omitted). Physical and verbal intimidation can both chill speech. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1157–58 (10th Cir. 2007). The Court finds that Mr. Loma has adduced evidence from which a reasonable jury could conclude that Sergeant Berger's actions caused Mr. Loma "to suffer an injury that would chill a person of ordinary firmness from continuing to" film the officers' actions in clearing the unhoused individuals from a public space. *Worrell*, 219 F.3d at, 1212 (quotations omitted). Mr. Loma points to the fact that Sergeant Berger refused to identify himself, and then proceeded to strike the phone from Mr. Loma's hand when Mr. Loma attempted to obtain that information by filming Sergeant Berger's nametag. [Doc. 86 at 9]; *see also* [UMF at ¶¶ 27–29]. Mr. Loma's phone fell to the ground, rendering him unable to film the remainder of the displacement. [UMF at ¶¶ 27–29]; *see also* [Doc. 80-2 at 05:16–06:13].

Sergeant Berger's causation arguments effectively ask the Court to adopt Sergeant Berger's version of events, *see* [Doc. 80 at 8], but the Court must adopt Mr. Loma's version of events so long as it finds support in the record, *Helvie*, 66 F.4th at 1232; *Est. of Taylor*, 16 F.4th at 756. Mr. Loma's version of events does find such support in the record and suggests that he was prevented from filming the police activity at issue because Sergeant Berger destroyed his phone.

**Retaliatory Motive.** With respect to the third element, "[t]he plaintiff must show that the retaliation was a substantial or motivating factor behind the [adverse action]." *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (quotation omitted). "The Supreme Court has held a plaintiff must show 'but-for' causation—meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive—to prove the third

element of a First Amendment retaliation claim." *Bustillos v. City of Artesia,* 98 F.4th 1022, 1036 (10th Cir. 2024) (citing *Nieves,* 587 U.S. at 398–99).

Sergeant Berger contends that Mr. Loma cannot adduce any evidence that Sergeant Berger was "substantially motivated by Plaintiff's filming," [Doc. 80 at 8], and points to evidence that he was "merely trying to create distance between" the Parties after Mr. Loma "encroach[ed] on [Sergeant Berger's] personal space," [*id.* at 8–9]. Mr. Loma responds that this element turns on Sergeant Berger's intent and internal motivations, both of which are genuine issues of disputed fact that should be left to the jury. [Doc. 86 at 8].

Whether a defendant acted with a retaliatory animus is typically a fact question left to the jury. *Hedquist v. Beamer*, 763 F. App'x 705, 712 (10th Cir. 2019). However, summary judgment may still be appropriate if there is no evidence from which a reasonable jury could find that the protected activity was a motivating factor in the adverse action. *Id.* The Court has reviewed the evidence cited by Mr. Loma and observes that he has adduced evidence that Sergeant Berger knocked Mr. Loma's phone to the ground seconds after Mr. Loma filmed Sergeant Berger's name tag, *see* [UMF at ¶¶ 27–29; Doc. 80-2 at 05:16–05:20], and only informed Mr. Loma that he was standing too close *after* Sergeant Berger hit Mr. Loma's phone, [Doc. 80-2 at 05:20–05:22]. Given that only a matter of seconds elapse between when Sergeant Berger "expose[d] his nameplate for Plaintiff to film," and his "react[ion]" when Mr. Loma came "too close," the Court cannot conclude that only Sergeant Berger's version of events is "clear from the video." [Doc. 89 at 7]; *see also* [Doc. 80-2 at 05:15–05:20]. To the contrary, "a reasonable jury could

11

find facts supporting a violation of a constitutional right." *See Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017).

Courts within this District regularly find that a close temporal proximity between a plaintiff's protected speech and a defendant's adverse action against the plaintiff can give rise to a "strong inference" that the defendant's action was motivated by the plaintiff's protected speech. *See, e.g.*, *Irizarry v. City & Cnty. of Denver,* 661 F. Supp. 3d 1073, 1091 (D. Colo. 2023); *Sodaro v. City & Cnty. of Denver*, --- F. Supp. 3d ---, No. 21-cv-1879-WJM-STV, 2024 WL 4433943, at *10 (D. Colo. Oct. 7, 2024). Here, the video evidence of the encounter shows that only seconds after Mr. Loma filmed Sergeant Berger's nametag, Sergeant Berger knocked Mr. Loma's phone to the ground. [UMF at ¶¶ 27–29]. "The Court finds this evidence alone sufficient to create a genuine issue of material fact as to whether [Sergeant Berger] acted with retaliatory motive." *See Sodaro*, --- F. Supp. 3d ---, 2024 WL 4433943, at *10.

The Court does not weigh this evidence against Sergeant Berger's evidence nor does the Court pass on the strength of the Parties' evidence. Instead, the Court concludes that—given the fact that a reasonable jury could find that Sergeant Berger knocked Mr. Loma's phone to the ground in response to Mr. Loma filming Sergeant Berger's nametag—a reasonable jury could conclude that the filming of Sergeant Berger's nametag was the substantial or motivating factor behind his conduct. *See Irizarry*, 661 F. Supp. 3d at 1091 (allegations that officer arrested the plaintiff "almost immediately" after he began protesting about the Denver Police, combined with lack of probable cause for the arrest, was sufficient to plead that a retaliatory motive was the "but-for" cause of the plaintiff's arrest); *Sodaro*, --- F. Supp. 3d ---, 2024 WL 4433943, at *10 (finding that video

12

evidence showing that "but a few seconds passed" between the plaintiff's protected speech and the officers' actions was sufficient, on its own, to create a genuine issue of fact as to officers' retaliatory motive). Defendant's contention that "[i]t was not [Sergeant] Berger's intent to knock the phone out of Plaintiff's hand" because "he was merely trying to create distance between the two," [Doc. 80 at 8], is more appropriately presented to the jury, *see Epps v. City & Cnty. of Denver*, 588 F. Supp. 3d 1164, 1176 (D. Colo. 2022). Thus, the Court cannot conclude that Sergeant Berger has demonstrated that he is entitled to summary judgment on Mr. Loma's First Amendment claim on these grounds.

**Clearly Established Law.** A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly established. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). A case is considered "on point" if it involves materially similar conduct to the case at hand or applies "with obvious clarity" to the conduct at issue. *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotation and emphasis omitted). Although a case directly on point is not required, *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018), the Court must be mindful "not to define clearly established law at too high a level of generality," *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quotation omitted).

Sergeant Berger argues that Mr. Loma cannot establish the second prong to overcome qualified immunity because, "by extending his hand to within inches of [Sergeant] Berger's chest," Mr. Loma was "interfering with a police officer in the

13

performance of his duties." [Doc. 80 at 9]; *cf. Irizarry v. Yehia*, 38 F.4th 1282, 1292 n.10 (10th Cir. 2022) (noting that the First Amendment right "is subject to reasonable time, place, and manner restrictions," but finding that "no 'time, place, and manner' restriction issue" was presented because a plaintiff recording a traffic stop who "does not interfere with the police officers' performance of their duties is not reasonably subject to limitation" (citations omitted)). But whether Mr. Loma in fact interfered with Sergeant Berger in the performance of his duties remains a fact issue. *See Sodaro*, --- F. Supp. 3d ---, 2024 WL 4433943, at *10 (denying summary judgment on qualified immunity grounds where defendant officers argued that the plaintiff could not establish a clearly established right to disrupt a public gathering, but whether the plaintiff in fact disrupted the inauguration remained a fact issue). And the law was clearly established as of November 2020 that "'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves,* 587 U.S. at 398 (quotation omitted); *see also Worrell,* 219 F.3d at 1212 ("[A]ny form of official retaliation for exercising one's freedom of speech . . . constitutes an infringement of that freedom"). More specifically, it is well settled that "there is a First Amendment right to film the police performing their duties in public." *Irizarry*, 38 F.4th at 1292. It was also clearly established in the Tenth Circuit that a reasonable officer would have known that physically interfering with and intimidating an individual who was filming police activity could chill First Amendment activity. *See id.* Thus, issues of fact preclude finding that Sergeant Berger is entitled to qualified immunity on Mr. Loma's First Amendment retaliation claim, and accordingly, the Court respectfully **DENIES** the Motion for Summary Judgment as to the same.

## II. Fourteenth Amendment Due Process and Deprivation of Property Claims

Sergeant Berger also challenges Mr. Loma's Fourteenth Amendment due process and deprivation of property claims. [Doc. 80 at 11–13, 16]. In his Response, Mr. Loma "concedes his 14th Amendment claims." [Doc. 86 at 11 (cleaned up)]. Thus, the Court finds that summary judgment in Sergeant Berger's favor on the Fourteenth Amendment claims is appropriate. *Cf. Shaw v. City of Norman*, No. 22-6106, 2023 WL 2923962, at *4 (10th Cir. Apr. 13, 2023) (affirming dismissal of Fourteenth Amendment due process claim where the plaintiffs made "no attempt to satisfy" the applicable standard); *OneSource Com. Prop. Servs., Inc. v. City & Cnty. of Denver*, 535 F. App'x 740, 748 (10th Cir. 2013) (affirming grant of summary judgment in the defendant's favor where the plaintiffs inadequately briefed their claims and failed to establish genuine issues of material fact). Accordingly, the Motion for Summary Judgment is **GRANTED** with respect to Mr. Loma's Fourteenth Amendment claims.

## III. Fourth Amendment Excessive Force

Finally, Sergeant Berger challenges Plaintiff's claim of excessive force. [Doc. 80 at 13-15]. Claims alleging that a police officer used excessive force in the seizure of a free citizen are properly asserted under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 395 (1989), which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," U.S. Const. amend. IV. To succeed on a Fourth Amendment excessive force claim, a plaintiff must prove that they were seized and that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989); *see also Jones v. Norton*, 809 F.3d 564, 575 (10th Cir. 2015) ("Without a seizure, there can be no violation

15

of the Fourth Amendment."). Sergeant Berger challenges Mr. Loma's claim as to both elements and also argues that Mr. Loma cannot satisfy his burden on the second prong of the qualified immunity inquiry. The Court's analysis begins and ends with the latter argument. *See Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)) (reaffirming that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first").

**Clearly Established Law.** Sergeant Berger contends that it is not clearly established that property damage alone—with no evidence of physical contact—is a cognizable Fourth Amendment excessive force claim. [Doc. 80 at 14–15]. Mr. Loma counters that it was clearly established, as of November 17, 2020, that "the use of gratuitous force, even against a misdemeanant, [is] unconstitutional." [Doc. 86 at 12 (citing *McCowan v. Morales*, 945 F.3d 1276, 1285–87 (10th Cir. 2019)) (emphasis omitted)]. Citing *McCowan* and three cases discussed therein—*Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008); *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007); and *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991)—Mr. Loma claims that Sergeant Berger "did just what these cases put him on notice was unconstitutional." [Doc. 86 at 13]. The Court respectfully disagrees.

First, insofar as Mr. Loma argues that "any reasonable officer should know that hitting a person who has committed no offense at all is an excessive use of force," [Doc. 86 at 13], the Court cannot ignore a fundamental flaw in his argument: there is no dispute that Sergeant Berger <u>never hit</u> Mr. Loma, [Doc. 80 at ¶ 29; Doc. 86 at ¶ 29; Doc. 80-1 at ¶ 26; Doc. 80-3 at 202:6–10].

16

For the same reason, the Court finds the case law on which Mr. Loma relies unpersuasive. Notably, Mr. Loma does not direct the Court to any cases involving the use of "force" solely against an individual's property—in this case, the gimbal attached to his phone that Mr. Loma was holding. [Doc. 80-3 at 202:1-10]. Indeed, none of the cases cited by Mr. Loma involve facts even remotely like the facts of this case. In *McCowan*, an officer arrested an individual with a shoulder injury, left the individual cuffed and unbelted in the back of a patrol car, and drove to the station in a manner that led to the arrestee hitting his injured shoulder repeatedly against the seats and doors of the vehicle. 945 F.3d at 1285–87. In *Weigel*, a drunk driving suspect died of asphyxiation when, after the arrestee was subdued, handcuffed, and restrained, an officer knelt on his upper torso. 544 F.3d at 1287. In *Casey*, the Tenth Circuit held that it would be unreasonable for an officer to tackle, taser, and beat a plaintiff as he returned from retrieving money to pay his traffic citation from the parking lot of a courthouse in order to arrest him for removing a public record (the court file) from the courthouse. 509 F.3d at 1279–83. In *Dixon*, the officers' use of force—kicking, hitting, choking, and beating the plaintiff—was unreasonable under the circumstances. 922 F.3d at 1457–59, 1462–63.

Here, even construing the evidence in Mr. Loma's favor, the only "force" applied involved Sergeant Berger's hand and the gimbal attached to Mr. Loma's camera phone. [UMF at ¶¶ 30–31]. No physical contact occurred between the Parties, *cf. Weigel*, 544 F.3d at 1287; *Casey*, 509 F.3d at 1279–83; *Dixon*, 922 F.2d 1457–59, and Mr. Loma has not alleged any form of physical injury, *cf. McCowan*, 945 F.3d at 1285–87.[9]

---

[9] Mr. Loma does not expressly address Sergeant Berger's argument that property damage is not a cognizable basis for an excessive force claim under the Fourth Amendment. *See generally* [Doc. 86].

Mr. Loma cites no legal authority demonstrating that knocking a phone to the ground—with no physical contact between the officer and the plaintiff—necessarily constitutes a Fourth Amendment seizure. *See* [Doc. 86 at 11–13]. Thus, he has not met his burden of establishing that it was clearly established, as of the incident, that Sergeant Berger's conduct violated Mr. Loma's Fourth Amendment rights. Accordingly, Sergeant Berger's Motion for Summary Judgment is **GRANTED** with respect to Mr. Loma's Fourth Amendment claim.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Sergeant Jeffery Berger's Motion for Summary Judgment [Doc. 80] is **GRANTED IN PART** and **DENIED IN PART**;

(2) Summary judgment is **GRANTED** for Sergeant Berger with respect to Mr. Loma's excessive force claims; and

(3) Summary judgment is **DENIED** with respect to Mr. Loma's First Amendment retaliation claim; and

(4) A Telephonic Status Conference is **SET** for **December 12, 2024 at 1:30 PM**, for the purposes of setting a Final Pretrial/Trial Preparation Conference and a jury trial in this matter. The Parties shall participate by dialing **571-353-2301, Access Code: 783456374.**

DATED: December 5, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge